UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:  (In Chambers) Order GRANTING IN PART and DENYING IN PART Defendants' Motion to Dismiss the CAC**

Before the Court is Defendants' motion to dismiss the Consolidated Amended Class Action Complaint ("CAC"). Dkt. # 33. The Court held a hearing concerning this matter on September 2, 2014. After considering the arguments in the moving, opposing, and reply papers, the parties' supplemental briefs, and the arguments made at the September 2, 2014 hearing, the Court GRANTS the motion IN PART and DENIES the motion IN PART.

I.   Introduction

This putative class action suit was initially filed by plaintiffs Ilya Podobedov, Jordan Moussouros, and Richard N. James, who alleged that Defendants were using deceptive marketing practices to market 5-hour ENERGY. *See Compl.*, *Podobedov v. Living Essentials, LLC*, CV 11-6408 PSG (PLAx) (C.D. Cal.) ("*Podobedov*"), Dkt. # 1. Defendants moved to dismiss the Complaint. *See Podobedov*, Dkt. # 17. In March 2012, the Court granted in part and denied in part Defendants' motion to dismiss the Complaint. *See March 22, 2012 Order*, *Podobedov*, Dkt. # 49. The *Podobedov* plaintiffs filed an amended complaint on April 16, 2012. *See FAC*, *Podobedov*, Dkt. # 54.[1]

---

[1] An "amended complaint supersedes the original, the latter being treated thereafter as nonexistent." *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997). "Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise arguments that were previously available." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

In June 2013, the Judicial Panel on Multidistrict Litigation centralized a number of cases related to the marketing and sales of 5-hour ENERGY, and assigned the matter to this Court for consolidated pretrial proceedings. Dkt. # 1. In November 2013, the Court appointed three law firms as Interim Co-Lead Class Counsel: Bursor & Fisher, P.A.; Faruqi & Faruqi, LLP; and Geragos & Geragos APC. Dkt. # 25.

Plaintiffs filed the CAC on June 17, 2014. Dkt. # 29. The named Plaintiffs are: Ilya Podobedov, Jordan Moussouros, Richard N. James, Cody Soto, Matt Nunez, Donna A. Thompson, Michael R. Casey, David Ellis, Marc A. Adler, William Forrest, Dennis Duckworth, William Waring, David Berger, Ayanna Nobles, Patricia Woods, Thomas Guarino, Anthony Quinn McCray, Junior Hermida, and Michael Feiner ("Plaintiffs"). In the CAC, Plaintiffs assert claims against Defendants Innovation Ventures, LLC ("Innovation Ventures"); Living Essentials, LLC ("Living Essentials"); Bio Clinical Development, Inc. ("Bio Clinical"); and Manoj Bhargava ("Bhargava") (collectively, "Defendants"), for: (1) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301, *et seq.*; (2) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (5) violation of the New York Deceptive Trade Practices Act ("DTPA"), N.Y. Gen. Bus. Law §§ 349, *et seq.*; (6) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. §§ 501.201, *et seq.*; (7) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.020, *et seq.*; (8) violation of the New Jersey Fraud in Sales or Advertising of Merchandise Law (the "New Jersey Fraud Statute"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*; (9) violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (the "New Jersey Warranty Act"), N.J. Stat. Ann. §§ 56:12-14, *et seq.*; (10) violation of the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. §§ 57-12-2, *et seq.*; (11) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2, *et seq.*; (12) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 805 Ill. Comp. Stat. 505/1, *et seq.*; (13) violation of the Georgia DTPA, Ga. Code §§ 10-1-370, *et seq.*; (14)

---

As a result, neither this Court's decision on the *Podobedov* motion to dismiss nor Judge Dimitrouleas's decision regarding the *Feiner* motion to dismiss are dispositive of Defendants' arguments concerning this motion. *See March 22, 2012 Order*, *Podobedov*, Dkt. # 49; *May 29, 2013 Order*, *Feiner v. Innovation Ventures, LLC*, CV 13-4003 PSG (PLAx) (C.D. Cal.), Dkt. # 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

breach of express warranty; (15) breach of the implied warranty of merchantability; (16) fraud by intentional misrepresentation and concealment of fact; and (17) injunctive relief.[2]  *CAC* ¶¶ 151-324.  Plaintiffs also allege that Bhargava has used Living Essentials and Bio Clinical as alter egos.  *Id.* ¶¶ 102-127.

Plaintiffs seek to represent a nationwide class of "all persons in the United States who purchased a 5-hour ENERGY product," other than "persons or entities that purchased 5-hour ENERGY products for resale," and "Defendants and their subsidiaries and affiliates."  *Id.* ¶ 129.  Plaintiffs also seek to represent a subclass for purchasers of 5-hour ENERGY multipack products, a subclass for purchasers of decaffeinated 5-hour ENERGY, and a number of state purchaser subclasses.  *Id.* ¶¶ 130-145.

Defendants now move to dismiss the CAC in its entirety.  Dkt. # 33.

II.   <u>Background</u>

Innovation Ventures and its subsidiary Living Essentials (collectively, the "Company") make, promote, and distribute the 5-hour ENERGY line of energy drinks.  *See CAC* ¶¶ 28, 29, 39.  Bio Clinical own the patents for the formulas for 5-hour ENERGY.  *See id.* ¶ 31.  Bhargava is the Chief Executive Officer and a board member of Innovation Ventures, owns 79 percent of Living Essentials, and is the sole owner of Bio Clinical.  *See id.* ¶¶ 30.

A.   <u>5-hour ENERGY</u>

5-hour ENERGY, the first "energy shot," is sold in regular, extra-strength, and decaffeinated varieties, in a number of different fruit flavors.  *See id.* ¶¶ 39, 41.  It is packaged in portions of approximately two ounces, and is marketed as a dietary supplement.  *See id.* ¶ 39.  5-hour ENERGY is sold in retail stores for approximately $2.99 per shot, and in "multipacks" of 4, 6, and 12 shots for approximately $11.99, $14.99, and $25.99, respectively.  *See id.* ¶ 40.  The Company also sells multipacks online.  *See id.*

Plaintiffs' allegations concerning the marketing of 5-hour ENERGY, as they are set out in the CAC, fall into five general categories.

---

[2] The CAC also includes a claim for violation of the Alabama DTPA, Ala. Code §§ 8-19-5, *et seq.  See CAC* ¶¶ 263-272.  However, Plaintiffs have withdrawn that cause of action.  *See Opp.* 32 n.17.  Accordingly, it is DISMISSED, without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title    | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

First, Plaintiffs allege that the name 5-hour ENERGY is misleading, because 5-hour ENERGY does not provide five hours of energy, and in fact, provides no energy at all.  *Id.* ¶¶ 47-48.  The original packaging for 5-hour ENERGY promised consumers "5 hours of energy now"; Defendants later changed that claim to read "Hours of energy now."  *See id.* ¶¶ 45-46. Plaintiffs contend that both claims are false.  *Id.* ¶¶ 44-48.

Second, Plaintiffs assert that Defendants falsely and misleadingly claim that 5-hour ENERGY gives consumers a "feeling" of increased energy, alertness, and focus due to its "beneficial ingredients," including B-vitamins and amino acids.  *Id.* ¶ 49.  Plaintiffs allege that "[t]he only ingredient [in 5-hour ENERGY] that has any effect is the concentrated dose of caffeine[.]"  *Id.*

The CAC recites a number of Defendants' advertising and marketing claims focused on 5-hour ENERGY's vitamins and amino acids:

- "A powerful blend of B Vitamins for energy."

- "5-hour ENERGY's blend of vitamins and amino acids gives you hours of smooth energy."

- "5-hour ENERGY doesn't jack you up with sugar, caffeine and herbal stimulants.  Instead, it's packed with stuff that's good for you—B-vitamins, amino acids and enzymes."

- "5-hour ENERGY is made from a healthy blend of B-vitamins and amino acids that'll wake you up fast and keep you going strong for hours—with no crash.  5-hour ENERGY is made without sugar and with very little caffeine—so you get real get up and go that lasts."

- "5-hour ENERGY drinks provide a boost of energy and mental alertness that lasts for hours—with no crash.  That's because 5-hour ENERGY is packed with B-Vitamins, enzymes, and amino acids.  It contains zero sugar, zero net carbs, and just enough caffeine to get the ball rolling."

- "The key ingredients in 5-hour ENERGY are also available in every day foods—like broccoli, avocados, bananas and apples—or already in you.  It

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | | Date | September 4, 2014 |
|---|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | | |

                    contains zero sugar, four calories and as much caffeine as a cup of the
leading premium coffee."

- "B-Vitamins for energy.  Amino acids for focus."

- "B-Vitamins for Energy.  Amino Acids Focus & Better Mood.  Enzymes
Feel it Faster."

*Id.* ¶¶ 53, 59, 60; *see id.* ¶¶ 52, 61.  Bhargava has also claimed that 5-hour ENERGY has "brain
nutrients, for brain health."  *See id.* ¶ 53.

      Plaintiffs allege that these advertising and marketing claims are false and deceptive
because they suggest that the vitamins and amino acids in 5-hour ENERGY, rather than caffeine,
provide consumers with increased energy and focus.  *Id.* ¶ 62.

      On a related note, Plaintiffs allege Defendants deemphasize the effects of the caffeine in
5-hour ENERGY, and "mask the product's true caffeine content."  *See id.* ¶ 56.  However,
according to Plaintiffs, an independent chemical analysis shows that a bottle of regular 5-hour
ENERGY contains 207 milligrams of caffeine—roughly equivalent to 7 times the concentration
in an average cup of coffee and 19 times the Food and Drug Administration's ("FDA") limit on
caffeine in beverages (which do not apply to 5-hour ENERGY, because it is classified as a
dietary supplement rather than as a beverage).  *Id.* ¶ 57 & n7.

      Third, Plaintiffs allege that Defendants' claim of "no crash" is misleading.[3]  *Id.* ¶¶ 63-64.
Defendants market 5-hour ENERGY as having "no crash later," but caveat that statement with
the disclaimer (on their website, on the fine print on the back of the 5-hour ENERGY label, and
behind the bottles on display stands) that "no crash means no sugar crash."  *See id.* ¶¶ 65-67.
Plaintiffs argue that Defendants' disclaimer cannot prevent their "no crash" claim from
misleading consumers.  *Id.* ¶¶ 66-67.

      Fourth, Plaintiffs claim that the decaffeinated 5-hour ENERGY "provides no feeling of
increased energy at all," and is "merely a placebo."  *Id.* ¶ 72.  Defendants market decaffeinated
5-hour ENERGY by claiming that its B-vitamins and amino acids provide "hours of alertness

---

[3] Plaintiffs explain that a "crash" is the "come-down consumers of energy drinks often feel when
the effects of the beverages wear off."  *See CAC* ¶ 63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

and focus without making you feel jittery"; however, Plaintiffs assert that those ingredients do not confer any "feeling of increased energy." *Id.* ¶¶ 68-69; *see id.* ¶¶ 70-72.

