UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA        #58/61 (01/26 hrg off)

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | | Date | January 22, 2015 |
|---|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    Order GRANTING IN PART and DENYING IN PART Defendants' motion to dismiss.**

Pending before the Court is Defendants' motion to dismiss Plaintiffs' Consolidated First Amended Class Action Complaint ("CFAC").  *See* Dkts. 58, 61.  The Court finds the matter appropriate for decision without argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers submitted by the parties, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

I.    Introduction

This putative class action lawsuit was initially brought on August 4, 2011 by plaintiffs Ilya Podobedov, Jordan Moussouros, and Richard N. James, who alleged that Defendants were using deceptive marketing practices to market 5-hour ENERGY.  *See Compl.*, *Podobedov v. Living Essentials, LLC*, CV 11-6408 PSG (PLAx) (C.D. Cal.) ("*Podobedov*"), Dkt. # 1.  Defendants moved to dismiss the Complaint.  *See Podobedov*, Dkt. # 17.  In March 2012, the Court granted in part and denied in Part Defendants' motion to dismiss the Complaint.  *See March 22, 2012 Order*, *Podobedov*, Dkt. # 49.  The *Podobedov* plaintiffs filed an amended complaint on April 16, 2012.  *See FAC*, *Podobedov*, Dkt. # 54.

In June 2013, the Judicial Panel on Multidistrict Litigation centralized a number of cases related to the marketing and sales of 5-hour ENERGY, and assigned the matter to this Court for consolidated pretrial proceedings.  Dkt. # 1.  In November 2013, the Court appointed three law firms as Interim Co-Lead Class Counsel:  Bursor & Fisher, P.A.; Faruqi & Faruqi, LLP; and Geragos & Geragos APC.  Dkt. # 25.

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Plaintiffs filed a Consolidated Amended Class Action Complaint ("CAC") on June 17, 2014.  Dkt. # 29.  Defendants filed a motion to dismiss the CAC and on September 4, 2014 the Court granted in part and denied in part the motion.  *See* Dkt. # 33; *September 4, 2014 Order.*[1]

Plaintiffs filed the operative Consolidated First Amended Class Action Complaint ("CFAC") on October 6, 2014.  Dkt. # 54.  The named Plaintiffs are: Ilya Podobedov ("Podobedov"), Jordan Moussouros ("Moussouros"), Richard N. James ("James"), Cody Soto ("Soto"), Matt Nunez ("Nunez"), Donna A. Thompson ("Thompson"), Michael R. Casey ("Casey"), David Ellis ("Ellis"), Marc A. Adler ("Adler"), William Forrest ("Forrest"), Ayanna Nobles ("Nobles"), Thomas Guarino ("Guarino"), Junior Hermida ("Hermida"), and Michael Feiner ("Feiner") (together, "Plaintiffs").

In the CFAC, Plaintiffs bring claims against Defendants Innovation Ventures, LLC ("Innovation Ventures"); Living Essentials, LLC ("Living Essentials"); Bio Clinical Development, Inc. ("Bio Clinical"); and Manoj Bhargava ("Bhargava") (collectively, "Defendants"), for: (1) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301, *et seq.*; (2) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (5) violation of the New York Deceptive Trade Practices Act ("DTPA"), N.Y. Gen. Bus. Law §§ 349, *et seq.*; (6) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. §§ 501.201, *et seq.*; (7) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.020, *et seq.*; (8) violation of the New Jersey Fraud in Sales or Advertising of Merchandise Law (the "New Jersey Fraud Statute"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*; (9) violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (the "New Jersey Warranty Act"), N.J. Stat. Ann. §§ 56:12-14, *et seq.*; (10) violation of the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. §§ 57-12-2, *et seq.*; (11) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2, *et*

---

[1]An "amended complaint supersedes the original, the latter being treated thereafter as nonexistent." *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997).  "Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise arguments that were previously available." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012). As a result, neither this Court's decision on the *Podobedov* motion to dismiss, the *September 4, 2014 Order*, nor Judge Dimitrouleas's decision regarding the *Feiner* motion to dismiss are dispositive of Defendants' arguments concerning this motion.  *See March 22, 2012 Order*, *Podobedov*, Dkt. # 49; *May 29, 2013 Order*, *Feiner v. Innovation Ventures, LLC*, CV 13-4003 PSG (PLAx) (C.D. Cal.), Dkt. # 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

*seq.*; (12) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 805 Ill. Comp. Stat. 505/1, *et seq.*; (13) breach of express warranty; (14) breach of the implied warranty of merchantability; (15) fraud by intentional misrepresentation and concealment of fact. *FCAC* ¶¶ 146-297. Plaintiffs also allege that Bhargava has used Living Essentials and Bio Clinical as alter egos. *Id.* ¶¶ 28, 102-103, 122-127.

Plaintiffs seek to represent a nationwide class of "all persons in the United States who purchased a 5-hour ENERGY product," other than "persons or entities that purchased 5-hour ENERGY products for resale," and "Defendants and their subsidiaries and affiliates." *Id.* ¶ 129. Plaintiffs also seek to represent a subclass for purchasers of 5-hour ENERGY multipack products, a subclass for purchasers of decaffeinated 5-hour ENERGY, and a number of state purchaser subclasses. *Id.* ¶¶ 130-140.

On November 13, 2014, Defendants brought the present motion to dismiss. Dkts. # 58, 61.