Fifth, Plaintiffs allege that Defendants have "touted phony clinical studies which misleadingly present results in a manner that suggests 5-hour ENERGY products act quickly as something other than a concentrated caffeine shot." *Id.* ¶ 73; *see id.* ¶¶ 74-85.  According to a summary on 5-hour ENERGY's website, one study showed that when compared with competing products, 5-hour ENERGY was more frequently considered the "[p]roduct with the longest peak energy level," and the "[p]roduct that provided five or more hours of energy," and was less frequently considered the "[p]roduct that caused a crash."[4]  *See id.* ¶ 75.  A second study, according to a description on 5-hour ENERGY's website, showed that "5-hour ENERGY significantly outperformed [a] placebo on continuity of attention and self-related awareness." *See id.* ¶ 85.

Plaintiffs allege that they purchased 5-hour ENERGY due to Defendants' false and misleading claims.  *See, e.g.*, *id.* ¶¶ 148, 165, 172, 179.  They allegedly suffered harm because, but for Defendants' wrongful conduct, they either would not have purchased 5-hour ENERGY, or would not have paid a "price premium."  *See, e.g.*, *id.* ¶ 165, 172, 179.

B.   Alter Ego Allegations

The CAC includes alter ego allegations.  Plaintiffs contend that "Bhargava established Living Essentials for an illegal purpose:  to perpetrate fraud." *Id.* ¶ 102.  In support of this claim, Plaintiffs detail the Company's marketing of three other products—Chaser, Chaser for Wine Hangovers, and Chaser Plus—which Plaintiffs describe as "dress rehearsals for the main event that is the 5-hour ENERGY hoax." *Id.* ¶ 104; *see id.* ¶¶ 102-118.  Plaintiffs allege that in order to market the Chaser products, which were sold as hangover preventatives or remedies, Defendants:  (1) made misleading or unsubstantiated claims; (2) cited a "questionable clinical study"; and (3) falsely attributed the effects of Chaser Plus to homeopathic ingredients, rather than calcium carbonate and charcoal. *Id.* ¶¶ 105-118.

Plaintiffs allege that Bhargava "controls Living Essentials and operates the Company for

---

[4] Plaintiffs' counsel clarified at the September 2, 2014 oral argument that Plaintiffs are alleging that the "competing products" study, as summarized on the 5-hour ENERGY website, is part of Defendants' misleading marketing scheme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

his personal benefit." *Id.* ¶ 122.  Plaintiffs also allege that Bhargava deliberately keeps Living Essentials undercapitalized so that it is judgment-proof.  *Id.* ¶ 123; *see id.* ¶ 124-126.

II.     Legal Standard

    A.     Rule 12(b)(1)

    A plaintiff must "have 'standing' to challenge the action sought to be adjudicated in the lawsuit."  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted).  The "irreducible constitutional minimum" of Article III standing has three elements:  (1) the plaintiff must have suffered an "injury in fact," meaning a concrete and particularized injury that is actual or imminent; (2) the injury must be causally related to the defendant's challenged actions; and (3) it must be "likely" that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted); *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).  The plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements.  *See Lujan*, 504 U.S. at 561.

    Article III standing bears on the court's subject matter jurisdiction, and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Rule 12(b)(1) attacks on subject matter jurisdiction can be factual or facial.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, such as Defendants' attack here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  When evaluating a facial attack on jurisdiction, the court accepts the factual allegations the plaintiff's complaint as true.  *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

    B.     Rule 12(b)(6)

    A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff.  *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).  The court, however, is not required to accept "legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The court may properly consider exhibits attached to the complaint. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008); *Amfac Mortg. Corp. v. Az. Mall of Tempe, Inc.*, 583 F.2d 426, 429-30 (9th Cir. 1978).

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679-80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

C.    Rule 9(b)

Allegations of fraud and allegations that "sound in fraud" must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). Conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

A pleading satisfies Rule 9(b) when it is "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks and citation omitted); *accord Moore*, 885 F.2d at 540 ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."). As a result, the plaintiff must plead "the who, what, when, where, and how" of the alleged fraud. *Vess*, 317 F.3d at 1106 (internal quotation marks and citation omitted). Further, if the plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth *what* is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis added).

Intent and other aspects of a defendant's mental state may be alleged generally. Fed. R. Civ. P. 9(b).

III.    Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants have levied a broad range of attacks against the CAC.  At the threshold, Defendants argue that:  (1) Plaintiffs lack standing; (2) Plaintiffs' state law claims are expressly preempted by federal law; and (3) Plaintiffs' claims are subject to the primary jurisdiction doctrine.  Defendants then argue that:  (4) the CAC does not satisfy Rule 8(a); (5) Plaintiffs' UCL, FAL, and CLRA claims do not satisfy Rule 9(b); (6) Plaintiffs' nationwide claims for breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Act, and fraud are inadequately pleaded; and (7) Plaintiffs' state law claims are inadequately pleaded. Finally, Defendants contend that:  (8) Plaintiff Patricia Woods' claims should be dismissed, because she was not a plaintiff in any case transferred to this Court by the Judicial Panel on Multidistrict Litigation; and (9) the Court should strike certain allegations from the CAC.

The Court addresses each of Defendants' arguments in turn.

A.    <u>Standing</u>

In their first threshold challenge to the CAC, Defendants argue that Plaintiffs lack Article III standing to sue over products they have not purchased, and that Plaintiffs have not alleged any cognizable injury.  *See Mem.* 13:6-15:6.  Defendants also contend that Plaintiffs do not have standing to seek injunctive relief.  *See Mem.* 15:7-16:11; *Reply* 7:7-7:17.

i.    *Scope of Plaintiffs' Claims*

Defendants launch their first attack on standing by invoking a principle that is relatively straightforward, at least in the context of Plaintiffs' individual claims:  Plaintiffs only have standing to sue over the products they purchased.  *See Mem.* 13:14-13:16.  However, Defendants then assume that to establish standing, each Plaintiff must specify which particular 5-hour ENERGY product he or she bought.  As a result, Defendants conclude that the eighteen Plaintiffs who alleged in the CAC that they "purchased and consumed 5-hour ENERGY products," without naming the specific varieties they purchased, do not have standing.  *See Mem.* 13:19-14:11; *CAC* ¶¶ 9-13, 15-27.  Defendants concede that Plaintiff Nobles alleges that she purchased decaffeinated 5-hour ENERGY.  *See Mem.* 5:16-5:18, 13:15-13:16; *see also CAC* ¶ 14.

The only apparent material difference between the 5-hour ENERGY varieties, for the purposes of this lawsuit, is between caffeinated and decaffeinated 5-hour ENERGY.  Although Plaintiffs are bringing suit with respect to both product families, their theories of liability are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

slightly different:  Plaintiffs claim that caffeinated 5-hour ENERGY is essentially a caffeine shot being marketed under false pretenses, whereas they claim that decaffeinated 5-hour ENERGY is "merely a placebo."  *See CAC* ¶¶ 49-62, 68-72.  Defendants attempt to draw a distinction between regular and extra strength 5-hour ENERGY by alleging that the purchasers of those respective products would suffer different damages.  *See Mem.* 13:25-14:3.  That argument is not persuasive, given that the Plaintiffs allege they suffered the same harm with respect to all of the 5-hour ENERGY products:  namely, that they "lost money or property" as a result of Defendants' actions, "because:  (a) they would not have purchased 5-hour ENERGY products or would not have purchased 5-hour ENERGY products on the same terms if the true facts concerning those products had been known; and (b) they paid a price premium due to the false representations about the products."  *See, e.g., CAC* ¶ 165.  As a result, the relevant question for the standing analysis is whether Plaintiffs, as a group, purchased both caffeinated and decaffeinated 5-hour ENERGY.

At least one Plaintiff, Plaintiff Nobles, specifically alleges that she purchased decaffeinated 5-hour ENERGY.  *See CAC* ¶ 14.  The other Plaintiffs only allege that they "purchased and consumed 5-hour ENERGY products."  *See id.* ¶¶ 9-13, 16-23; *see also id.* ¶ 15.  However, the CAC uses the term "5-hour ENERGY products" to refer collectively to all varieties of 5-hour ENERGY.  *See, e.g., id.* ¶ 1.  Drawing all reasonable inferences in Plaintiffs' favor—as it must—the Court infers that the other Plaintiffs either purchased caffeinated 5-hour ENERGY or purchased both caffeinated and decaffeinated 5-hour ENERGY.  *See Iqbal*, 556 U.S. at 679-80; *Fisher v. Monster Beverage Corp.* ("*Fisher II*"), No. EDCV 12-2188-VAP (OPx), at *22 n.9 (C.D. Cal. Nov. 12, 2013) (finding that a plaintiff who pleaded that he purchased "Monster Drinks" had adequately alleged that he "purchased all of the five [Monster] Rehab drink varieties").  As a result, Plaintiffs can properly bring suit concerning all three formulations of 5-hour ENERGY:  regular, extra strength, and decaffeinated.

Defendants raise a related, but separate argument that Plaintiffs do not have standing to sue over products they did not purchase, even if those products were purchased by other members of the proposed class.  *See Reply* 6:12-7:3.  This argument is rendered moot by the Court's conclusion that Plaintiffs have adequately pleaded that they purchased both caffeinated and decaffeinated 5-hour ENERGY.  In addition, it is "at odds with the prevailing view" in the Ninth Circuit, "which holds that a plaintiff may, under certain circumstances, have constitutional and statutory standing to assert claims based on misrepresentations appearing on products he did not purchase."  *See Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178, at *44-45 (N.D. Cal. Oct. 2, 2013); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) ("The majority of courts that have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."). The proper time for any challenges on this point would be at class certification, when the Court will have to gauge the typicality of Plaintiffs' claims and Plaintiffs' ability to adequately represent the interests of the proposed classes. *See Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'") (citations omitted).

       ii.    *Cognizable Injury*

      In their second standing argument, Defendants contend that Plaintiffs have not pleaded a cognizable injury in fact, because "none of them even alleges that they relied on Defendants' purported misrepresentations to their detriment." *Mem.* 14:14-14:16; *see id.* 14:12-15:6; *Reply* 6:16-7:11.

      The CAC repeatedly states that Plaintiffs relied on Defendants' claims by purchasing 5-hour ENERGY, and that Plaintiffs were harmed because but for Defendants' allegedly deceptive claims, Plaintiffs would not have purchased 5-hour ENERGY, or would have paid less. For example, the CAC alleges:

> Plaintiffs . . . relied on Defendants' statements, believing that 5-hour ENERGY products would provide five hours of energy within minutes, with no negative 'crash' effects, when used as directed, and that the product[s'] effects [were] attributable to ingredients other than caffeine, when, in fact . . . they do not provide five hours of energy, they do cause negative 'crash' after effects, and any feeling of increased energy or focus can be attributed solely to the product[s'] highly concentrated dose of liquid caffeine.

> Had Plaintiffs . . . known 5-hour ENERGY products do not perform as advertised, . . . they would not have purchased 5-hour ENERGY products or would not have purchased 5-hour ENERGY products on the same terms.