II.     Background

Innovation Ventures and its subsidiary Living Essentials make, promote, and distribute the 5-hour ENERGY line of energy drinks. *See FCAC* ¶¶ 23, 24, 27, 119. Bio Clinical owns the patents for the formulas for 5-hour ENERGY. *See id.* ¶ 26. Bhargava is the Chief Executive Officer and a board member of Innovation Ventures, owns 79 percent of Living Essentials, and is the sole owner of Bio Clinical. *See id.* ¶ 25.

Plaintiffs allege that 5-hour ENERGY was launched by Defendants in 2004. *FCAC* ¶ 34. 5-hour ENERGY, the first "energy shot," is sold in regular, extra-strength, and decaffeinated varieties, in a number of different fruit flavors. *See id.* ¶¶ 34-35. It is packaged in portions of approximately two ounces, and is marketed as a dietary supplement. *See id.* 5-hour ENERGY is sold in retail stores for approximately $2.99 per shot, and in "multipacks" of 4, 6, and 12 shots for approximately $11.99, $14.99, and $25.99, respectively. *See id.* ¶ 35. The Company also sells multipacks online. *See id.*

Like in the CAC, Plaintiffs' allegations concerning the marketing of 5-hour ENERGY in the FCAC fall into five general categories.

First, Plaintiffs claim that the name "5-hour ENERGY" is misleading, because 5-hour ENERGY does not actually provide five hours of energy and, in fact, provides no energy at all. *See FCAC* ¶¶ 38, 41, 42. According to Plaintiffs, the original packing for 5-hour ENERGY

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

promised consumers "5 hours of energy" and the packaging was later changed to read, instead, "Hours of energy now." *Id.* ¶¶ 39-40. Plaintiffs contend that both claims are false. *Id.* ¶¶ 41-42.

Second, Plaintiffs assert that Defendants falsely and misleadingly claim that 5-hour ENERGY gives consumers a "feeling" of increased energy, alertness, and focus due to its "beneficial ingredients," including B-vitamins and amino acids. *Id.* ¶ 43. Plaintiffs allege that "[t]he only ingredient [in 5-hour ENERGY] that has any effect is the concentrated dose of caffeine[.]" *Id.*

They also plead that Defendants deemphasize the effects of the caffeine in 5-hour ENERGY, and "mask the product's true caffeine content." *See id.* ¶ 46, 58. However, according to Plaintiffs, an independent chemical analysis shows that a bottle of regular 5-hour ENERGY contains 207 milligrams of caffeine – roughly equivalent to 7 times the concentration in an average cup of coffee and 19 times the Food and Drug Administration's ("FDA") limit on caffeine in beverages (which do not apply to 5-hour ENERGY, because it is classified as a dietary supplement rather than as a beverage). *Id.* ¶¶ 58-59, n7. Bhargava has also allegedly claimed that 5-hour ENERGY has "brain nutrients, for brain health." *See id.* ¶ 56.

The FCAC includes a number of Defendants' alleged advertising and marketing claims focused on 5-hour ENERGY'S vitamins and amino acids including the following:

- "A powerful blend of B Vitamins for energy."

- "5-hour ENERGY's blend of vitamins and amino acids gives you hours of smooth energy."

- "5-hour ENERGY doesn't jack you up with sugar, caffeine and herbal stimulants. Instead, it's packed with stuff that's good for you – B-vitamins, amino acids and enzymes."

*Id.* ¶47. The FCAC also describes five television advertisements – some featuring sports celebrities – aired between 2007 and 2012 that purportedly emphasized the product's "beneficial ingredients." *Id.* ¶¶ 48-50, 53-55. For example, according to Plaintiffs, beginning in 2008 Defendants ran a series of television advertisements which included football stars Braylon Edwards and Osi Umenyiora and had an image with the phrase: "B-Vitamins for energy. Amino acids for focus." *Id.* ¶ 49.

Plaintiffs claim that these advertising and marketing claims are false and deceptive because they suggest that the vitamins and amino acids in 5-hour ENERGY, rather than caffeine,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|----------|------------------------|------|------------------|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

provide consumers with increased energy and focus.  *Id.* ¶¶ 46, 62.  Plaintiffs also maintain that "[d]uring the class period, Plaintiffs saw some or all of these television advertisements."  *Id.*¶ 55.

Third, Plaintiffs allege that Defendants' claim of "no crash" is misleading.[2]  *Id.* ¶¶ 66-67. Defendants market 5-hour ENERGY as having "no crash later," but caveat that statement with the disclaimer (on their website, on the fine print on the back of the 5-hour ENERGY label, and behind the bottles on display stands) that "no crash means no sugar crash."  *See id.* ¶¶ 63-67. Plaintiffs argue that Defendants' disclaimer cannot prevent their "no crash" claim from misleading consumers.  *Id.* ¶ 67.

Fourth, Plaintiffs claim that the decaffeinated 5-hour ENERGY "provides no feeling of increased energy at all," and is "merely a placebo."  *Id.* ¶ 72.  Defendants market decaffeinated 5-hour ENERGY by claiming that its B-vitamins and amino acids provide "hours of alertness and focus without making you feel jittery[;]" however, Plaintiffs assert that those ingredients do not confer any "feeling of increased energy."  *Id.* ¶¶ 68-72.