> As a result of Defendants' deceptive and unfair acts, Plaintiffs . . . have been damaged in the amount of the purchase price of the 5-hour ENERGY products or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

the difference between the premium price paid for 5-hour ENERGY products and the price they would have paid had they known that the 5-hour ENERGY products do not perform as advertised.

*CAC* ¶¶ 197-199. The CAC's other reliance allegations similar, albeit less detailed. *See id.* ¶¶ 165, 172, 179, 188, 214-215, 228, 246-247, 268-269, 281-282, 284, 293-294, 301, 308, 316. These allegations are sufficient to plead injury in fact. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013) (holding that an allegation that the plaintiff made a purchase he would not have made, but for the defendants' misrepresentations, was enough to establish standing); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (holding that plaintiffs established standing by pleading "that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims and failed to disclose the system's limitations.").

Defendants protest that Plaintiffs have "failed to specifically identify their injuries," and have only offered "general allegations" that "do not refer to a single Plaintiff." *See Reply* 6:2-6:11. It is not entirely clear to the Court what Defendants believe Plaintiffs must do to adequately establish their standing to sue, at this stage of the litigation. To the extent Defendants believe the CAC is deficient simply because it groups the Plaintiffs' allegations together, rather than having each individual Plaintiff plead injury in fact separately, their argument is a spurious attempt to elevate form over substance. Alternately, if Defendants believe Plaintiffs must plead specific factual details to establish standing, their argument is foreclosed by the Supreme Court's explanation that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

This case is unlike *In re LinkedIn User Privacy Litigation*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013) and *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003). In those cases, the plaintiffs did not plead that they had been exposed to or relied on the defendants' alleged misrepresentations. *See LinkedIn*, 932 F. Supp. 2d at 1093 ("Plaintiffs do not even allege that they actually read the alleged misrepresentation—the Privacy Policy—which would be necessary to support a claim of misrepresentation."); *Williams*, 297 F. Supp. 2d at 177 ("While [the complaint] asserts that defendants engaged in false or misleading advertising, it does not plead that [plaintiffs] were in any way deceived—or even saw—any of that advertising."). Here, on the other hand, Plaintiffs allege that they "relied on Defendants' statements," and describe those statements at length in the CAC. *See, e.g.*, *CAC* ¶¶ 197; *see also*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

*id.* ¶¶ 39-101.  Although Plaintiffs do not specifically state that they *read* Defendants'
statements, the Court can reasonably infer that if Plaintiffs relied on Defendants' statements,
they must have read or heard them.  *See Iqbal*, 556 U.S. at 679-80.

The analysis in *Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
and Products Liability Litigation*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010), comes closer to the
facts of this case.  In *Toyota Unintended Acceleration*, a putative class action vehicle defect case,
the plaintiffs generally alleged that "each Plaintiff did not receive the benefit of their bargain
and/or overpaid for their vehicles, made lease payments that were too high and/or sold their
vehicles at a loss when the public gained partial awareness of the defect."  *Id.* at 1166-67.  The
court reasoned that those allegations were sufficient for absent class members, but, drawing on
two out-of-circuit class certification cases, held the named plaintiffs to a higher standard.  *See id.*
at 1167 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) and *Kohen v. Pac.
Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009)).  The court acknowledged that its approach
was somewhat at odds with the Supreme Court's dicta in *Lewis v. Casey*, 518 U.S. 343, 357
(1996) that "[t]he general allegations of the complaint . . . may well have sufficed to claim injury
by named plaintiffs," but nonetheless concluded that "it seems reasonable to require specific
allegations by the lead Plaintiffs that support a cognizable injury under Article III, which would
preferably be detailed enough so that the Court and Toyota would have no trouble discerning
what constitutes the injury—e.g., the 'overpayment, loss in value, or loss of usefulness.'"  *See
Toyota Unintended Acceleration*, 754 F. Supp. 2d at 1167 & n.14.

This Court is not persuaded by *Toyota Unintended Acceleration* that named plaintiffs and
potential class members are subject to different standing requirements at the pleading stage.  At
this point in the litigation, the only question is whether Plaintiffs have standing to assert their
individual claims.  Although Plaintiffs will need to satisfy a more stringent analysis when they
seek class certification, neither *Toyota Unintended Acceleration* nor Defendants cite any binding
authority indicating that it would be proper to engage in that analysis now.  Further, the
heightened pleading standard for named plaintiffs set out in *Toyota Unintended Acceleration*
cannot be reconciled with the Supreme Court's ruling that "[a]t the pleading stage, general
factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion
to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary
to support the claim.'"  *See Lujan*, 504 U.S. at 561.  The Ninth Circuit has confirmed that
principle applies to named plaintiffs in putative class actions.  *See Jewel v. Nat'l Sec. Agency*,
673 F.3d 902, 911-12 (9th Cir. 2011) (explaining that "[u]ltimately [plaintiff] may face similar
procedural, evidentiary and substantive barriers as the plaintiff in *ACLU*—a case decided on
summary judgment—"but at this initial pleading stage, the allegations are deemed true and are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

presumed to embrace the specific facts needed to sustain the complaint.") (citations and internal quotation marks omitted).  As a result, the Court declines to follow *Toyota Unintended Acceleration*.

> ### iii.    Standing to Seek Injunctive Relief

In their third standing challenge, Defendants argue that Plaintiffs do not have standing to seek injunctive relief because they cannot claim a realistic threat of future injury.  *See Mem.* 15:7-16:11.

The Court notes, on its own motion, that injunctive relief is not an independent cause of action.  It is a form of relief that may be granted if Plaintiffs prevail on a substantive claim.  *See Van Ryzin v. CitiMortgage, Inc.*, No. CV 13-00086 PSG (OPx), 2013 WL 1206807, at *3 (C.D. Cal. Mar. 22, 2013); *Nguyen v. PennyMac Loan Servs., LLC*, No. SACV 12-01574 CJC (ANx), 2012 WL 6062742, at *5 (C.D. Cal. 2012).  As a result, Plaintiffs' eighteenth cause of action, for injunctive relief, is DISMISSED, without leave to amend.  However, because Plaintiffs are seeking injunctive relief in connection with some of their substantive claims, *see CAC* ¶¶ 181, 217, and may amend their pleading to include further requests, the Court nonetheless addresses the merits of Defendants' argument.

Defendants' reasoning is straightforward.  Assuming that Defendants' marketing is misleading, and caused Plaintiffs to suffer an injury when they purchased 5-hour ENERGY, Plaintiffs will not suffer any *future* injury because they will not continue to rely on Defendants' marketing or make any further purchases of 5-hour ENERGY.  *See Mem.* 15:7-15:18.  As a result, they cannot show that they have any injury that would be redressed by an injunction.  *See Lujan*, 504 U.S. at 560.  Plaintiffs have not pleaded any intent to purchase 5-hour ENERGY in the future.  *See CAC*.

In the absence of any binding authority governing this issue, the district courts in this Circuit have split into three camps.  Many courts have rejected Defendants' position on policy grounds.  For example, in *Henderson v. Gruma Corp.*, a leading case for this point of view, the court reasoned:

> If the Court were to construe Article III standing for FAL and UCL claims as
> narrowly as the Defendant advocates, federal courts would be precluded from
> enjoining false advertising under California consumer protection laws because a
> plaintiff who had been injured would always be deemed to avoid the cause of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

> injury thereafter ('once bitten, twice shy') and would never have Article III standing. . . .
>
> While Plaintiffs may not purchase the same Gruma products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws. That objective is "to protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services." Defendant has not presented evidence or even alleged that it has removed its allegedly misleading advertising from its products. With such advertising remaining on supermarket shelves, Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising.

No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011) (citations omitted); *accord Lanovaz v. Twinings North Am., Inc.,* No. C-12-02646-RMW, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014); *Harris v. Las Vegas Sands L.L.C.*, No. CV 12-10858 DMG (FFMx), at *4-5 (C.D. Cal. Aug. 16, 2013); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6-7 (N.D. Cal. Dec. 13, 2012); *Cabral v. Supple, LLC*, No. EDCV 12-00085-MWF (OPx), 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012).

A second group of courts have taken a middle approach, reasoning that plaintiffs who are aware of defendants' misrepresentations can still be harmed if those misrepresentations continue, because the plaintiffs cannot rely on defendants' representations. *See Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D. 2012) ("Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress."); *accord Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014); *Adams v. Target*, No. CV 13-5944-GHK (PJWx), at *5 (C.D. Cal. Mar. 3, 2014); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013). Courts have only taken this approach when plaintiffs have indicated that they are interested in purchasing the products-in-suit in the future. *See Werdebaugh*, 2014 WL 2191901, at *9; *Rahman*, 2014 WL 325241, at *10; *Jou*, 2013 WL 6491158, at *4; *Ries*, 287 F.R.D. at 533.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

A third group of courts have concluded—often with some reluctance—that "a public policy exception . . . does not square with Article III's mandate." *See Delarosa v. Boiron, Inc.*, No. SACV 10-1569-JST (CWx), 2012 WL 8716658, at \*5-6 (C.D. Cal. Dec. 28, 2012); *accord Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at \*13 (C.D. Cal. Apr. 9, 2014); *Luman v. Theismann*, No. 13-cv-00656-KJM-AC, 2014 WL 443960, at \*6-8 (E.D. Cal. Feb. 4, 2014); *Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM(DHB), 2013 WL 1969957, at \*2-5 (S.D. Cal. May 13, 2013). Those courts have held that plaintiffs who know the truth about allegedly deceptive claims lack standing to bring suit for injunctive relief.

The middle-path analysis articulated in *Ries* is not applicable here, because Plaintiffs have not indicated that have any interest in purchasing 5-hour ENERGY in the future. *See Rahman*, 2014 WL 325241, at \*10 ("[T]o establish standing, plaintiff must allege that he intends to purchase the products at issue in the future.").

Setting the *Ries* approach to the side, the Court finds the *Delarosa* line of cases more persuasive than *Henderson* and its followers. The federal courts are not empowered to set aside the standing requirements of Article III in the name of public policy, even when that policy is laudable. If Plaintiffs do not intend to purchase 5-hour ENERGY in the future, Defendants' alleged misrepresentations cannot do them any injury, and injunctive relief will not provide them with any redress. Accordingly, Plaintiffs' requests for injunctive relief are DISMISSED. However, because Plaintiffs may allege that they are interested in purchasing 5-hour ENERGY in the future, Plaintiffs are granted leave to amend.

B.    Express Preemption

As a second threshold matter, Defendants argue that Plaintiffs' claims are expressly preempted by federal law.[5] *Mem.* 16:14-20:8.

The Supremacy Clause of the United States Constitution empowers Congress to enact legislation that preempts state law. *See Gibbons v. Ogden*, 22 U.S. 1, 82 (1824) ("In every such case, the act of Congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it."); *Law v. Gen. Motors Corp.*, 114 F.3d

---

[5] The Court assumes that Defendants' preemption argument is limited to Plaintiffs' state law claims, as Plaintiffs' federal claims under the Magnuson-Moss Act cannot be preempted by another federal statute. *See, POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (explaining that federal statutes do not preempt each other.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

908, 909 (9th Cir. 1997) ("The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules.").  "Federal preemption occurs when:  (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citation omitted).