Lastly, Plaintiffs allege that Defendants have "touted phony clinical studies which misleadingly present results in a manner that suggests 5-hour ENERGY products act quickly as something other than a concentrated caffeine shot."  *Id.* ¶ 73.  According to a summary on 5-hour ENERGY's website, one study showed that when compared with competing products, 5-hour ENERGY was more frequently considered the "[p]roduct with the longest peak energy level," and the "[p]roduct that provided five or more hours of energy," and was less frequently considered the "[p]roduct that caused a crash."  *See id.* ¶ 75.  A second study, according to a description on 5-hour ENERGY's website, showed that "5-hour ENERGY significantly outperformed [a] placebo on continuity of attention and self-related awareness."  *See id.* ¶ 85. The FCAC also describes a commercial that was allegedly "designed to create the illusion that 5-hour ENERGY was approved by '73% of Doctors' of 3000 surveyed doctors" even though, according to Plaintiffs, "[i]n no way did any of these doctors, much less 73% of them, generally recommend that consumers take 5-hour ENERGY products."  *See id.* ¶¶ 97-101.

Plaintiffs allege that they purchased 5-hour ENERGY due to Defendants' false and misleading claims.  *See, e.g.*, *id.* ¶¶ 9-22, 55, 168, 175, 184, 195, 197.  They allegedly suffered harm because, but for Defendants' wrongful conduct, they either would not have purchased 5-hour ENERGY, or would not have paid a "price premium."  *See, e.g.*, *id.*

---

[2]Plaintiffs explain that a "crash" is the "come-down consumers of energy drinks often feel when the effects of the beverages wear off."  *See CAC* ¶ 63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

III.   <u>Legal Standard</u>

   A.   <u>Rule 12(b)(1)</u>

   A plaintiff must "have 'standing' to challenge the action sought to be adjudicated in the lawsuit."  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted).  The "irreducible constitutional minimum" of Article III standing has three elements:  (1) the plaintiff must have suffered an "injury in fact," meaning a concrete and particularized injury that is actual or imminent; (2) the injury must be causally related to the defendant's challenged actions; and (3) it must be "likely" that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted); *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).  The plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements.  *See Lujan*, 504 U.S. at 561.

   Article III standing bears on the court's subject matter jurisdiction, and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Rule 12(b)(1) attacks on subject matter jurisdiction can be factual or facial.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, such as Defendants' attack here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  When evaluating a facial attack on jurisdiction, the court accepts the factual allegations the plaintiff's complaint as true.  *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

   B.   <u>Rule 12(b)(6)</u>

   A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff.  *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).  The court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

   After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief.  *See Iqbal*, 556 U.S. at 679-80.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

B.    Rule 9(b)

Allegations of fraud and allegations that "sound in fraud" must be plead with particularity.  Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).  Conclusory allegations of fraud are insufficient.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

A pleading satisfies Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") when it is "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106 (internal quotation marks and citation omitted); *accord Moore*, 885 F.2d at 540 ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.").  As a result, the plaintiff must plead "the who, what, when, where, and how" of the alleged fraud.  *Vess*, 317 F.3d at 1106 (internal quotation marks and citation omitted).

Intent and other aspects of a defendant's mental state may be alleged generally.  Fed. R. Civ. P. 9(b).

IV.    Discussion

Defendants bring several challenges to Plaintiffs' FCAC.  First, they argue that Plaintiffs' second, third, fourth, seventh, twelfth, and fifteenth causes of action – for violations of the California UCL, the California FAL, the CLRA, the MMPA, the ICFA, and fraud – should be dismissed because (1) Plaintiffs do not meet the pleading standards under Federal Rule of Civil Procedure 9(b) with regard to any off-label advertisements and (2) lack standing to sue for off-label advertisements that they do not allege to have seen.  *See Notice of Mot.; Mot.* 1:3-18, 8:6-18.  Second, they claim that Plaintiffs' breach of warranty claims – both express and implied – under New York and Pennsylvania law should be dismissed because Plaintiffs fail to allege that they gave Defendants pre-litigation notice.  *See Notice of Mot.; Mot.* 8:24-26, 11:4-26.  Third, Defendants contend that certain plaintiffs' claims under the Magnuson-Moss Act should be dismissed because (1) their breach of warranty claims fail and (2) they fail to allege that they spent more than $25 on 5-hour ENERGY products.  *Notice of Mot.; Mot.* 12:6-12:25.  Lastly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|----------|------------------------|------|------------------|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants request that the Court dismiss the claims of certain plaintiffs who are no longer identified as Plaintiffs in the FCAC. *Mot.* 14:1-10. The Court addresses each argument in turn.

> A. <u>California UCL, California FAL, CLRA, MMPA, ICFA, Fraud: Off-Label Representations</u>
>
> 1. <u>Rule 9(b)</u>

Defendants contend that the Court should dismiss the California UCL, California FAL, CLRA, MMPA, ICFA, and fraud claims ("fraud based claims") to the extent that they are based on any off-label advertisements. *Mot.* 4:11-7:1. Defendants argue that these claims must be plead with particularity under Rule 9(b). *Id.* 3:11-18. According to Defendants, the allegations in the FCAC, although describing certain television commercials regarding 5-Hour ENERGY, still fail to include "any particular off-label advertisement on which [Plaintiffs] relied to their detriment" which, they maintain, is insufficient to state a claim under Rule 9(b). *Id.* 3:19-26. In opposition, Plaintiffs do not dispute that certain elements of these claims are subject to the standards of Rule 9(b), but challenge Defendants' contention that the element of reliance must be plead with the particularity required by Rule 9(b). *Opp.* 3:12-20. The Court must first determine the applicable pleading standard, and then whether Plaintiffs' allegations are sufficient to state their claims.