Defendants argue that the first form of preemption, express preemption, applies here. They specifically rely on the preemption provisions of the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*, and the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343.  *See Mem.* 18:20-20:8.

The FDCA gives the FDA the power to protect the public health by ensuring that "foods are safe, wholesome, and properly labeled."  *See* 21 U.S.C. § 393(b)(2)(A).  It provides that foods are "misbranded" if its labeling "is false or misleading in any particular."  21 U.S.C. § 343(a)(1).  Dietary supplements like 5-hour ENERGY are considered "food" for the purposes of the FDCA.  *See* 21 U.S.C. § 321(ff) ("[A] dietary supplement shall be deemed to be a food within the meaning of this chapter.").  Under the NLEA, states may not "directly or indirectly establish" any nutrition labeling requirements that are "not identical" to the requirements promulgated by the FDA, except by petitioning the Secretary of Health and Human Services. *See* 21 U.S.C. § 343-1.  As a result, courts have consistently held that the NLEA preempts claims that would impose any labeling requirements inconsistent with federal law.  *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (holding that the NLEA and FDCA preempted a claim that the phrase "0g Trans Fat" was misleading, where the statement was permitted under FDA regulations); *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM (AJWx), 2011 WL 104555, at *8-9 (C.D. Cal. Mar. 14, 2011) (holding that the NLEA and FDCA preempted a claim that the phrases "No Cholesterol" and "Cholesterol Free" were misleading, where the term "Cholesterol Free" was permitted by FDA regulations).

Defendants contend that Plaintiffs are:  (1) "demand[ing] that 5-hour ENERGY disclose the quantity of caffeine in each of the different varieties of energy shots," *see Mem.* 19:15-19:23; and (2) seeking additional "warnings on its label and/or packaging," *see id.* 19:26-20:8. According to Defendants, those claims are preempted, because they would impose labeling requirements that go beyond the ambit of federal law.  *See id.* 19:9-20:8.

Defendants' argument is unpersuasive, because it is based on a strained misreading of the CAC.  Plaintiffs are not seeking a disclosure of the amount of caffeine in 5-hour ENERGY.  *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

*Opp.* 17:13-17:14. Nor are they arguing that Defendants should include additional warnings on 5-hour ENERGY's label or packaging. *See id.* 18:4-18:10. Plaintiffs allege that because 5-hour ENERGY is nothing more than a caffeine shot (and because decaffeinated 5-hour ENERGY is nothing more than a placebo) Defendants' attempts to attribute 5-hour ENERGY's effects to B-vitamins and amino acids are false and misleading. *See CAC* ¶¶ 49-62, 68-72. Although the CAC discusses the caffeine contents of 5-hour ENERGY, it does so to show that 5-hour ENERGY's effects are attributable to caffeine, not B-vitamins or amino acids. *Compare id.* ¶¶ 56-57 (alleging that the concentration of caffeine in 5-hour ENERGY is approximately seven times the concentration of caffeine in a cup of coffee) *with* ¶ 49 (alleging that the B-vitamins and amino acids in 5-hour ENERGY do not have any effect). Similarly, when the CAC alleges that Defendants deemphasize the role of caffeine in 5-hour ENERGY, it does so to highlight Defendants' corresponding emphasis on the effects of 5-hour ENERGY's B-vitamins and amino acids. *See id.* ¶¶ 49-57. These allegations, read in context, cannot support Defendants' characterization of Plaintiffs' claims. As a result, Plaintiffs' claims are not preempted.

In addition, Defendants' express preemption argument simply does not apply to Plaintiffs' other allegations that: (1) the claims "5 hours of energy now" and "Hours of energy now" are false and misleading, *see id.* ¶¶ 44-48; (2) the claim of "no crash" is misleading, *see id.* ¶¶ 63-67; or (3) Defendants have used "phony clinical studies" to support their marketing claims, *see id.* ¶¶ 73-101.

As a secondary argument, Defendants attempt to draw a parallel between this case and *Hairston v. South Beach Beverage Company, Inc.*, No. CV 12-1429-JFW (DTBx) (C.D. Cal. May 18, 2012). However, *Hairston* is wholly inapposite here. In that case, the plaintiff alleged that the labeling of PepsiCo's SoBe 0 Calorie Lifewater beverages ("Lifewater") was deceptive in three ways. *See id.* at *1. He claimed that: (1) the label "all natural" was deceptive because Lifewater contained synthetic ingredients; (2) the names of various fruits on Lifewater's labels were misleading, because Lifewater did not contain any actual fruit or fruit juice, and they might lead consumers to believe that Lifewater was "all natural"; and (3) the use of common vitamin names on the Lifewater label was misleading, because the vitamins in Lifewater were synthetic. *See id.* *1. The defendants moved to dismiss the plaintiff's "fruit name" and "vitamin name" claims on the grounds that their use of those names was consistent with FDA regulations. *See id.* *3. The plaintiff conceded that point, but contended that "he included his fruit name and vitamin name claims only as support for his 'all natural' claim." *See id.* *3. The court rejected his view, reasoning that "[p]laintiff's argument would allow [p]laintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

avoiding a patchwork of different state standards." *Id.* The court did not hold that the plaintiff's "all natural" claim was preempted. *See id.* at *3-4.

Defendants do not analyze *Hairston* in any detail, and it is not entirely clear whether they are suggesting that Plaintiffs' purported caffeine labeling claims are like the *Hairston* plaintiff's fruit and vitamin name claims, and that Plaintiffs' other claims are like the *Hairston* plaintiff's "all natural" claim, or vice versa. Any comparison with *Hairston* fails because, as explained above, Plaintiffs are *not* seeking a disclosure of the amount of caffeine in 5-hour ENERGY or demanding caffeine-related warnings. Defendants' citation to *Fisher I* fails for the same reason. *See Fisher v. Monster Beverage Corp.* ("*Fisher I*"), No. EDCV 12-02188-VAP (OPx), 2013 WL 4804385, at *9-11 (C.D. Cal. July 9, 2013) (holding that the NLEA and FDCA preempted a claim that an energy drink did not adequately label its caffeine contents and did not provide sufficient warnings).

For the reasons above, Defendants' motion to dismiss is DENIED to the extent it is based on an express preemption argument.

C.     Primary Jurisdiction Doctrine

In their third threshold claim, Defendants argue that the Court should find that the primary jurisdiction doctrine applies to Plaintiffs' claims. *See Mem.* 20:9-22:10.

The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). It is properly applied when there is:

(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

*Western Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1200 (9th Cir. 2008) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008)). The Ninth Circuit has emphasized that that the primary jurisdiction doctrine "is not . . . a doctrine that require[s] all claims within an agency's purview to be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
| --- | --- | --- | --- |
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

within the agency's ambit." *Id.* (internal quotation marks and citations omitted). When a court finds that the doctrine applies, it "refers" the issue to the relevant agency, by staying its proceedings or dismissing the case without prejudice, so that the parties may seek an administrative decision. *See Clark*, 523 F.3d at 1115.

The primary jurisdiction doctrine is generally not applicable in cases such as this, where the plaintiffs' claims "do not require an FDA ruling as to whether the FDCA ha[s] been violated . . . [or] require the FDA's particular expertise or uniformity of labeling requirements." *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 368, 374-75 (N.D. Cal. 2010) (holding that the primary jurisdiction doctrine did not apply to a claim that a beverage label misled consumers into believing that it was made or bottled in New Mexico); *see also Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012) ("[T]his case is far less about science than it is about whether a label is misleading. Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading.") (internal quotations marks and citation omitted); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) ("[P]laintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. As courts faced with state law challenges in the food labeling arena have reasoned, this is a question courts are well-equipped to handle.") (internal quotation marks and citation omitted).

Defendants' argument that the primary jurisdiction doctrine applies here is based principally on their view that the core issues in this case revolve around FDA and federal regulations. *See Mem.* 21:24-21:26 ("The FDA and federal regulations are either touchstones for Defendants' product statements or they are not. If they are, then the FDA has primary jurisdiction."). That view is unfounded. As explained above, Plaintiffs are not alleging that Defendants' marketing of 5-hour ENERGY violated the FDCA, and are not attempting to impose any labeling requirements inconsistent with federal law. *See Opp.* 20:21-20:23. Although the CAC alleges that Defendants violated the FDCA in the course of marketing their Chaser products, those allegations are only relevant to Plaintiffs' alter ego claims. *See CAC* ¶¶ 102-121.

The strongest point in Defendants' favor is Plaintiffs' claim that the FDA is investigating 5-hour ENERGY. *See id.* ¶ 101. However, the mere existence of an agency investigation does not weigh in favor of a referral under the primary jurisdiction doctrine. Defendants have not made any showing that the litigation of this case would conflict with the FDA's investigation. In the absence of such a showing, there is no reason to think that this case will interfere with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

FDA's uniform administration of federal labeling laws. *See Western Radio Servs. Co.*, 530 F.3d at 1200; *see In re Toyota Unintended Accel.*, 754 F. Supp. 2d at 1199-1200 (declining to apply the primary jurisdiction doctrine because "Toyota has not shown that an actual conflict exists between Plaintiffs' claim or requested relief and the NHTSA investigation."); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218 (N.D. Cal. 2002) (declining to apply the primary jurisdiction doctrine because "Defendant has not identified any specific conflict between this action and the on-going NHTSA investigation of the same problem"). As a result, the Court finds that referral under the primary jurisdiction doctrine is not warranted.

      D.     <u>Adequacy of the CAC Under Rule 8(a)</u>

      Turning to the adequacy of the pleading, Defendants' first argument is that the CAC does not satisfy Federal Rule of Civil Procedure 8(a), because "it fails to apprise Defendants and the Court of the precise nature of any of Plaintiffs' claims." *Mem.* 3:26-4:7. Defendants' argument is baseless.

      The CAC alleges that Defendants' promotion of 5-hour ENERGY is built around a core of false statements and misrepresentations that have led consumers, including Plaintiffs, to purchase 5-hour ENERGY. *See generally CAC* ¶¶ 1-8, 39-101, 151-324. The CAC specifies the representations that are at the heart of the Company's marketing efforts and explains why Plaintiffs believe they are false or misleading. *See id.* Those allegations, which are detailed above, are more than enough to give Defendants notice of the nature of Plaintiffs' claims.

      Defendants' primary complaint seems to be that the CAC does not give them enough information about Plaintiffs. That complaint is unfounded. As explained above, the CAC alleges that Plaintiffs purchased 5-hour ENERGY in reliance on Defendants' claims. *See CAC* ¶¶ 9-23, 165, 172, 179, 188, 197-199, 214-215, 228, 246-247, 268-269, 281-282, 284, 293-294, 301, 308, 316. Plaintiffs are not required to plead further specific factual details at this stage of the litigation. Moreover, it is hardly surprising that in a consumer class action case, the plaintiffs' allegations would focus principally on the details of the defendants' wrongful conduct, or that there would be few if any material differences between the plaintiffs.