In its September 4, 2014 Order, the Court evaluated these same causes of action – including the element of reliance – under the pleading requirements set out by Rule 9(b). *See September 4, 2014 Order at pgs.* 22, 29, 33. The Court is not persuaded – as Plaintiffs claim – that the element of reliance should be analyzed under Federal Rule of Civil Procedure 8(a) instead of the heightened standard set out by Rule 9(b). *Opp.* 3:12-20. As the court noted in *Herremans v. BMW of N. Am, LLC*, some courts in this district as well as other districts in the Ninth Circuit have, indeed, analyzed reliance under Rule 9(b) and others have applied Rule 8(a). *See Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *10, n. 57 (C.D. Cal. Oct. 3, 2014).

Nevertheless, *Kearns v. Ford Motor Co.* binds the Court to analyze reliance under Rule 9(b). *See* 567 F. 3d 1120, 1126 (9th Cir. 2009). In *Kearns*, the Ninth circuit affirmed the dismissal of a plaintiff's complaint under Rule 9(b) because he had failed, among other things, to identify what advertisements or sales materials he had relied upon when purchasing an automobile. *Id.* The Ninth Circuit explained that causes of action that are founded in fraud or sound in fraud "must satisfy the particularity requirement of Rule 9(b)" "as a whole."[3] *Id.*

---

[3]The Court notes that while the "deceptive" prong of the ICFA is subject to the pleading standards set forth in Rule 9(b), the "unfair prong" is not. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F. 3d 436, 441 (7th Cir. 2011) ("When a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Therefore, the Court follows *Kearns* and agrees with other district courts in analyzing all elements of these causes of action under Rule 9(b). *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 WL 295302, at *5 (S.D. Cal. Jan 27, 2014) (holding that plaintiffs failed to satisfy Rule 9(b) where they had not identified the advertisements to which they had been exposed); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9-19 (N.D. Cal. Sept. 19, 2013) (same); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (same). The cases cited by Plaintiffs in their opposition analyzing reliance under Rule 8(a) are inapposite. *See Opp.* 3:12-7:7.

Next, the Court must determine whether Plaintiffs' allegations state a claim under Rule 9(b). In its September 4, 2014 Order, the Court dismissed these fraud based claims because "Plaintiffs' broad allegations of reliance [were] not enough to satisfy the strictures of Rule 9(b)." *September 4, 2014 Order at pgs. 22, 29, 33.* Although Plaintiffs included in the CAC descriptions of Defendants' alleged off-label claims, they did not "allege that Plaintiffs read or heard any 5-hour ENERGY advertisements or marketing statements, and [did] not indicate that Plaintiffs read Defendants' clinical study summaries posted on the 5-hour ENERGY website." *Id.* Furthermore, because Plaintiffs "failed to indicate what particular statements (in advertisements or otherwise) they relied on when purchasing 5-hour ENERGY" "their claims did not pass muster under Rule 9(b)." *Id.*

In the FCAC, Plaintiffs have amended their pleadings in two significant ways. First, Plaintiffs include descriptions of five commercials about the 5-hour ENERGY product and include an allegation stating that "[d]uring the class period, Plaintiffs saw some or all of [those] television advertisements." *FCAC* ¶¶ 48-50, 53-55. Second, in describing each Plaintiff, the FCAC contains allegations as to each Plaintiff stating that she or he "saw or heard numerous advertisements, including on television, for 5-hour ENERGY products claiming that the products 'beneficial ingredients' include 'B-vitamins for energy' and 'amino acids for focus'"

---

Plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.") (citations omitted); *Windy City Metal Fabricators Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F. 3d 663, 669-70 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under [the ICFA], a cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of rule 8(a), not the particularity requirement in Rule 9(b).") Defendants have not persuaded the Court that Plaintiffs fail to plead this cause of action under Rule 8(a). Therefore, the Court DENIES Defendants' motion to the extent that it seeks to dismiss Plaintiffs' claim brought under the "unfair" prong of the ICFA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

and that she or he was "led to believe that 5-hour ENERGY provided a feeling of increased energy from ingredients other than caffeine." *FCAC ¶¶ 9-22.*

The Court agrees with Defendants that these allegations are not sufficient to state the fraud based claims under Rule 9(b). As discussed above, in *Kearns*, the Ninth Circuit affirmed a District Court dismissing a cause of action for failure to meet the pleading standards set out under Rule 9(b). *See Kearns*, 567 F. 3d at 1126. In that case, the plaintiff brought CLRA and UCL claims claiming that Defendant engaged in fraudulent conduct by misrepresenting the safety of certified pre-owned vehicles. *Id.* 1122-24. He alleged that he was exposed to Defendant's representations through "(1) [Defendant's] televised national marketing campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales personnel working at the dealership where he bought his vehicle." *Id.* 1125-26. The Court found, however, that Plaintiff failed to allege the "particular circumstances surrounding [the] representations" because he failed to allege what the television advertisements stated, when he was exposed to them, which ones he found material and which sales materials "he relied upon in making his decision to buy a [certified pre-owned] vehicle." *Id.*

Here, although Plaintiffs do include descriptions of five commercials containing Defendants' allegedly misleading statements, they do not specifically include what particular statements they relied on when purchasing 5-hour ENERGY. *See FCAC ¶¶ 9-22, 55.* Alleging that Plaintiffs "saw some of all of these television advertisements" does not satisfy the pleading requirements under Rule 9(b) because it does not give Defendants information about what specific statements Plaintiffs' relied on to their detriment. *See id. ¶ 55.*