      Defendants' secondary argument, that the CAC contains allegations "directed to products that Innovation Ventures sold in the past, that are entirely different than the products at issue here, that were discontinued years ago, and that have *no connection* to any Plaintiff," *Mem.* 3:10-3:13, is equally spurious. As the Court has previously explained, and as the CAC makes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

absolutely clear, those allegations are relevant to Plaintiffs' alter ego claims. *See CAC* ¶¶ 102-118, 122-127; *March 21, 2012 Order*, *Podobedov*, Dkt. # 47.

For the reasons above, Defendants' overarching motion to dismiss based on Rule 8(a) is DENIED.

E.      Adequacy of the CAC Under Rule 9(b)

Next, Defendants contend that Plaintiffs' claims under the UCL, FAL, and CLRA do not satisfy Rule 9(b), because they do not plead fraud with sufficient particularity. *See Mem.* 4:8-13:5.  The Court agrees with respect to the CAC's allegations concerning Defendants' claims in their advertising and marketing materials, but finds that Plaintiffs have satisfied Rule 9(b) for one allegedly misleading statement on 5-hour ENERGY's label.

i.      *Statements in Advertising and Marketing Materials*

As noted above, the CAC very generally pleads that Plaintiffs relied on Defendants' claims concerning 5-hour ENERGY.  *See CAC* ¶¶ 165, 172, 179, 188, 197-199, 214-215, 228, 246-247, 268-269, 281-282, 284, 293-294, 301, 308, 316.  However, it does not allege that Plaintiffs read or heard any 5-hour ENERGY advertisements or marketing statements, and does not indicate that Plaintiffs read Defendants' clinical study summaries posted on the 5-hour ENERGY website.  Plaintiffs' broad allegations of reliance are not enough to satisfy the strictures of Rule 9(b).

In *Kearns v. Ford Motor Co.*, the Ninth Circuit affirmed the dismissal of the plaintiff's complaint under Rule 9(b) because he had failed, among other things, to identify what advertisements or sales materials he had relied upon when purchasing an automobile.  *See* 567 F.3d 1120, 1126 (9th Cir. 2009).  Plaintiffs here have similarly failed to indicate what particular statements (in advertisements or otherwise) they relied on when purchasing 5-hour ENERGY. As a result, their claims do not pass muster under Rule 9(b).  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2014 WL 295302, at *5 (S.D. Cal. Jan. 27, 2014) (holding that plaintiffs failed to satisfy Rule 9(b) where they had not identified the advertisements to which they had been exposed); *Kane v. Chobani, Inc.*, No. 12-CV-2425-LHK, 2013 WL 5289253, at *9-10 (N.D. Cal. Sept. 19, 2013) (same); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (same); *Goldsmith v. Allergan, Inc.*, No. CV 09-7088 PSG (Ex), 2011 WL 2909313 at *4 (C.D. Cal. May 25, 2011) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Plaintiffs cannot salvage their claims by alleging that Defendants engaged in a consistent advertising campaign. "[T]he existence of a prolonged marketing and advertising strategy does not relieve Plaintiffs of the need to allege *exposure* to the marketing strategy and particular misrepresentations relied upon." *Fisher II*, EDCV 12-2188-VAP (OPx), at *30 (emphasis added).

The cases Plaintiffs offer to support their position do not indicate that the generalized claims of reliance in the CAC are enough to satisfy Rule 9(b). In *Oreck Corporation Halo Vacuum & Air Purifiers Marketing & Sales Practices Litigation*, two plaintiffs specified that they made purchases after watching online videos; two plaintiffs watched infomercials; two plaintiffs watched video advertisements; and one plaintiff watched both an infomercial and online advertisements. *See* MDL No. 12-2317 CAS (JEMx), 2012 WL 6062047, at *2 (C.D. Cal. Dec. 3, 2012). The court held that those allegations, together with the plaintiffs' claims that the defendant engaged in "a clear common message" in its advertising, satisfied Rule 9(b), even though the complaint did not "specify *exactly* which advertisement [each] plaintiff viewed." *See id.* at *15 (emphasis added). Similarly, in *Morrison v. TriVita, Inc.*, the court found that Rule 9(b) was satisfied where the plaintiff stated that she had relied on the statements made in the defendant's late-night television infomercial, and alleged that the defendant's "promotional materials conveyed a common allegedly fraudulent message." *See* No. 12-CV-1387 BEN (BLM), 2013 WL 1148070, at *1, 5 (S.D. Cal. Mar. 19, 2013). Neither *Oreck Corporation* nor *Morrison* stand for the proposition that plaintiffs can survive a Rule 9(b) challenge without at least pleading the nature of their exposure to the defendants' allegedly misleading marketing campaign.

Accordingly, Plaintiffs' claims under the UCL, FAL, and CLRA are DISMISSED, with leave to amend, to the extent that they are based on Defendants' advertising or marketing materials, including the 5-hour ENERGY website.

### ii.   Statements on the 5-hour ENERGY Label

The Rule 9(b) analysis differs with respect to Plaintiffs' claims based on the statements on 5-hour ENERGY's label.

Many courts in California have applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims. The "who" are the defendants; the "what" are their allegedly misleading claims; the "when" is the proposed class period, during which those claims were made; the "where" is the offending label; and the "how" is the plaintiff's explanation why

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

the defendant's claims are misleading. *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-00196-WHO, 2013 WL 5407039, at *2-3 (N.D. Cal. Sept. 25, 2013); *Clancy v. The Bromley Tea Co.*, No. 12-cv-03003-JST, 2013 WL 4081632, at *10-11 (N.D. Cal. Aug. 9, 2013); *Chacanaca*, 752 F. Supp. 2d at 1126; *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099-1100 (C.D. Cal. 2012).

Measured against this standard, Plaintiffs' allegation that the 5-hour ENERGY name and label misleadingly claim that 5-hour ENERGY gives its users five hours of energy satisfies the requirements of Rule 9(b).

The CAC alleges that the name 5-hour ENERGY is misleading, either alone or combined with the claims on Defendants' original label ("5 hours of energy now") or modified label ("Hours of energy now"), because 5-hour ENERGY does not provide consumers with five hours of energy. *See CAC* ¶¶ 44-48. This claim was consistent across 5-hour ENERGY products. The CAC suggests that all of the products relevant to this suit bore either the claim "5 hours of energy now" or the claim "Hours of energy now" on their labels. *See id.* However, even if that is not the case, it is self-evident that all 5-hour ENERGY products were labeled with the name 5-hour ENERGY, and Plaintiffs assert that the 5-hour ENERGY name itself is misleading. *See id.* ¶ 44.

That consistency distinguishes Plaintiffs' label-based allegations from similar allegations in *Fisher II* and *Yumul*, which were held to be inadequate under Rule 9(b). In *Fisher II*, a plaintiff alleged that he had purchased a Monster Rehab energy drink within a six year period, but did not account for that fact that in March 2013, the defendants changed the label on Monster Rehab and removed the "Hydrates Like a Sport Drink" statement on which the plaintiff had relied. *See Fisher II*, EDCV 12-2188-VAP (OPx), at *26-29. In *Yumul*, the court reasoned that the complaint failed the Rule 9(b) standard because the plaintiff had "not allege[d] that Nucoa packaging remained consistent throughout the decade, *i.e.*, that Smart Balance represented that the product contained no cholesterol and was healthy (saludable) during the entire class period." *See Yumul*, 733 F. Supp. 2d at 1124. Those problems are not applicable to Plaintiffs' "five hours of energy" claim, because the 5-hour ENERGY name was used for all 5-hour ENERGY products.

However, *Yumul* is applicable to the only other allegation in the CAC that appears to be based, at least in part, on the contents of the 5-hour ENERGY label: Plaintiffs' claim that the statement "No crash later" is deceptive. *See CAC* ¶¶ 63-67. Although the CAC does not specifically assert that the statement "No crash later" is included on the 5-hour ENERGY label,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

the statement appears in two photographs of 5-hour ENERGY bottles and the packaging of one decaffeinated 5-hour ENERGY multipack shown in the CAC. *See CAC* at 10, 14, 17. However, the CAC does not indicate that the "No crash later" statement was uniform across 5-hour ENERGY products during the relevant time period, and the Court cannot assume that the statement was unchanged. *See Yumul*, 733 F. Supp. 2d at 1124. As a result, Plaintiffs' label-based "No crash later" claim (to the extent Plaintiffs are asserting one) fails Rule 9(b).

Defendants' motion to dismiss pursuant to Rule 9(b) is DENIED with respect to the claim on 5-hour ENERGY's label that 5-hour ENERGY gives consumers five hours of energy. Plaintiffs' on-label claims under the UCL, FAL, and CLRA are otherwise DISMISSED, with leave to amend.

F.    Nationwide Claims

Defendants raise several challenges to the four causes of action Plaintiffs seek to assert on behalf of a nationwide class: violation of the Magnuson-Moss Act, breach of express warranty, breach of implied warranty, and fraud. *See Def. Supp. Mem.* 2:10-14:11.

At this point in the litigation, a choice of law analysis would be premature. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (denying motion to strike class claims at the pleading stage); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage."). However, to proceed on their individual claims, Plaintiffs must show that they have stated a claim under the laws of at least one state.

The CAC does not indicate which states' laws Plaintiffs seek to invoke for their nationwide claims, either on their own behalf or on behalf of a putative class. For the purposes of this motion, the Court will infer that Plaintiffs are asserting claims under the laws of the states in which they reside or purchased 5-hour ENERGY: California, Florida, Georgia, Illinois, Indiana, Louisiana, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, and Pennsylvania.[6] *See CAC* ¶¶ 9-16, 18-27. The question before the Court is whether the CAC adequately pleads those claims.

---

[6] Plaintiffs have stated that they are not asserting any claims under Alabama law. *See Pl. Supp. Opp.* 3 n.1. Accordingly, Plaintiffs' nationwide claims are DISMISSED, without leave to amend, to the extent they are based on Alabama law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

i.      *Breach of Express Warranty*

Defendants have raised five challenges to Plaintiffs' cause of action for breach of express warranty. The Court addresses each in turn.

First, Defendants contend that Plaintiffs have not adequately stated the terms of the alleged express warranty. *See Def. Supp. Mem.* 5:13-5:25; *see, e.g.*, *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 FJ, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009) (noting that an express warranty claim "must describe the exact terms of the warranty"). The Court disagrees. The CAC alleges that "Defendants expressly warranted in their marketing, advertising and promotion of 5-hour ENERGY products that those products could provide five hours of energy, with no crash later, and an immediate increase in energy, alertness and focus as a result of ingredients other than caffeine." *CAC* ¶ 300. The CAC, as noted above, gives several examples of those marketing and advertising claims. *See id.* ¶¶ 44-72. These allegations are sufficient to identify the terms of Defendants' alleged express warranty.

Second, Defendants argue that Plaintiffs' claim under Louisiana law fails, because Louisiana only recognizes express warranty claims in actions for violation of Louisiana's redhibition statute. *See In re Ford Motor Co. Bronco II Prods. Liability Litig.*, MDL No. 991, 1995 WL 491155, at *7 (E.D. La. Aug. 1995). Plaintiffs have not contested this point, and the CAC does not invoke Louisiana's redhibition statute. *See Pl. Supp. Opp.*; *CAC*. Accordingly, Plaintiffs' Louisiana express warranty claim is DISMISSED, with leave to amend.