Further, the allegations made regarding each Plaintiff that they saw "numerous advertisements, including on television" is also too vague under Rule 9(b). *See id. ¶¶ 9-22.* As the Court emphasized in its September 4, 2014 Order, without information about the particular statements on which Plaintiffs relied, Plaintiff's claims will not pass muster under Rule 9(b). *See September 4, 2014 Order at pg. 22; see also Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (finding that plaintiff failed to meet Rule 9(b) pleading standards when she failed to point to the "particular advertisements or promotional materials that she was personally exposed to); *Goldsmith v. Allergan, Inc.*, 2011 WL 2909313, CV 09-7088 PSG (Ex) (C.D. Cal. 2011) (finding that plaintiff failed to plead fraud cause of action because he failed to specify the specific television ads on which he relied); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *12-13 (dismissing UCL and CLRA claims where plaintiff failed to "allege with specificity which commercials or other misleading advertisements they each relied upon in purchasing [product]").

The cases that Plaintiffs describe in their opposition are distinguishable and do not persuade the Court that Plaintiffs have plead the fraud based causes of action with the requisite

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|----------|------------------------|------|------------------|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

specificity.   Plaintiffs cite to *Ehret v. Uber Technologies*, 2014 WL 4640170 (N.D. Cal. 2014) and argue that "the element of reliance plays a minimal role when plaintiffs allege the specifics of a defendant's misrepresentation."  *See Ehret*, 2014 WL 4640170; *Opp.* 6:13-15.  The Court disagrees.  In *Ehret* the plaintiff brought an action against Uber Technologies, Inc. ("Uber") for allegedly misrepresenting on its website and in its application that twenty percent of the charge was a gratuity fee.  *See, Ehret*, 2014 WL 4640170, at *2-3.  Defendant claimed that plaintiff failed to state a fraud based claim under the UCL because plaintiff did not allege that she specifically relied on the alleged representations or when she was exposed to them.  *Id.*  The court disagreed and found that it could infer that plaintiff was exposed to the advertisements around the date that she used defendant's services, which was included in the complaint. *See id.* The court also found that plaintiff did not need to include the "precise web pages viewed and the precise date she viewed the representation" because she had "specified the statements on which she allegedly relied."  *Id.* The court did not hold that plaintiff need not plead when she was exposed to the representations, nor what representations she was exposed to, but rather that she had plead sufficient facts to give defendant notice of the nature of the misrepresentations.  *See id.; see also, Bronson v. Johnson & Johnson, Inc.*, 2013 WL 5731817 at *6 (N.D. Cal. 2013) (finding that Plaintiff plead fraud based claim when she alleged "when she viewed [a website]" and complaint included the specific allegedly misleading statements on defendant's website). Here, however, where there are multiple Plaintiffs, a general allegation that Plaintiffs saw "some or all" does not even allow an inference of when and what statements plaintiffs relied on to their detriment.  *FCAC* ¶ 55.

Plaintiffs' argument that they can base their claims on clinical studies found on Defendants' website that Plaintiffs do not allege to have relied upon because they are allowed to include "representative samples of advertisements" is also unpersuasive.  *Opp.* 10:6-11 (citations omitted).  Plaintiffs concede that they can include allegations that are "consistent with the advertising plaintiffs were *actually exposed to* and that [were] part of a common advertising campaign."  *Opp.* 10:2-15 (emphasis added).  Here, without knowing the off-label representations that Plaintiffs were actually exposed, the Court cannot evaluate whether the allegations regarding the clinical studies are truly representative.

Furthermore, the Court is not persuaded that because Plaintiffs allege that they were exposed to a common message, they do not need to include which specific statements they were exposed to and relied upon to their detriment.  *See Fisher v. Monster Beverage Corp.*, No. EDCV 12-2188 VAP (OPx), at * (C.D. Cal. Nov. 12, 2013) ("the existence of a prolonged marketing and advertising strategy does not relieve Plaintiffs of the need to allege *exposure* to the marketing strategy and particular misrepresentations relied upon); *see also In re iPhone 4S Consumer Litig.*, at * 12 (rejecting Plaintiffs argument that because they alleged that

11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

representations in advertisements were part of a consistent and broad marketing campaign they were not required to specify each and every time they were exposed to defendant's misrepresentations because plaintiffs failed to allege that plaintiffs were exposed to a campaign that lasted for decades).

Accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's fraud based claims to the extent that they are based on any off-label representations.

 2. Standing

The Court has dismissed Plaintiff's fraud based claims without leave to amend to the extent that they are based on off-label representations. Therefore, it does not need to reach Defendants' argument that these claims should also be dismissed because Plaintiffs lack standing to bring them. *See Mot.* 7:4-8:3.

 B. Breach of Express Warranty

Plaintiffs James, Podobedov, Moussouros, Nobles, Nunez, Soto, Adler, Thompson, and Casey bring the thirteenth cause of action, individually and on behalf of members of the Class residing in California, New Jersey, New York, and Pennsylvania, for breach of express warranty. *FCAC* ¶ 275. The FCAC, does not explicitly indicate which states' laws Plaintiffs seek to invoke for their claim. *See id.* ¶¶ 274-282. For the purposes of this motion, the Court will infer that Plaintiffs are asserting claims under the laws of the states in which the members of the classes Plaintiffs seek to represent reside and the states in which Plaintiffs reside or purchased 5-hour ENERGY: California, New Jersey, New York, and Pennsylvania. *See id.*

In its September 4, 2014 Order, the Court dismissed Plaintiffs' express warranty claim brought under New York and Pennsylvania law because Plaintiffs did not persuade the Court that they gave "adequate pre-litigation notice of their express warranty claims." *September 4, 2014 Order at 27.*

 In the FCAC, Plaintiffs allege that Podobedov and Moussouros satisfied New York's notice requirements when they filed their complaint on August 4, 2011. *See id.* ¶ 280. Plaintiffs also plead that Casey and Thompson met Pennsylvania's notice requirement by filing their complaint on or about March 7, 2013. *See id.* ¶ 281. Defendants disagree and argue that Plaintiffs' New York and Pennsylvania claims must be dismissed for failure to allege that they gave Defendants pre-litigation notice as required under these two states. *Mot.* 8:19-9:2.