Third, Defendants contend that Plaintiffs' claims under the laws of Florida, Georgia, Illinois, Indiana, and Pennsylvania are defective, because Plaintiffs have not pleaded vertical privity between themselves and Defendants. *See Def. Supp. Mem.* 6:26-7:21. In response, Plaintiffs argue that there is an exception to the privity requirement when a plaintiff relies on a manufacturer's labels or advertisements. *See Pl. Supp. Opp.* 5:5-17. However, Plaintiffs have only cited cases discussing California and Texas law. *See id.*; *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012); *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 131 (10th Cir. 1994) (applying Texas law). They have not discussed the laws of Florida, Georgia, Illinois, Indiana, or Pennsylvania. Thus, Plaintiffs' Florida, Georgia, Illinois, Indiana, and Pennsylvania express warranty claims are DISMISSED, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Fourth, Defendants assert that Plaintiffs' claims under the laws of Florida, Georgia, Illinois, Missouri, New Jersey, New Mexico, New York, Ohio, and Pennsylvania fail, because Plaintiffs did not give Defendants pre-litigation notice of their claims. *See Def. Supp. Mem.* 7:22-8:25. Plaintiffs counter that the notice sent by the *Podobedov* plaintiffs, as well as the *Podobedov* complaint, constituted notice for all Plaintiffs, because "[e]ach of the named Plaintiffs in the CAC was already a member of the proposed nationwide class." *See Pl. Supp. Opp.* 6:7-7:21.

Plaintiffs' argument rests of the faulty assumption that the *Podobedov* plaintiffs represented a nationwide class. They did not. The *Podobedov* plaintiffs *sought* to represent a nationwide class, but did not obtain class certification. *See Podobedov*, Dkt. # 1. Plaintiffs have not offered any authority suggesting that a complaint on behalf of a putative class can serve as pre-litigation notice for the entire class—a proposition that is difficult to accept, given that it would effectively render pre-litigation notice requirements meaningless.

The principal case Plaintiffs cite to support their argument, *In re Hydroxycut Marketing and Sales Practices Litigation*, 801 F. Supp. 2d 993 (S.D. Cal. 2011), does not lend them any help. In that case, the plaintiffs—unlike Plaintiffs here—stated in the complaint that they had given the defendants notice of their warranty claims. *See id.* at 1009. The *Hydroxycut* court held that further factual details were not required at the pleading stage. *See id.* It did not indicate that one plaintiff's pre-litigation notice served as notice for all other named plaintiffs.

Plaintiffs have not rebutted Defendants' contention that they failed to give adequate pre-litigation notice of their express warranty claims. As a result, Plaintiffs' express warranty claims under the laws of Florida, Georgia, Illinois, Missouri, New Jersey, New Mexico, New York, Ohio, and Pennsylvania are DISMISSED, with leave to amend.

Fifth, Defendants argue that Plaintiffs have failed to plead their California and Nevada express warranty claims, because they have not pleaded reliance. *See Mem.* 8:26-9:7. The Court disagrees. As explained above, Plaintiffs have adequately pleaded reliance for the purposes of Rule 8. *See supra* Sections IV.A(ii), IV.D.

For the reasons above, Plaintiffs' express warranty claims under the laws of Florida, Georgia, Illinois, Indiana, Louisiana, Missouri, New Jersey, New Mexico, New York, Ohio, and Pennsylvania are DISMISSED, with leave to amend. Plaintiffs may proceed on their express warranty claims under the laws of California and Nevada.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

### ii. *Breach of Implied Warranty*

Three of Defendants' challenges to Plaintiffs' implied warranty claims essentially mirror their challenges to Plaintiffs' express warranty claims. *See Def. Supp. Mem.* 6:19-6:24, 10:5-11:15. Plaintiffs' counterarguments likewise duplicate their counterarguments in defense of their express warranty claim. *See Pl. Supp. Mem.* 4:8-7:21. Thus, for the reasons explained above: (1) Plaintiffs' implied warranty claims under the laws of Florida, Georgia, Illinois, Nevada, and New York are DISMISSED, with leave to amend, because the CAC does not plead vertical privity; (2) Plaintiffs' implied warranty claims under the laws of Missouri, New Jersey, New York, Ohio, and Pennsylvania are DISMISSED, with leave to amend, because the CAC does not plead pre-litigation notice; and (3) Plaintiffs' Louisiana implied warranty claim is DISMISSED, with leave to amend, because Louisiana only recognizes implied warranty claims in redhibition actions.

Defendants' fourth challenge is specific to Plaintiffs' California implied warranty claim. Defendants argue that the CAC's allegations are defective because Plaintiffs have not pleaded that the products they purchased were unfit for consumption or ordinary use. *See Def. Supp. Mem.* 9:11-9:21. Under California law, the implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectations of the buyer.'" *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (citation omitted). Rather, it states that goods must be "fit for ordinary purposes for which such goods are used," and "provides for a minimum level of quality." *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). As a result, the implied warranty is breached "if the product lacks 'even the most basic degree of fitness for ordinary use.'" *See id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). The CAC does not state that 5-hour ENERGY is unfit for consumption or unfit for ordinary use. *See CAC* ¶¶ 304-308. As a result, it fails to state a claim for breach of the implied warranty under California law. Plaintiffs' California implied warranty claim is DISMISSED, with leave to amend.

Plaintiffs may proceed on their implied warranty claims under the laws of Indiana and New Mexico.

### iii. *Magnuson-Moss Act*

Defendants argue that Plaintiffs' claims under the Magnuson-Moss Act must be dismissed, because Plaintiffs have not alleged that the products at issue cost more than $5 and that the individual amounts in controversy are at least $25. *See Def. Supp. Mem.* 4:26-5:2; 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

U.S.C. § 2302(e) (products at issue must cost at least $5); 15 U.S.C. § 2310(d)(3)(A) (individual amount in controversy must be at least $25).

Defendants' first argument is unfounded. Plaintiffs' Magnuson-Moss Act claims are based on sales of 5-hour ENERGY multipacks, which cost between $11.99 and $25.99, respectively. *See CAC* ¶¶ 40, 152.

However, Defendants' second argument is well-taken for eight of the nine Plaintiffs seeking to assert Magnuson-Moss Act claims. Plaintiffs Casey, Duckworth, Ellis, Forrest, Guarino, Hermida, James, and Thompson have not alleged that they spent $25 or more on multipack purchases. *See id.* ¶¶ 11, 18, 20-22, 24-25, 26. Accordingly, those Plaintiffs' Magnuson-Moss Act claims are DISMISSED, with leave to amend.

Plaintiff Adler, on the other hand, alleges that he purchased 12-pack multipacks, which the CAC states cost approximately $25.99 each. *See id.* ¶¶ 23, 40. Those allegations are enough to satisfy the Magnuson-Moss Act's amount in controversy requirement.

The Magnuson-Moss Act allows for suits to enforce the terms of express or implied warranties, but generally "calls for the application of state written and implied warranty law." *See* 15 U.S.C. § 2301, *et seq.*; *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 832 (2006) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)). As a result, "claims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law." *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

Plaintiff Adler purchased 5-hour ENERGY in New Jersey. *See CAC* ¶ 23. However, as explained above, Plaintiffs have not stated a claim for breach of express or implied warranty under New Jersey law. *See supra* at Section IV.F.(i), IV.F.(ii). Accordingly, Adler's Magnuson-Moss Act claim is DISMISSED, with leave to amend.

>          iv.    *Fraud*

Defendants assert three principal challenges to Plaintiffs' fraud claims.

First, Defendants assert that the CAC does not satisfy Rule 9(b) and does not adequately plead reliance. *See Def. Supp. Mem.* 11:24-12:4, 13:8-14:2. This argument is addressed by the Rule 9(b) analysis above. For the reasons given above, Plaintiffs' fraud allegations are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

DISMISSED, with leave to amend, to the extent they are:  (1) based on Defendants' advertising and marketing claims, or (2) based on Defendants' on-label claims other than their claim that 5-hour ENERGY gives consumers five hours of energy.

Second, Defendants contend that the CAC does not adequately plead intent. *See Def. Supp. Mem.* 12:5-13:7.  The CAC alleges that Defendants made misrepresentations "intentionally, willfully, falsely, and knowingly."  *See CAC* ¶ 70.  Given that intent may be pleaded generally under Rule 9(b), these allegations are sufficient. *See* Fed. R. Civ. P. 9(b).

Third, Defendants argue that Plaintiffs' claims are barred by the statute of limitations in California, Louisiana, and Nevada.  *See Def. Supp. Mem.* 14:3-14:11.  The statute of limitations for fraud is three years in California and Nevada, and one year in Louisiana.  *See* Cal. Civ. Proc. Code § 338(d); La. Civ. Code Ann. art. 3492; Nev. Rev. Stat. § 11.190(3)(d).  Because the statute of limitations is an affirmative defense, courts address it at the pleading stage only to the extent that limitations problems are apparent on the face of the complaint.  *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC* , 733 F.3d 1251, 1254 (9th Cir. 2013).  The CAC indicates dates of sole purchase or last purchase for four Plaintiffs:  Duckworth (February 2013), Feiner (July 27, 2012), Forrest (December 2012), and Waring (December 31, 2012).  *See id.* ¶¶ 15, 24-25, 27. Each of those four Plaintiffs filed suit within a year of their last purchase, and thus are within the statute of limitations for California, Louisiana, and Nevada.  *See Compl., Duckworth v. Innovation Ventures, LLC*, CV 13-4445 PSG (PLAx) (C.D. Cal.), Dkt. #1 (Mar. 11, 2013); *Compl., Feiner v. Innovation Ventures, LLC*, CV 13-4003 PSG (PLAx) (C.D. Cal.), Dkt. #1 (Dec. 14, 2012); *Compl., Forrest v. Innovation Ventures, LLC*, CV 13-4006 PSG (PLAx) (C.D. Cal.), Dkt. #1 (Jan. 25, 2013); *Compl., Waring v. Innovation Ventures, LLC*, CV 13-4005 PSG (PLAx) (C.D. Cal.), Dkt. #1 (Jan. 28, 2013).  With respect to the other Plaintiffs, the CAC only states that the Plaintiffs purchased 5-hour ENERGY within the past eighteen months to six years.  *See id.* ¶¶ 9-14, 16, 18-23, 26.  In their cases, no statute of limitations bar is apparent from the face of the CAC.

For the reasons above, Plaintiffs' fraud claims are DISMISSED, with leave to amend, to the extent they are:  (1) based on Defendants' advertising and marketing claims, or (2) Defendants' on-label claims other than their claim that 5-hour ENERGY gives consumers five hours of energy.  Plaintiffs may proceed with their fraud cause of action based on Defendants' claim, on 5-hour ENERGY's label, that 5-hour ENERGY gives consumers five hours of energy.