 1. New York

Case 2:13-ml-02438-PSG-PLA   Document 66   Filed 01/22/15   Page 13 of 20   Page ID #:950

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|----------|------------------------|------|------------------|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants argue that Plaintiffs Podobedov and Moussouros have failed to allege that they gave Defendants pre-litigation notice because the only allegation that Plaintiffs include regarding pre-litigation notice – that they fulfilled this requirement by filing their complaint – is insufficient under New York law. *Mot.* 8:24-9:2. The Court agrees.

In the Complaint, Plaintiffs cite to *Fischer v. Mead Johnson Laboratories*, 41 A.D. 2d 737 (N.Y. S. Ct. App. Div. 1973) for the proposition that pre-litigation notice is not required for products that are sold for human consumption. *See FCAC* ¶ 280. In their reply, Defendants argue that *Fischer*, and other cases that Plaintiffs cite in their opposition, are not applicable because although they all – like 5-hour ENERGY – were were regarding products sold for human consumption, they concerned personal injury claims. *Reply* 10:3-21. The Court agrees with Defendants. In concluding that pre-litigation notice was not necessary, the Court in *Fischer* cited to *Kennedy v. Woolworth Co.*, 205 A.D. 648 (N.Y. App. Div. 1923). *Fischer*, 41 A.D. at 737. *Kennedy* held that while pre-litigation notice was not required for breach of warranty claims arising out of a child's personal injuries resulting from the consumption of candy, the pre-litigation notice was required when a lawsuit concerned "sales of goods whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances, which causes money damage to the vendee." *Kennedy*, 205 A.D. at 649-50. This exception to the notice requirement, then, envisions causes of action that are grounded in personal injuries to plaintiffs. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2010 WL 1734948, at *3 (S.D. Cal. 2010) (finding that there was no pre-litigation notice requirement where plaintiff alleged personal injuries caused by consumption of product in breach of warranty claim).

Plaintiffs' citation to *Panda Capital Corp. v. Kopo International, Inc.*, 242 A.D. 2d 690 (1997) to support their argument that the filing of a complaint is sufficient to give pre-litigation notice under New York law is also unpersuasive. *See FCAC* ¶ 280. First, in *Panda Capital*, the New York Supreme Court, Appellate Division was reviewing a Supreme Court's order denying defendant's motion for summary judgment, not a motion to dismiss. Second, the court found that summary judgment in favor of defendant, who argued that plaintiff failed to give him pre-litigation notice, was not warranted where the complaint gave the defendant notice and plaintiff had "repeatedly made its objections to [defendant's] pattern of deficient performance." *See Panda Capital*, 242 A.D. at 692. Here, Plaintiffs merely allege that filing of their complaint was sufficient notice under New York law and point to no allegations of other notice to Defendants regarding the claims at issue in this litigation. *See also In re Frito-Lay N.A., Inc. All Natural Litig.*, 2013 WL 4647512, at *12 (E.D.N.Y. 2013) (dismissing breach of warranty claims brought under New York law for failing to include allegations that plaintiffs gave defendants pre-litigation notice).

13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Plaintiffs also argue that because the Court found that Defendants received notice from Plaintiffs Podobedov and Moussouros in *Podobedov*, No. CV 11-6408 PSG (PLAx), that "notice is sufficient to serve as pre-litigation notice for the entire class." *Opp.* 12:19-13:2. As the Court explained in its September 4, 2014 Order, however, although the *Podobedov* plaintiffs sought to represent a nationwide class, they did "not obtain class certification" and the Court found it difficult to accept that a "complaint on behalf of a putative class can serve as pre-litigation notice for the entire class." *September 4, 2014 Order at 27.*

Plaintiffs' reliance on *Martin v Ford Motor Co.*, 765 F. Supp. 2d 673 (E.D. Penn. 2011) to support their argument is unconvincing. *See Opp.* 13:3-14. In *Martin* a plaintiff brought a putative class action against a car manufacturer for alleged defects in the automobile's axle. *See Martin*, 765 F. Supp. at 675. The district court found that Defendant received pre-litigation notice in a breach of warranty case where Plaintiff alleged that owners of vehicles "took the affirmative step of 'notifying' Defendant of the breach by complaining 'about [the issue] *to Defendant.*'" *Id.* at 683 (emphasis in original) (citations omitted). As the district court in the Eastern District of Pennsylvania found two years later in *Schmidt v. Ford Motor Co.*, "[u]nder *Martin's* rule, buyers are able to thwart the purpose of § 2607(c) by relying on third-party notice and avoiding any attempt at pre-suit resolution." 972 F. Supp. 2d 712, 719 (E.D. Penn. 2013); *see also September 4, 2014 Order at 27* (finding that third party notice "would effectively render pre-litigation notice requirements meaningless"). Under Uniform Commercial Code Section 2607(c), which Pennsylvania has adopted, "a plaintiff, specifically a buyer, must provide notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory." *Schmidt*, 972 F. Supp. 2d at 718. Section 2607(c) specifically states that "[the] buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy," and makes no exception to this requirement. *See* U.C.C. § 2607(c)(1).