G.   State Law Claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants have launched a barrage of challenges against the state law claims Plaintiffs seek to assert on behalf of proposed state-by-state subclasses. The Court addresses several issues grouped by subject matter, and then turns to the remaining state-specific challenges.

      i.    *Likelihood of Deceiving a Reasonable Consumer: California, New York, and New Jersey*

Defendants contend that Plaintiffs' California, New York, and New Jersey claims fail because the CAC does not allege that Defendants' statements would have deceived a reasonable consumer (California and New York) or had the capacity to mislead consumers (New Jersey). *See Mem.* 22:28-23:7, 24:16-24:28, 26:15-26:21; *see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (explaining that California's UCL, FAL, and CLRA "are governed by the 'reasonable consumer' test," meaning that plaintiffs "must 'show that members of the public are likely to be deceived.'") (citations omitted); *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) ("An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer.") (citations omitted); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) ("The capacity to mislead is the prime ingredient of all types of consumer fraud.").

The allegations in the CAC are based on Defendants' core claims about 5-hour ENERGY, such as their claim that 5-hour ENERGY gives consumers five hours of energy with "no crash later." *See CAC* ¶¶ 44-46, 63, 67. Those claims are prominently displayed on 5-hour ENERGY's label and packaging, and are a key part of 5-hour ENERGY's advertising. *See id.* at 10, 17, ¶¶ 44-46, 53-54, 59-61, 63, 68. Given that 5-hour ENERGY is sold as an energy drink, *see id.* ¶ 39, it is plausible that a reasonable consumer would be deceived or misled by those claims.

      ii.    *Standard, Quality, or Grade: New Mexico and Pennsylvania*

The New Mexico UPA and Pennsylvania UTPCPL prohibit claims "[r]epresenting that goods are of a particular standard, quality or grade . . . if they are of another." *See* N.M. Stat. Ann. § 57-12-2(D)(7); 73 Pa. Cons. Stat. § 201-2(4)(vii). Defendants argue that the CAC fails to state a claim under those statutes because it does not specify what "standard, quality or grade" Defendants allegedly represent 5-hour ENERGY meets. *See Mem.* 27:8-27:14, 27:1-27:3.

In their claim for violation of the New Mexico UPA, Plaintiffs allege that Defendants "misrepresented . . . that [5-hour ENERGY] would provide five hours of energy, with no crash

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|----------|------------------------|------|-------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

later, and an immediate increase in energy, alertness and focus as a result of ingredients other than caffeine." *See CAC* ¶ 244. That allegation is incorporated by reference into Plaintiffs' UTPCPL claim. *See id.* ¶ 251. This is the "standard, quality or grade" that Plaintiffs claim Defendants represented 5-hour ENERGY would meet. *See Jones v. Gen. Motors Corp.*, 124 N.M. 606, 610-11 (N.M. Ct. App. 1998) (indicating that the claim "Cadillac is a 'leader in quality' and guided by the motto, 'Craftsmanship a Creed–Accuracy a Law'" fell within the scope of § 57-12-2(D)(7); *Am. Fed. of State, County & Municipal Emp. v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-cv-5904, 2010 WL 891150, at *5 (E.D. Pa. Mar. 11, 2010) (holding that defendants' alleged "representation that the recalled fentanyl patches would release the drug at a safe dosage rate" fell within the scope of § 201-2(4)(vii)). Accordingly, Defendants' challenge to the CAC on this point fails.

Defendants have also argued that Plaintiffs' UTPCPL claim fails to the extent it is based on the definition of an "unfair or deceptive act[ ] or practice[ ]" in § 201-2(4)(ii). *See Mem.* 27:25-28:1. Section 201-2(4)(ii) prohibits claims "[c]ausing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services." Although the parties have not cited any authority interpreting § 201-2(4)(ii), it appears to be akin to a cause of action for false designation of origin. *See Brock v. Thomas*, 782 F. Supp. 2d 133, 144 (E.D. Pa. 2011); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 467-68 (E.D. Pa. 2009). No such claim is contained in the CAC. Accordingly, Plaintiffs' UTPCPL claim is DISMISSED, with leave to amend, to the extent it is based on § 201-2(4)(ii).

### iii.   *Knowledge:  California and New Mexico*

Defendants argue that Plaintiffs' California FAL and New Mexico UPA claims are inadequately pleaded because the CAC does not allege that Defendants knew their challenged statements were false. *See Mem.* 21:15-23:20, 27:15-27:20.

Defendants have misstated the applicable legal standard. Both the California FAL and the New Mexico UPA require plaintiffs to show that the defendant actually knew or *reasonably should have known* that its statements were false. *See Ariz. Cartridge Remfgs. Ass'n, Inc. v. Lexmark Int'l, Inc.*, 42 F.3d 981, 985 (9th Cir. 2005) (explaining that the FAL prohibits "any statement 'which is untrue or misleading, and which is known, o*r which by the exercise of reasonable care should be known*, to be untrue or misleading.'") (emphasis added); *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100-01 (1991) (holding that the knowledge requirement of the New Mexico UPA "is met if a party was actually aware that the statement was false or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

misleading when made, *or in the exercise of reasonable diligence should have been aware* that the statement was false or misleading.") (emphasis added).

The CAC satisfies both prongs of these knowledge requirements. It alleges that Defendants knew or should have known that their claims were false. *See CAC* ¶¶ 170, 244-245. In the context of the CAC, that allegation is enough to withstand Defendants' motion to dismiss.

    iv.    Reliance: *California, Illinois, Missouri, and Pennsylvania*

Defendants assert that the CAC does not sufficiently plead reliance for Plaintiffs' claims under California, Illinois, and Pennsylvania law. *See Mem.* 22:23-22:27, 28:4-28:7, 29:21-29:24. Defendants raise the same argument with respect to Plaintiffs' Florida and Missouri claims, but frame it as a failure to plead causation. *See Mem.* 25:18-25:10, 26:10-26:13.

The Rule 9(b) analysis applicable to Plaintiffs' California claims is set forth above. *See supra* Section IV.E. That analysis also applies to Plaintiffs' claims under the "deceptive" prong of the Illinois ICFA and Plaintiffs' claims under the Missouri MMPA, which are based on an allegation of fraud. *See CAC* ¶ 205; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.") (citation omitted); *compare Myers v. Sander*, No. 4:13 CV 2192 CDP, 2014 WL 1303647, at *2-3 (E.D. Mo. Apr. 1, 2014) (applying Rule 9(b) to fraud-based MMPA claims) *with Muhammad v. Public Storage Co.*, No. 14-246-CV-W-ODS, 2014 WL 3687328, at *3-4 (W.D. Mo. July 24, 2014) (holding that non-fraud-based MMPA claims are not subject to Rule 9(b)). Accordingly, Plaintiffs' claims under "deceptive" prong of the ICFA and Plaintiffs' claims under the MMPA are DISMISSED, with leave to amend, to the extent they are (1) based on Defendants' advertising and marketing claims, or (2) Defendants' on-label claims other than their claim that 5-hour ENERGY gives consumers five hours of energy.

On the other hand, Plaintiffs' claims under the "unfair" prong of the ICFA, Plaintiffs' claims under the Florida FDUPTA, and Plaintiffs' claims under the Pennsylvania UTPCPL are not subject to Rule 9(b).[7] *See Windy City Metal Fabricators Supply, Inc., v. CIT Tech. Fin.*

---

[7] Federal courts in Florida have split on the question of whether Rule 9(b) applies to the FDUPTA. *See U.S. Bank Nat'l Ass'n* v. *Capparelli*, No. 13-90323-CIV, 2014 WL 2807648, at *5 (S.D. Fla. June 20, 2014) ("Federal courts in this district have come out on both sides of this issue . . . ."); *Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV, 2014 WL 1018007, *4 (S.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#33/34

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

*Servs., Inc.*, 536 F.3d 663, 669-70 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under [the IFCA], a cause of action for unfair practices under the [IFCA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."); *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 511 (E.D. Pa. 2010) ("A plaintiff alleging deceptive conduct [under the UTPCPL] may proceed without satisfying the particularity element of Federal Rule of Civil Procedure 9(b).") (citation omitted).  The CAC's allegations of reliance satisfy the applicable *Twombly* pleading standard. *See supra* Sections IV.A(ii), IV.D.

> v.    *Damages: Florida, Illinois, Missouri, New Jersey, and New York*

Defendants argue that the CAC does not sufficiently plead damages or injury for Plaintiffs' Florida, Illinois, Missouri, New Jersey, or New York claims.  *See Mem.* 25:1-25:11, 25:21-25:25, 25:28-26:9, 26:22-26:28, 29:24-30:5.  The Court disagrees.

For each of the relevant causes of action, the CAC alleges that Defendants' alleged misrepresentations led Plaintiffs to purchase 5-hour ENERGY or led Plaintiffs to pay a price premium for 5-hour ENERGY.  *See CAC* ¶¶ 188, 198-199, 214-215, 228, 282.  Those allegations are adequate to support Plaintiffs' claims.  *See Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 U.S. Dist. LEXIS 77361, at *8-9 (S.D. Fla. May 29, 2013) (holding that materially identical allegations were sufficient to plead damages under the Florida FDUPTA); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911-12 (N.D. Ill. 2011) (holding that a plaintiff who would not have made a purchase, or would have purchased at a lower price, but for defendants' misleading omission, adequately pleaded damages); *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo. Ct. App. 2008) (holding that the Missouri MMPA allowed "the defrauded party to be awarded the difference between the actual value of the property [purchased] and the value if it had been as represented") (citation omitted); *Pontrelli v. MonaVie, Inc.*, No. 13-cv-4649, 2014 WL 4105417, at *6 (D.N.J. Aug. 19, 2014) (holding that a plaintiff who paid a premium for advertised benefits pleaded an ascertainable loss); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW), 2012 WL 764199, at *25 (E.D.N.Y. Mar. 5, 2012) (holding that a plaintiff who would have not purchased a product, but for the defendant's misleading omissions, adequately pleaded damages).

---

Fla. Mar. 14, 2014) ("The Court is aware that federal courts in this district have ruled inconsistently on this issue.").  Because Defendants have not offered any argument that Rule 9(b) should apply to the FDUPTA, *see Mem.* 25:18-25:20, the Court only considers whether Plaintiffs' Florida claims satisfy Rule 8(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

#### vi.    Statute of Limitations:  Florida, New Mexico, and New York

Defendants contend that Plaintiffs' Florida, New Mexico, and New York claims are barred by the statute of limitations.  *See Mem.* 24:7-24:15, 25:13-25:17, 27:2-27:7.  The Court disagrees.

As explained above, courts only apply the statute of limitations at the pleading stage if a limitations problem is apparent on the face of the complaint.  *See Rivera*, 735 F.3d at 902.  The relevant statute of limitations is four years for Plaintiffs' Florida and New Mexico claims, and three years for Plaintiffs' New York claims.  *See* Fla. Stat. Ann. § 501.207(5); N.M. Stat. Ann. § 37-1-4; N.Y.C.P.L.R. § 214(2).  The CAC does not indicate that the relevant Plaintiffs' purchases of 5-hour ENERGY were outside of those time periods.  *See CAC* ¶¶ 9 (stating that Plaintiff Podobedov purchased 5-hour ENERGY "[o]n various occasions in the last four years"), ¶ 10 (stating that Plaintiff Moussouros purchased 5-hour ENERGY "[o]n various occasions in the last four years"), ¶ 22 (stating that Plaintiff Feiner purchased 5-hour ENERGY "[i]n the last four to six years"), ¶ 26 (stating that Plaintiff Hermida purchased 5-hour ENERGY on January 21, 2013), ¶ 27 (stating that Plaintiff Feiner purchased 5-hour ENERGY on July 27, 2012).  Accordingly, Defendants' statute of limitations argument fails.