Therefore, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs Podobedov and Moussouros's New York breach of express warranty claims.

2.    <u>Pennsylvania</u>

Defendant argues that the filing of a complaint is not sufficient pre-litigation notice under Pennsylvania law either. *See Mot.* 10:4-23. To support their argument, Defendants cite to several cases holding that the filing of a complaint does not satisfy the pre-litigation requirement under Pennsylvania law. *See Mot.* 10:4-23; *see also, e.g.*, *Schmidt*, 972 F. Supp. at 718-19 (finding that a buyer must provide "notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory"); *Martin*, 765 F. Supp. 2d at 682 (holding that "the filing of [a] Complaint is insufficient "notification" under the UCC").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

In response, Plaintiffs point to several cases finding the opposite – that the filing of a complaint provides sufficient pre-litigation notice under Pennsylvania law.  *See Opp.* 16:5-17:2; *see also, e.g.*, *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 92-94 (holding that a complaint provided sufficient pre-litigation notice under Pennsylvania law); *Solarz v. Daimlerchrysler Corp.*, 2002 WL 452218, at *12 (Penn. Ct. of Common Pleas 2002) (finding that defendants "received proper notice of the plaintiffs' breach of warranty claims when the plaintiffs filed their original Complaint").

After reviewing the cases cited by the parties, the Court agrees with the courts finding that the filing of a complaint does not constitute appropriate pre-litigation notice under Pennsylvania law.  As the district court explained in *American Federation of State Cnty. & Mun. Employees v. Ortho-McNeil-Janssen Pharm., Inc*, the purpose of pre-litigation notice is "to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit."  2010 WL 891150, at *6 (E.D. Penn. 2010).  Allowing the filing of a complaint to serve as pre-litigation notice would defeat this purpose and would "obviate the need for the notice requirement." *In re Shio-Vac marketing and Sales Practices Litig.*, 2014 WL 3557189, at *8 (M.D. Penn. 2014).

Accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs Casey and Thompson's Pennsylvania express warranty claim.

C.      Breach of Implied Warranty

Plaintiffs James, Soto, Nobles, Nunez, Casey, Thompson, Feiner, Hermida, Adler, and Ellis bring the fourteenth cause of action, individually and on behalf of members of the Class residing in California, New Jersey, New Mexico, Florida, and Pennsylvania, for breach of implied warranty.  *FCAC* ¶ 284.  The FCAC, does not explicitly indicate which states' laws Plaintiffs seek to invoke for their claim.  *See id.* ¶¶ 283-289.  For the purposes of this motion, the Court will infer that Plaintiffs are asserting claims under the laws of the states in which the members of the classes Plaintiffs seek to represent reside and the states in which Plaintiffs reside or purchased 5-hour ENERGY:  California, New Jersey, New Mexico, Florida, and Pennsylvania.  *See id.*

Defendants challenge to Plaintiffs' Pennsylvania implied warranty claim essentially mirrors the challenge brought to Plaintiffs' express warranty claim.  *See Mot.* 11:8-20. Plaintiffs' response, too, respond with the same arguments that they made when defending their express warranty claims.  *See Opp.* 16:5-17:3.  For the reasons stated above, then, the Court

15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs Casey and Thompson's Pennsylvania implied warranty claims.

> D.      Magnuson-Moss Act

Plaintiffs Moussouros, James, Thompson, Casey, Forrest, Guarino, Adler, and Hermida bring the first cause of action for a violation of the Magnuson-Moss Act individually and on behalf of the members of the multi-pack subclass.  *See FCAC* ¶ 147.

Defendants argue that the Court should dismiss Plaintiff Casey, Forrest, Guarino, Hermida, James, and Thompson's Magnuson-Moss Act claims because these Plaintiffs do not allege facts sufficient to establish that they spent $25 or more on 5-hour ENERGY multipack purchases.  *Mot.* 12:2-6.  Defendants also contend that Plaintiffs Casey, Forrest, Guarino, Moussouros, and Thompson's Magnuson-Moss Act claims should be dismissed because they fail to state claims for breach of express and implied warranty.  *See id.* 13:9-25.

> 1.      Withdrawn Claims

First, the Court notes that in their opposition, Plaintiffs withdraw Forrest and Guarino's Magnuson-Moss Act claims.  *See Opp.* 19 n.8.  Therefore, the Court DISMISSES Plaintiffs Forrest and Guarino's claims WITHOUT LEAVE TO AMEND.

> 2.      Amount in Controversy

Having dismissed Plaintiff Forrest and Guarino's Magnuson-Moss Act claims, the Court now considers whether Plaintiffs Casey, Hermida, James, and Thompson have alleged sufficient facts to meet the amount in controversy requirement.

Claims brought under the Magnuson-Mosss Act must be for products that cost more than $5 and where the amount in controversy $25 or more.  *See* 15 U.S.C. § 2302(e) (products at issue must cost at least $5); 15 US.C. § 2310(d)(3)(A) (individual amount in controversy must be at least $25).