#### vii.    California-Specific Issues

Defendants raise two arguments specific to Plaintiffs' California claims.  Both lack merit.
First, Defendants argue that Plaintiffs have not pleaded their claim under the California UCL's "unfair" prong because they have not alleged that Defendants violated any specific constitutional, statutory, or regulatory standard.  *See Mem.* 23:8-23:14.  The definition of "unfair" conduct in cases involving consumers is a matter of debate among California courts. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169-70 (9th Cir. 2012) (discussing the division among courts).  Some courts have "held that 'unfair' conduct occurs when [a] practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'"  *See id.* at 1169.  Other courts, including the *Gregory* court cited by Defendants, have applied a narrower definition.  *See id.* at 1169-70; *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (holding that a claim under the "unfair" prong of the UCL must "be 'tethered' to specific constitutional, statutory, or regulatory provisions.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

The Court does not need to decide what definition of "unfair" conduct applies here, because the CAC satisfies the more stringent definition set out *Gregory*. The CAC alleges that Defendants violated the "unfair" prong of California's UCL by making misrepresentations about 5-hour ENERGY. *See CAC* ¶ 163. Plaintiffs' FAL and CLRA claims are based on the same allegation. *See id.* ¶¶ 168, 176-178. Accordingly, the Court finds that Plaintiffs' "unfair" UCL claim is "tethered" to Plaintiffs' claims under the FAL and CLRA. *See Gregory*, 104 Cal. App. 4th at 854. As a result, Plaintiffs' "unfair" UCL claim is DISMISSED, with leave to amend, except to the extent it is based on Defendants' on-label claim that 5-hour ENERGY gives consumers five hours of energy.

Second, Defendants argue that Plaintiffs have not pleaded that they have satisfied the CLRA's pre-litigation notice requirements, because Plaintiffs have not specified precisely when they sent a notice to Defendants, pleaded that Defendants received the notice, or pleaded that Defendants responded to the notice. *See Mem.* 23:21-24:5. It is unclear why Defendants think such specific allegations are required to state a claim under the CLRA. The only authority they have cited in support of their position is inapposite: in that case, the court specifically noted that the plaintiff "did not allege in the First Amended Complaint that it had given Defendant proper notice under the CLRA." *See Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003). Here, on the other hand, the CAC states that "[p]rior to the filing of [the CAC], CLRA notice letters were served on Defendants which comply in all respects with California Civil Code § 1782(a)," the CLRA's notice provision. *See CAC* ¶ 180; Cal. Civ. Code § 1782(a). That is enough, at this stage of the litigation, to satisfy the CLRA's notice requirements. *See Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007) (rejecting argument that plaintiffs were required to plead "specific facts detailing compliance with the notice and demand requirements of § 1782 of the CLRA"); *see also Faulkner*, 706 F.3d at 1019 ("All well-pleaded allegations of material fact in the complaint are accepted as true[.]").

### viii.    Georgia-Specific Issues

In their cause of action for violation of Georgia's DTPA, Ga. Code §§ 10-1-370, *et seq.*, Plaintiffs have indicated that they are seeking both injunctive relief and damages. *See CAC* ¶¶ 295-296. Defendants contend that Plaintiffs may not obtain damages under the Georgia DTPA. *See Mem.* 30:7-30:20; *Reply* 10:10-10:16. The Court agrees.

"[M]onetary relief is not authorized under the [Georgia DTPA]; the Act authorizes only equitable relief." *Akron Pest Control v. Radar Exterminating Co., Inc.*, 216 Ga. App. 495, 498 (1995) (citation omitted). Plaintiffs argue that Georgia Code § 10-1-373(c)—which states that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

"[t]he relief provided in this Code section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state," *see* Ga. Code § 10-1-373(c)—provides for damages "otherwise available against the same conduct under the common law or other Georgia statutes." *See Opp.* 32:11-32:16. However, they do not cite any authority to support their reading of the statute. Georgia courts appear to have interpreted § 10-1-373(c) to mean only that the DTPA does not bar overlapping statutory or common law causes of action. *See Laura v. Ford Motor Co.*, 169 Ga. App. 203, 206 (1983) ("While [the Georgia DTPA] does not preclude other actions based on common law or other statutory authority, the sole remedy provided under this Act is injunctive relief.") (citations omitted). Accordingly, Plaintiffs' Georgia DTPA claim is DISMISSED, without leave to amend, to the extent it seeks monetary damages.

      H.    <u>Plaintiff Woods</u>

      Plaintiff Patricia Woods was not a plaintiff in any of the cases transferred to this Court by the Judicial Panel on Multidistrict Litigation. As a result, Defendants argue that her claims must be dismissed. *See Mem.* 28:15-28:23. Plaintiffs have not opposed Defendants' motion on this point, and at oral argument, Plaintiffs' counsel indicated that Woods is no longer a party in this case. Accordingly, Plaintiff Woods' claims are DISMISSED, without leave to amend.

      I.    <u>Defendants' Request to Strike Certain Allegations in the CAC</u>

      Defendants have asked the Court to strike certain allegations from the CAC. *See Mem.* 2:6-2:8, 3:20-3:21 & n.2, 35:7-35:9. However, Defendants' motion is a motion to dismiss, not a Rule 12(f) motion to strike. *See Mot.* i:4-i:11 (moving for dismissal under Rules 8, 9, 12(b)(1), 12(b)(6), and 41(b)). It is also unclear whether Defendants have met and conferred with Plaintiffs regarding a motion to strike, as required by Local Rule 7-3.

      Accordingly, Defendants' request to strike parts of the CAC is DENIED.

V.    <u>Conclusion</u>

      For the reasons above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

(1)    Plaintiffs' first cause of action, for violation of the Magnuson-Moss Act, is:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

    (a)      DISMISSED, without leave to amend, to the extent it is based on a violation of Alabama law; and

    (b)      otherwise DISMISSED, with leave to amend.

(2)    Plaintiffs' second cause of action, for violation of California's UCL, is DISMISSED, with leave to amend, except to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(3)    Plaintiffs' third cause of action, for violation of California's FAL, is DISMISSED, with leave to amend, except to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(4)    Plaintiffs' fourth cause of action, for violation of California's CLRA, is DISMISSED, with leave to amend, except to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(5)    Plaintiffs' seventh cause of action, for violation of the Missouri MMPA, is DISMISSED, with leave to amend, except to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(6)    Plaintiffs' eleventh cause of action, for violation of the Pennsylvania UTPCPL, is DISMISSED, with leave to amend, to the extent it is based on UTPCPL § 201-2(4)(ii).

(7)    Plaintiffs' twelfth cause of action, for violation of the Alabama DTPA, is DISMISSED, without leave to amend.

(8)    Plaintiffs' thirteenth cause of action, for violation of the Illinois ICFA, is DISMISSED, with leave to amend, to the extent that it is asserted under the "deceptive" prong of the ICFA and not based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(9)    Plaintiffs' claim for damages in their fourteenth cause of action, for violation of the Georgia DTPA, is DISMISSED, without leave to amend.

(10)    Plaintiffs' fifteenth cause of action, for breach of express warranty, is:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

    (a)    DISMISSED, without leave to amend, to the extent it is based on Alabama law; and

    (b)    DISMISSED, with leave to amend, to the extent it is based on Florida, Georgia, Illinois, Indiana, Louisiana, Missouri, New Jersey, New Mexico, New York, Ohio, or Pennsylvania law.

(11)    Plaintiffs' sixteenth cause of action, for breach of the implied warranty of merchantability, is

    (a)    DISMISSED, without leave to amend, to the extent it is based on Alabama law; and

    (b)    DISMISSED, with leave to amend, to the extent it is based on California, Florida, Georgia, Illinois, Louisiana, Missouri, Nevada, New Jersey, New York, Ohio, or Pennsylvania law.

(12)    Plaintiffs' seventeenth cause of action, for fraud, is

    (a)    DISMISSED, without leave to amend, to the extent it is based on Alabama law; and

    (b)    DISMISSED, with leave to amend, except to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(13)    Plaintiffs' eighteenth cause of action, for injunctive relief, is DISMISSED, without leave to amend.

(14)    To the extent Plaintiffs seek injunctive relief with respect to causes of action one through seventeen, their claims are DISMISSED, with leave to amend.

(15)    Plaintiff Patricia Woods' claims are DISMISSED, without leave to amend.

    Defendants' motion is DENIED with respect to:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

## CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

(1)    Plaintiffs' second cause of action, for violation of California's UCL, to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(2)    Plaintiffs' third cause of action, for violation of California's FAL, to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(3)    Plaintiffs' fourth cause of action, for violation of California's CLRA, to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(4)    Plaintiffs' fifth cause of action, for violation of the New York DTPA.

(5)    Plaintiffs' sixth cause of action, for violation of the Florida FDUPTA.

(6)    Plaintiffs' seventh cause of action, for violation of the Missouri MMPA, to the extent it is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

(7)    Plaintiffs' eighth cause of action, for violation of the New Jersey Fraud Statute.

(8)    Plaintiffs' ninth cause of action, for violation of the New Jersey Warranty Act.

(9)    Plaintiffs' tenth cause of action, for violation of the New Mexico UPA.

(10)    Plaintiffs' eleventh cause of action, for violation of the Pennsylvania UTPCPL, to the extent it is based on UTPCPL §§ 201-2(4)(v), (vii), or (xxi).

(11)    Plaintiffs' thirteenth cause of action, for violation of the Illinois ICFA, to the extent that it is:

(a)    asserted under the "unfair" prong of the ICFA, or

(b)    asserted under the "deceptive" prong of the ICFA, and based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#33/34**

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

(12)   Plaintiffs' fourteenth cause of action, for violation of the Georgia DTPA, to the extent it does not seek damages.

(13)   Plaintiffs' fifteenth cause of action, for breach of express warranty, to the extent it is asserted under California or Nevada law.

(14)   Plaintiffs' sixteenth cause of action, for breach of the implied warranty of merchantability, to the extent it is asserted under Indiana or New Mexico law.

(15)   Plaintiffs' seventeenth cause of action, for fraud, to the extent that it is:

    (a)   asserted under California, Florida, Georgia, Illinois, Indiana, Louisiana, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, or Pennsylvania law; and

    (b)   is based on the allegation that 5-hour ENERGY's label claims that 5-hour ENERGY gives consumers five hours of energy.

Plaintiffs may file an amended pleading consistent with this Order no later than **October 6, 2014**.  If Plaintiffs fail to do so, the causes of action dismissed with leave to amend in this Order will be dismissed **without leave to amend**.

**IT IS SO ORDERED.**