Defendants argue that Plaintiffs' claims should be dismissed because they do not allege that the amount in controversy is $25 or more.  *See Mot.* 12:5-13:8.  Specifically, they claim that neither Plaintiffs Casey, Hermida, and Thompson do not allege that they "purchased a multipack, let alone one that cost at least $25."  *Id.* 12:10-12.  They additionally argue that Plaintiff James's claim should be dismissed because although he alleged that he purchased a multi-pack, he does not state that he spent $25 or more on multipack purchases.  *Id.* 12:13-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

According to Defendants the Court found that Plaintiffs must include allegations with the level of detail included in Plaintiff Adler's pleading which states that he purchased "12-pack multipacks, which the CAC states cost approximately $25.99 each." *See Mot.* 12:20-13:3 (citations omitted).

Defendants misconstrue the Court's September 4, 2014 order. The Court found that Adler's allegation plead sufficient facts because he alleged that he spent more than $25 on 5-hour ENERGY products and that the other Plaintiffs did not allege, anywhere in the CAC, "that they spent $25 or more on multipack purchases." *September 4, 2014 Order at 29.* In the FCAC, Plaintiffs Casey, Hermida, James, and Thompson include an allegation that they "purchased multi-packs of 5-hour ENERGY products costing more than $5 and their individual claims are greater than $25." *FCAC* ¶ 150. No more is needed at this point in the litigation. The Court accepts the allegations included in the FCAC as true and construes them in the light most favorable to Plaintiffs. *Faulkner*, 706 F. 3d at 1019. Therefore, the Court DENIES Defendant's motion to dismiss based on this argument.

3. Failure to State Warranty Claims

Defendants argue that Plaintiffs Casey, Moussouros, and Thompson's Magnuson-Moss Act claims should be dismissed because their state law warranty claims fail. *See Mot.* 13:12-25. The Court agrees with Defendants.

As the Court explained in its September 4, 2014 Order, "claims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law." *September 4, 2014 Order at pg. 29* (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1022 (9th Cir. 2008)).

As discussed above, Plaintiffs Casey and Thompson fail to state breach of warranty claims under Pennsylvania law. Furthermore, Plaintiff Moussouros fails to state a claim for breach of warranty under New York law. Accordingly, Plaintiffs Casey, Thompson, and Moussouros's Magnuson-Moss Act claims are DISMISSED WITHOUT LEAVE TO AMEND.

E. Plaintiffs Duckworth, Waring, Berger, and McCray

17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

Dennis Duckworth ("Duckworth"), William Waring ("Waring"), David Berger ("Berger"), and Anthony Quinn McCray ("McCray") were identified as Plaintiffs in the CAC, but are not listed as Plaintiffs in the operative CFAC. *Compare CAC with FCAC*. Resultantly, Defendants argue that their claims must be dismissed. *See Mot.* 14:1-10. Plaintiffs have not opposed Defendants' motion on this point. Accordingly, Duckworth, Waring, Berger, and McCray's claims are DISMISSED WITHOUT LEAVE TO AMEND.

V.      Leave to Amend

The Court generally grants leave to amend any dismissed claims unless it is clear that they cannot be saved by any amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). The Ninth Circuit has instructed that the policy of giving leave "when justice so requires," as set forth in Federal Rule of Civil Procedure 15(a), "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

In determining whether leave to amend is warranted, the Court considers: (1) a party's bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility; and (5) whether the plaintiff has previously amended his complaint. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). When a plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to the claims, "[t]he district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations and citations omitted) (alteration in original).

Here, while the Court sees no indication of bad faith by Plaintiffs, all other factors weigh against granting leave to amend. First, this MDL has been pending since June 2013 and Plaintiffs have amended their Complaint twice – when they filed their Consolidated Amended Class Action Complaint and then the Consolidated First Amended Class Action Complaint. It would be prejudicial to Defendants to allow Plaintiffs to amend their claims once again. Furthermore, Plaintiff's inability to plead their fraud based claims with particularity – especially after the Court explicitly pointed out this flaw – indicates that it would be futile to give Plaintiffs leave to amend. As to Plaintiff's New York and Pennsylvania breach of warranty claims – and their related Magnuson-Moss Act claims – it would be futile to give Plaintiffs leave to amend because these claims fail not for lack of factual allegations, but as a matter of law.

VI.     Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |

For the above-mentioned reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

(1)     Plaintiffs Forrest, Guarino, Casey, Moussouros, and Thompson's causes of action, for violation of the Magnuson-Moss Act, are DISMISSED WITHOUT LEAVE TO AMEND.

(2)     Plaintiffs' second cause of action, for violation of the California UCL claim, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(3)     Plaintiffs' third cause of action, for violation of the California FAL claim, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(4)     Plaintiffs' fourth cause of action, for violation of the CLRA, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(5)     Plaintiffs' seventh cause of action, for violation of the MMPA, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(6)     Plaintiffs' twelfth cause of action, for a violation of the ICFA brought under the act's "deceptive" prong, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(7)     Plaintiffs Podobedov, Moussouros, Casey, and Thompson's thirteenth cause of action, for Breach of Express Warranty under New York and Pennsylvania law, is DISMISSED WITHOUT LEAVE TO AMEND.

(8)     Plaintiffs Casey and Thompson's fourteenth cause of action, for Breach of Implied Warranty under Pennsylvania law, is DISMISSED WITHOUT LEAVE TO AMEND.

(9)     Plaintiffs' fifteenth cause of action, for fraud by intentional misrepresentation and concealment of fact, is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on off-label representations.

(10)     Plaintiffs Duckwork, Waring, Berger, and McCray's claims are DISMISSED WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 22, 2015 |
|---|---|---|---|
| Title | In re: 5-Hour ENERGY Marketing and Sales Practices Litigation | | |