# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):    Order GRANTING IN PART and DENYING IN PART Defendants' Motion for Partial Summary Judgment**

Before the Court is Defendants Innovation Ventures, LLC; Living Essentials, LLC; Manoj Bhargava; and Bio Clinical Development, Inc.'s ("Defendants") motion for partial summary judgment. Dkt. # 133. The Court held a hearing in this matter on January 23, 2017. After reviewing the moving, opposing, and reply papers, and considering the arguments made at the hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for partial summary judgment.

I.    Background

    A.    Factual Background

In this putative consumer class action, Plaintiffs Marc A. Adler, Michael R. Casey, David Ellis, William Forrest, Ilya Podobedov, Cody Soto, and Donna A. Thompson allege that Defendants engaged in deceptive and unfair business practices in the marketing and sale of 5-hour ENERGY® ("5HE"). Defendants advertise 5HE as a dietary supplement and sell it in regular, extra-strength, and decaffeinated varieties, in a number of different fruit flavors, and online and in retail locations.

Plaintiffs allege that Defendants made a number of misrepresentations in their marketing and sales of 5HE. In prior orders, the Court reviewed the alleged misrepresentations in significant detail. The Court reviews here only what is relevant for this motion. The representations at issue in this case fall into two categories: (1) representations that appear on the 5HE packaging, or "on-label representations," and (2) representations that do not appear on the 5HE packaging, or "off-label representations."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

An example of an "on-label representation" is 5HE's trademark—"5-hour ENERGY®"—which appears on every 5HE package. *Consolidated First Amended Class Action Complaint* ("*CFAC*") ¶¶ 38, 41, 42. Also on the packaging, Defendants promise that the product provides "five hours of energy" or "hours of energy," and "no crash." *Id.* ¶¶ 39–42, 66–67. Plaintiffs allege that the representations are misleading because 5HE provides only a few minutes of energy, at most, and results in a "crash" at the end of the five hours. *Opposition to Defendants' Motion for Partial Summary Judgment* ("*Opp.*") 1:13–17.

An example of an "off-label representation" is a statement made in one of 5HE's five television advertisements—some featuring sports celebrities—that aired between 2007 and 2012 and purportedly emphasized the "beneficial ingredients" in 5HE. *See id.* ¶¶ 48–50, 53–55. The television commercials made statements like, "A powerful blend of B Vitamins for energy," "5-hour ENERGY's blend of vitamins and amino acids gives you hours of smooth energy," and "5-hour ENERGY doesn't jack you up with sugar, caffeine, and herbal stimulants. Instead, it's packed with stuff that's good for you—B-vitamins, amino acids, and enzymes." *Id.* ¶ 47. Plaintiffs allege that the off-label representations are misleading because "[i]n reality, the vitamins and amino acids in 5HE have no effect," and any altered feeling from the product comes from the caffeine content. *See Opp.* 1:13–17.

The majority of the evidence underlying this motion for summary judgment comes from Plaintiffs' deposition testimonies. Plaintiffs testified that they tried 5-hour ENERGY for some time before realizing that it did not provide the benefits claimed. *Plaintiffs' Statement of Genuine Disputes of Material Fact* ("*PSOF*") 92–95, 99–100, 105–06, 110, 112–13, 116–17, 121–22, 126. One Plaintiff tried 5HE as many as 1,300 times before discontinuing use. *Statement of Undisputed Facts* ("*SUF*") ¶¶ 16–24. Plaintiffs allege that, even though they made repeat purchases of 5HE, they suffered harm because they would not have purchased 5HE, or would not have paid a "price premium," had Defendants truthfully stated the effects and the ingredients in the dietary supplement. *CFAC* ¶¶ 9–22, 55, 168, 175, 184, 195, 197.

B.      Procedural History

Plaintiffs Podobedov, Jordan Moussouros, and Richard N. James initially filed this putative class action lawsuit on August 4, 2011 in this Court.[1] *See Complaint*, *Podobedov v. Living Essentials, LLC*, CV 11-6408 PSG (PLAx) (C.D. Cal.), Dkt. 1. In June 2013, the Judicial Panel on Multidistrict Litigation centralized a number of cases related to the marketing and sales of 5HE and assigned the matter to this Court for consolidated pretrial proceedings. *See* Dkt. # 1.

---

[1]   Plaintiffs Moussouros and James have since been dismissed from this case. *See* Dkts. # 89, 130.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|----------|------------------------|------|------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

After some motion practice, Plaintiffs filed the operative CFAC on June 17, 2014. *See* Dkt. # 29.

Plaintiffs seek to represent a nationwide class of "all persons in the United States who purchased a 5HE product," other than persons or entities that purchased for resale, or Defendants, their subsidiaries, and affiliates. *CFAC* ¶ 129. Plaintiffs also seek to represent a subclass for purchasers of 5HE multipack products, a subclass for purchasers of decaffeinated 5HE, and a number of state purchaser subclasses. *Id.* ¶¶ 130–40.

The CFAC asserts fifteen causes of action: (1) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301 *et seq.*; (2) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (5) violation of the New York Deceptive Trade Practices Act ("DTPA"), N.Y. Gen. Bus. Law §§ 349 *et seq.*; (6) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*; (7) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.020 *et seq.*; (8) violation of the New Jersey Fraud in Sales or Advertising of Merchandise Law (the "New Jersey Fraud Statute"), N.J. Stat. Ann. §§ 56:8-1 *et seq.*; (9) violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (the "New Jersey Warranty Act"), N.J. Stat. Ann. §§ 56:12-14 *et seq.*; (10) violation of the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. §§ 57-12-2 *et seq.*; (11) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2 *et seq.*; (12) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 805 Ill. Comp. Stat. 505/1 *et seq.*; (13) breach of express warranty; (14) breach of the implied warranty of merchantability; (15) fraud by intentional misrepresentation and concealment of fact. *CFAC* ¶¶ 146–297. Plaintiffs also allege that Bhargava used Living Essentials and Bio Clinical as alter egos. *Id.* ¶¶ 28, 102–03, 122–27.

In the Court's January 22, 2015 Order granting in part and denying in part Defendants' motion to dismiss the CFAC, the Court raised concerns about many of Plaintiffs' allegations—concerns that linger in this motion for summary judgment. *See* Dkt. # 66. Because Plaintiffs could not allege with specificity which off-label representations they had seen or when they had been exposed to the off-label representations, the Court dismissed with prejudice a number of the state-law, fraud-based claims to the extent Plaintiffs based the claims on off-label representations.[2] *Id.* at 19. The Court also dismissed several Plaintiffs for failure to state a

---

[2]   The Court did not address whether Plaintiffs could state a claim for off-label representations under Counts Five, Eight, Nine, Ten, Eleven, Thirteen, and Fourteen. In this motion for summary judgment, Defendants move to bar off-label representations from all claims.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

claim, and later, after the Court issued its order, Plaintiffs voluntarily dismissed claims arising under Florida and Illinois law.  *See* Dkts. # 122, 144, 145.  At this point, the remaining claims are:

1. **Count One:** Plaintiff Adler's Magnuson-Moss Act Claim;

2. **Count Two**: Plaintiffs Podobedov and Soto's claims under the UCL, but only to the extent that their claims are based on on-label representations;

3. **Count Three**: Plaintiffs Podobedov and Soto's claims under the FAL, but only to the extent that their claims are based on on-label representations;

4. **Count Four**: Plaintiffs Podobedov and Soto's claims under the CLRA, but only to the extent that their claims are based on on-label representations;

5. **Count Five**: Plaintiff Podobedov's claim under the DTPA, including both on- and off-label representations;

6. **Count Six**: No claims remain;

7. **Count Seven**: Plaintiff Forrest's claim under the MMPA, but only to the extent that the claim is based on on-label representations;

8. **Count Eight**: Plaintiff Adler's claim under the New Jersey Fraud Statute, including both on- and off-label representations;

9. **Count Nine**: Plaintiff Adler's claim under the New Jersey Warranty Act, including both on- and off-label representations;

10. **Count Ten**: Plaintiff Ellis's claim under the New Mexico UPA, including both on- and off-label representations;

11. **Count Eleven**: Plaintiffs Thomson and Casey's claims under the UTPCPL, including both on- and off-label representations;

12. **Count Twelve**: No claims remain;

13. **Count Thirteen**: Plaintiffs Podobedov, Soto, and Adler's claims for breach of express warranty under California and New Jersey law;

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

14. **Count Fourteen**: Plaintiffs Soto, Adler, and Ellis's claims for breach of the implied warranty of merchantability under California, New Jersey, and New Mexico law; and

15. **Count Fifteen**: All remaining Plaintiffs' claims for intentional misrepresentation and concealment of fact, but only to the extent that their claims are based on on-label representations.

Defendants now move for partial summary judgment on the remaining claims.

II.    Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A disputed fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.*  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c)(2).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.    Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants' motion for summary judgment levies eight—at times disjointed and undeveloped—arguments against the thirteen remaining claims.

First, Defendants contend that Plaintiffs were not injured by any purported misrepresentations and did not rely on the misrepresentations because Plaintiffs repeatedly purchased 5HE despite knowing its effects. Defendants ask the Court to find no injury, as a matter of law, because Plaintiffs' repeated purchases of 5HE show that Plaintiffs were "satisfied" customers. Defendants also assert that there is no genuine dispute of material fact as to reliance for subsequent purchases because, after the first purchase of 5HE, Plaintiffs had personal experience with the product and no longer required the statements on the packaging to understand the product's effects.

Second and relatedly, Defendants urge the Court to find that Plaintiffs' claims are barred by the statute of limitations because Plaintiffs made their first purchases of 5HE outside the time limitation.

Third, Defendants assert that Plaintiffs cannot state a claim for any alleged "off-label representations" because Plaintiffs cannot specify which, if any, off-label representations they relied on when making their purchases. This argument is largely a continuation and extension of arguments made in Defendants' last motion to dismiss.

Fourth, Defendants argue that the remaining Magnuson-Moss Warranty Act claim fails because Plaintiff Adler cannot point to a "written warranty."

Fifth, Defendants ask the Court to dismiss Plaintiffs' FAL claims because the FAL provides only injunctive relief and the Court has already dismissed all claims for injunctive relief.

Sixth, Defendants assert that the implied warranty of merchantability claims fail because the product is "fit for ordinary use."

Seventh, Defendants argue that Plaintiffs do not have standing to represent a sub-class of purchasers of decaffeinated 5HE because no remaining Plaintiff purchased decaffeinated 5HE.

Eighth, Defendants claim that Plaintiff Podobedov's claims fail because his claims are based on the "erroneous belief" that the product did not contain caffeine.

Given the distinct issues raised in each argument, the Court addresses each argument separately and in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

A.    <u>No Efficacy Claims</u>

In all causes of action, Plaintiffs point to the packaging of 5HE and claim that both the product's trademark, 5-hour ENERGY®, and the representations that the product provides "5 hours of energy" or "hours of energy now" are false because the product actually provides no energy.  Plaintiffs also assert that the "no crash" promise on the label is false because consumers experience a "crash" after taking 5HE.  Defendants refer to these claims as Plaintiffs' "no efficacy claims," and for the sake of consistency, the Court will adopt the same shorthand here.  Defendants allege that these "no efficacy" claims are not actionable for two reasons.

First, Defendants argue that Plaintiffs have no evidence of injury, as required by state laws, the breach of warranty provisions, and common law fraud because Plaintiffs' repeated purchases of the product show that Plaintiffs were not harmed.  *See Defendants' Motion for Partial Summary Judgment* ("*Mot.*") 11:8–17 ("[T]he undisputed evidence would require any trier to concluded that each Plaintiff thought the product was efficacious, met their reasonable expectations, and that he or she received the benefit of their bargain in each of those transactions.").

Second, Defendants argue that Plaintiffs cannot assert efficacy claims for subsequent purchases of the product because Plaintiffs already suspected that the product's efficacy claims were false.  *See id.* 14:10–14 ("[A]nyone who consumes the product would immediately discover upon consuming it for the first time whether it fails to provide the so-called promised result of which Plaintiff's complain.").  This argument challenges Plaintiffs' claims that they relied on the statements when making their subsequent purchases.

The Court first addresses the "injury" argument and then turns to "reliance."

i.    *Injury*

Defendants' first argument is that Plaintiffs were not injured because they repeatedly purchased the product over several years.  Plaintiffs counter this argument with two of their own.  First, Plaintiffs point to cases that establish, as a matter of law, that repeat purchases do not necessarily mean that consumers were "satisfied" and not injured by the product.  Second, Plaintiffs argue that injury is a factual question best reserved for the trier of fact.  Because Plaintiffs' arguments convince the Court that "injury" is a question more appropriate for the trier of fact, the Court DENIES Defendants' motion for summary judgment on this argument.

The leading case in the Ninth Circuit is *Federal Trade Commission v. Pantron I Corp.*, 33 F.3d 1088, 1097 (9th Cir. 1994).  *Pantron* involved a seller's representations that its hair loss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

product was effective at arresting hair loss and promoting hair growth. 33 F.3d at 1091–92. At trial, plaintiffs presented scientific evidence that demonstrated no statistically significant difference between consumers who used the product and those that did not. *Id.* at 1092. In response, defendants introduced evidence that over half its orders for the hair loss product came from repeat purchasers, that it received few written complaints, and that few customers exercised their right to claim a money-back guarantee. *Id.* at 1093. In reversing the trial court's finding that the hair loss treatment had proven "effective for some people," the Ninth Circuit concluded that, even though some consumers were satisfied with the product, the Pantron advertisements were false as a matter of law. *Id.* at 1100 ("Where, as here, a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results."). In essence, the Ninth Circuit concluded that, what mattered most in a false advertising claim was not how consumers felt about the product but what the product actually did.

*Pantron* counsels against giving too much weight to Plaintiffs' repeat purchases of 5HE. Even if some Plaintiffs believed that they experienced some "energy" from the product and purchased the product multiple times, Plaintiffs may prove their claims at trial by showing that the product acted as a "placebo" and provided no energy. The *Pantron* court and courts elsewhere have found that evidence of consumer satisfaction takes a backseat to scientific evidence showing that the product's claims are verifiably false. *See id.*; *see also Forcellati v. Hyland's, Inc.*, CV 12-1983 GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("If Plaintiffs' representations are proven true, Defendants' representations about the products' effectiveness would constitute false advertising 'even though some consumers may experience positive results.'"); *accord Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 506–07 (6th Cir. 2015) ("The false advertising laws at issue punish companies that sell products using advertising that misleads the reasonable consumer. . . . Whether consumers were satisfied with the product is irrelevant."); *cf. Chester v. TJX Companies, Inc.*, CV 15-1437 ODW (DTBx), 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice, shame on me.'").

Importantly, *Pantron* also instructs that the "injury" inquiry is best reserved for the trier of fact. At trial, the question of whether consumers were harmed by 5HE's advertisements will turn on whether Plaintiffs can prove that 5HE does not provide five hours of energy. *See, e.g.*, *Patron*, 33 F.3d at 1092–93. At this phase, the evidence at most shows that some consumers bought 5HE multiple times and some ultimately grew dissatisfied with the product. The question of whether 5HE is effective raises a genuine dispute of fact that is destined for resolution by the trier of fact, and not the Court at summary judgment. Defendants' motion for partial summary judgment on this ground is thus DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

> ii.    *Reliance*

Defendants next argue that Plaintiffs' subsequent purchases of 5HE are not actionable because the consumer knew after their first use of 5HE whether the product was "effective." *See Mot.* 14:17–20 ("After consuming the Product once, a consumer necessarily relies on his or her own experience to determine whether the Product is or is not efficacious, and as a matter of logic no longer 'relies' on statements as to efficacy or 'crash.'"). Defendants rely on cases concerning items like a lipstick that promises 24-hour coverage or a "fresh" orange juice—products where the consumer can quickly tell whether the representations on the products' packaging are true. *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) (lipstick); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 664 (1993) (orange juice). Defendants point out that some of the named Plaintiffs purchased 5HE several hundred times before discontinuing use. *Mot.* 1:3–20 (observing that one plaintiff consumed 5HE approximately 1,300 times). Defendants point to an absence of evidence suggesting that it takes consumers several tries to know that the product, as alleged, is ineffective.

In response, Plaintiffs contend that 5HE is not a product where the consumer "immediately" knows whether the product's representations are true. Plaintiffs point to deposition testimony to raise a genuine dispute of fact as to whether consumers can immediately tell whether the product is ineffective. Plaintiff Cody Soto testified that he did not immediately "put two and two together," and he bought the product again to see if he would get the same reaction. *See PSOF* 93. Plaintiff Michael Casey thought, "maybe I needed to drink more of it . . . give it a chance. Maybe one day it will work." *See PSOF* 105. All Plaintiffs testified that it took some time before they realized that 5HE did not work as advertised. *See PSOF* 105–22. Plaintiffs contend that the "placebo" effect of 5HE distorted consumers' experiences with the dietary supplement, and they fault Defendants for failing to point to evidence of "immediate" effects. *See also Opp.* 8:2–17.

Although the Court is skeptical that the Plaintiffs on the far end of the spectrum—those who purchased 5HE several hundred times before discontinuing use—can state a false advertising claim for their later purchases, Plaintiffs have raised a genuine dispute of fact that at least some subsequent purchases satisfy the reliance requirement. At trial, it will be up to the trier of fact to decide at what point the "reasonable consumer" would learn of the efficacy of the product. At this phase, however, the deposition transcripts are competent evidence that consumers did not immediately know whether 5HE increased their energy levels, and so, the depositions raise a genuine dispute of material fact. Plaintiffs have also shown that courts are sympathetic to claims that consumers may operate for some time under a "placebo" effect before realizing that the product lacks efficacy. *See, e.g.*, *Pantron I Corp.*, 33 F.3d at 1097.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants' cases to the contrary are factually distinguishable because the plaintiffs in those cases either admitted to knowing that the product was ineffective or continued to purchase the product even *after* commencing the litigation. For example, in *Buckland v. Threshold Enterprises, Ltd.*, a case about an unduly harmful skin cream, plaintiff admitted that she purchased the skin cream solely to obtain standing in the looming consumer class action. *See* 155 Cal. App. 4th 798, 807 (2007), *rev'd on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 n.10, 339 (2011). The court concluded that the plaintiff could not establish reliance. *Id.* at 807–08. Similarly, in *Prohias v. Pfizer, Inc.*, the plaintiffs continued to purchase the cholesterol drug, Lipitor, even after they learned that the drug had no coronary benefits and even after they commenced their class action lawsuit. 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007). These cases do not control here because Plaintiffs discontinued their use of 5HE and do not admit to knowing about 5HE's lack of efficacy when they made their purchases. Instead, Plaintiffs argue that it took them some time to "put two and two together," and so, their claims are of a different character than those in *Buckland* and *Prohias*.

Similarly, Defendants' reliance on *Algarin v. Maybelline LLC* is misplaced because *Algarin* explicitly distinguished "dietary supplements," like 5HE, from items like 24-hour lipstick that produced "immediate" effects. *See Algarin*, 300 F.R.D. at 458. The *Algarin* court denied plaintiffs' motion for class certification, concluding that it defied "common sense" for consumers who make repeat purchases to claim that they relied on the seller's representations in making the subsequent purchases. *Id.* at 454. However, even the *Algarin* court recognized that reliance might be warranted for "dietary supplements" where the benefits are "hard to ascertain or take time to actualize." *Id.* This is precisely what Plaintiffs claim here. Because Plaintiffs have raised a genuine dispute of fact as to whether 5HE's effects are hard to ascertain or take time to actualize, summary judgment is not appropriate.

Finally, the Court notes that *Algarin* and the majority of Defendants' other cases, raise the questions of "injury" and "reliance" in a motion for class certification, not a motion for summary judgment. *See generally id.* (concluding that the class is not ascertainable, and materiality, and reliance are not subject to common proof); *see also, e.g.*, *Minkler v. Kramer Laboratories, Inc.*, No. CV 12-9421 JFM (FFMx), 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) (concluding that the class is not ascertainable where some class members already received refunds, and that claims are not typical because some members relied on doctor's advice rather than packaging); *Martinez v. Nash Finch Co.*, No. CV 11-2092 MSK (KLMx), 2013 WL 1313899, at *6 (D. Col. Mar. 29, 2013) (holding that reliance is an individualized inquiry because some class members may not have seen the advertising). Nothing in this Order bars Defendants from later arguing that reliance is not subject to common proof, or that plaintiffs are inadequate representatives of the class, given the predominance of individualized inquiries and defenses unique to the named

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Plaintiffs.  Rather, the Court simply concludes that these arguments are best reserved for the pending motion on class certification.

Accordingly, the Court DENIES Defendants' motion for summary judgment as to reliance for subsequent purchases.  Plaintiffs have raised a genuine dispute of fact that it took time for consumers to realize that the product did not have the intended effects.

B.    <u>Statute of Limitations: Counts Two to Five, Seven to Twelve, and Fifteen</u>

Defendants next assert that the claims based on Plaintiffs' initial purchases are barred by the statute of limitations.  Because the success of this argument is dependent on the success of Defendants' arguments regarding injury and reliance on subsequent purchases, the Court DENIES this ground for summary judgment as well.

It is almost universally accepted that the statute of limitations on a fraud-based claim does not start to run until the plaintiff "discovers" the fraud.  *See Lyons v. Michael & Associates*, 824 F.3d 1169, 1171 (9th Cir. 2016) ("[I]n general, the discovery rule applies to statutes of limitations in federal litigation, that is, . . . a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action.").  In their motion, Defendants urge the Court to find that Plaintiffs discovered the "fraud" or "lack of efficacy" of 5HE when they first used 5HE.  The argument goes that, if Plaintiffs discovered the fraud on their first use, then the statute of limitations on their claims started to run as early as their first purchase.  *See Mot.* 6–8.

Because Plaintiffs have established a genuine dispute of fact as to whether consumers took some time to realize that 5HE was not effective, the Court must reject Defendants' arguments that Plaintiffs knew of the fraud as soon as they completed their initial purchase and consumed 5HE.  Plaintiffs have provided evidence by which a trier of fact could conclude that a reasonable consumer did not have "reason to know" of the fraud until their last purchase—which, for all Plaintiffs, occurred within the statute of limitations.  *See September 4, 2014 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the CFAC*, Dkt. # 51, at 22; *see also Williams v. Stewart*, 112 P.3d 281, 286 (N.M. Ct. App. 2005) (reviewing cases and concluding that discovery and notice issues needed to determine the statute of limitations are issues within the purview of the jury); *Bibeau v. Pac. Nw. Research Found.*, 188 F.3d 1105, 1110–01 (9th Cir. 1999) (same).  Since Defendants do not dispute that Plaintiffs' last purchases all occurred within the relevant statutes of limitations for the state-based claims, the Court DENIES Defendants' motion for summary judgment as to the statute of limitations.

C.    <u>Remaining Off-Label Representations</u>

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Defendants next turn the Court's attention to "off-label representations."[3]  Off-label representations are statements made in television commercials, magazines, and other online advertisements, and not those made on the 5HE packaging.  In its January 22, 2015 Order granting in part and denying in part Defendants' motion to dismiss, the Court dismissed with prejudice Counts Two, Three, Four, Seven, Twelve, and Fifteen to the extent that those fraud-based claims were based on "off-label representations."  In so doing, the Court concluded that Plaintiffs had not satisfied the Rule 9(b) pleading standard because they failed to assert with particularity which statements they relied on when purchasing 5HE.  *See January 22, 2015 Order*, Dkt. # 66, at 10 (observing that Plaintiffs failed to allege what the television advertisement stated, when they were exposed to them, and which statements they found material and relied on to make their decision).

The Court's January 22 order did not address whether "off-label representations" could be a basis of liability for Counts Five, Eight, Nine, Ten, and Eleven of the CFAC, which deal with New York's DTPA, the New Jersey Fraud Statute, the New Jersey Warranty Act, New Mexico's UPA, and Pennsylvania's UTPCPL (collectively, "State Law Consumer Protection Statutes").  The Court also did not address whether the off-label representations could be used in the breach of express warranty (Count Thirteen – California and New Jersey) or breach of implied warranty (Count Fourteen – California, New Jersey, and New Mexico) causes of action.

Defendants now urge the Court to expand the reasoning in the January 22 order to the remaining claims.  *See Mot.* 20:9–21 ("Because Plaintiffs admit they cannot identify the ads they saw with specificity, they cannot possibly prove at trial that they bought the Product in reliance on any 'false' statement.").  Plaintiffs counter that it would inappropriate to expand the Rule 9 particularity requirement to the remaining claims because these claims are not grounded in fraud but rather laws that protect consumers from deceptive conduct.  Plaintiffs argue that "reliance" is not a required element of the State Law Consumer Protection Statutes, or the claims for breach of express and implied warranty.  *See Opp.* 17:5–13.  Because the Court's decision on this issue turns on the elements of the underlying state law claims, the Court must examine each claim separately.  The Court first turns to the State Law Consumer Protection Statutes, and then to the claims for breach of express warranty and breach of the implied warranty of merchantability.

---

[3] At the hearing, Plaintiff's counsel confirmed that a number of statements never appeared on the 5HE label and should properly be treated as "off-label representations."  These statements are: "A powerful blend of B Vitamins for energy," "5-hour ENERGY's blend of vitamins and amino acids gives you hours of smooth energy," and "5-hour ENERGY doesn't jack you up with sugar, caffeine, and herbal stimulants."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

   i.  *State Law Consumer Protection Statutes*

  Plaintiffs contend that the off-label claims in Counts Five (New York), Eight (New Jersey), Nine (New Jersey), Ten (New Mexico), and Eleven (Pennsylvania) survive summary judgment because these state laws do not impose reliance requirements. *See Opp.* 17:16–20:18. Instead, these states only require that the plaintiff be exposed to the misrepresentation. *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (recognizing "exposure" is a less rigorous standard than "reliance" and more forgiving to plaintiffs that cannot specify the statement that they saw or heard); *Fink v. Ricoh Corp.*, 839 A.3d 942, 955 (N.J. Super. Ct. 2003) (recognizing that New Jersey law is "less burdensome" than states that impose reliance requirements); *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1098 (N.M. Ct. App. 2007) ("[T]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'").  Because Plaintiffs are correct on the law as to New York, New Jersey, and New Mexico, they are meritorious here. *See Pelman*, 396 F.3d at 511 (DTPA) ("[A] private action brought under § 349 does not require proof of actual reliance."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 66 n.9 (D.N.J. 2009) (New Jersey Fraud Statute) ("Plaintiffs need not demonstrate reliance in order to prevail on their claims under the NJCFA."); *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014) (NJ Warranty Law) (concluding that reliance is not an element of a NJ Truth-in-Contract claim); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1259 (D.N.M. 2010) (New Mexico UPA) (describing elements of NMUPA claim).

  Defendants argue that, even though these statutes might not impose a reliance requirement, the claims still fail because they cannot meet the statutes' causation requirements. *See Mot.* 8–10.  The Court disagrees. *See Keegan v. American Honda Motor Co.*, 838 F. Supp. 2d 929, 950 (C.D. Cal. 2012) (Morrow, J.) (discussing the risks of conflating reliance with causation and declining to impose California's causation requirement on other state consumer protection statutes).  To prove causation in a state that does not impose a reliance requirement, the plaintiff need only prove that the reasonable consumer is "likely to be deceived," and Plaintiffs have shown that such a question is best reserved for the trier of fact in a trial on the merits. *See, e.g.*, *Pelman*, 396 F.3d at 511; N.J. Stat. Ann. § 56:8-2 (allowing recovery "whether or not any person has in fact been misled, deceived, or damaged"); *Smoot v. Physicians Life Ins. Co.*, 135 N.M. 265, 270 (Ct. App. 2003) ("While it is true that both the UPA and UIPA require proof of a causal link between conduct and loss, we find nothing in the language of either act requiring proof of a link between conduct and purchase or sale.  To the contrary, [UPA] does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'").  Because Plaintiffs have shown that the New York, New Jersey, and New Mexico consumer protection statutes do not impose a reliance requirement, and the Court has determined that causation is a factual question, Defendants' motion for summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

judgment as to the off-label representations under Counts Five, Eight, Nine, and Ten is
DENIED.

Plaintiffs' case is trickier when it comes to Pennsylvania's UTPCPL (Count Twelve). In
the past decade, Pennsylvania courts have fluctuated as to whether reliance is a necessary
element of a UTPCPL claim. *Compare Mertz v. Donzi Marine, Inc.*, No. 04-55 ERIE, 2007 WL
710263, at *11 (W.D. Penn. Mar. 6, 2007) (reliance not required), *with Colaizzi v. Beck*, 895
A.2d 36, 39 (Pa. Super. Ct. 2006) (reliance required). It now seems clear, however, that reliance
is required to state a claim under the UTPCPL. *See Kirwin v. Sussman Automotive*, No. 2628
EDA 2015, 2016 WL 5688543, at *2 (Pa. Super. Ct. Oct. 7, 2016) (reviewing cases) ("Even with
the broadening of the applicability of the catchall provision, in order to prevail on such a cause
of action, 'the UTPCPL plaintiff must still prove justifiable reliance and causation, because the
legislature never intended [the] statutory language directed against consumer fraud to do away
with the traditional common law elements of reliance and causation."); *Trunzo v. Citi Mortgage*,
No. CV 11-1124, 2014 WL 1317577, at *10 (W.D. Penn. Mar. 31, 2014) (concluding that the
UTPCPL has a strong causation requirement). Because Plaintiffs must demonstrate reliance
under the UTPCPL, the Court must look closely at the Pennsylvania Plaintiffs' allegations.

Although the Pennsylvania plaintiffs, Michael Casey and Donna Thompson, generally
describe the commercials that they saw, Defendants correctly point out that their statements are
insufficient to establish reliance. *See Kirwin*, 2016 WL 5868543, at *3; *see also Vess v. Ciba-
Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). Plaintiff Michael Casey testified
that he relied on television advertisements that included "a guy with a cowboy hat," and a "lady"
that "compared it to her being tired, to broccoli, avocados, and bananas," but he could not recall
specific statements or when he saw the advertisements. *See Smith Decl.*, Ex. 5 (Casey Depo.
146:5–149:17 ("Did you see the cowboy hat ad before the first time that you bought the product?
I mean, that – that would be speculating."). Plaintiff Donna Thompson testified that she liked
that the product had the "B vitamins" that were mentioned in the television, magazine, and
internet ads, but she also could not recall whether she saw the ads before or after she purchased
the product. *See id.*, Ex. 11 (Thompson Depo. 126:17–127:5, 128:16–25). Because Defendants
have shown the Pennsylvania Plaintiffs' reliance claims lacking, the Court GRANTS
Defendants' motion for summary judgment on the UTPCPL claims to the extent that those
claims are based on off-label representations.

     *ii.    Breach of Express Warranty*

The Court now turns to whether the breach of express warranty claims under California
and New Jersey law require reliance. The Court first examines New Jersey law and then it turns
to California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

Plaintiffs contend that reliance is not required to state a claim for breach of express warranty under New Jersey law. *See Opp.* 17:16–18:18 (citing *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) ("As a rule, no proof of the buyer's reliance on the warranty is necessary . . . .")). Although Defendants raise the issue in their motion for summary judgment, they do not cite to any law to the contrary. The Court thus DENIES summary judgment as to the off-label representations under New Jersey's express warranty law.

The parties more vigorously dispute whether reliance is a required element of a breach of express warranty claim under California law. Although some California courts have treated reliance as an element of a breach of express warranty claim, *see In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 & n.198 (C.D. Cal. 2015) (collecting cases), the Court finds most persuasive the opinions from those courts that have not. *See, e.g.*, *id.* at 984; *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298 JST (MLGx), 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010); *accord Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 899–900 (N.D. Cal. 2012); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012). As Judge Morrow pointed out in *ConAgra Foods*, the courts that require reliance have failed to incorporate new language from the Uniform Commercial Code ("UCC") that disavows the reliance requirement. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 984 n.198. Judge Morrow's reasoning, and the reasoning in the cases cited above, persuades the Court that reliance is not required to state a breach of express warranty claim under California law, and so, the Court also DENIES summary judgment as to the off-label representations under California's express warranty law.

*iii.* *Breach of Implied Warranty of Merchantability*

Plaintiffs' fourteenth claim is for breach of the implied warranty of merchantability under California, New Jersey, and New Mexico law. To state a claim for breach of the implied warranty of merchantability under the UCC, which was adopted, in substantial part, by California, New Jersey, and New Mexico, the plaintiff must show "(1) that a merchant sold goods, (2) which were not merchantable at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *See* Cal. Com. Code § 2314; N.J.S.A. § 12a:2-314; N.M.S.A. § 55-2-314. Although the UCC offers six ways to demonstrate that a product is not "merchantable," Plaintiffs assert their claims under section 2(f) of the UCC, which states that a product is "not merchantable" if it fails to "conform to the promises or affirmations of fact made *on the container or label* if any." *See* Cal. Com. Code § 2314(2)(f) (emphasis added); N.J.S.A. § 12a:2-314(2)(f) (emphasis added); N.M.S.A. § 55-2-314(2)(f) (emphasis added). As should be apparent by the language of the UCC-based statutes, Plaintiffs cannot state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

a claim for breach of the implied warranty of merchantability by pointing to an off-label representation; the statutes require that the representation appear "on the container or label." *See id.* Because off-label representations are irrelevant to a claim for breach of the implied warranty of merchantability, the Court GRANTS Defendants' motion for summary judgment as to Count Fourteen to the extent that Plaintiffs premised their implied warranty claims on off-label representations.

  iv.    *Summary*

In sum, the Court concludes that Plaintiffs: (1) can pursue claims for off-label representations under New York (Count Five), New Jersey (Counts Eight and Nine), and New Mexico (Count Ten) consumer protection laws, but not Pennsylvania law (Count Eleven); (2) can pursue claims for off-label representations under the breach of express warranty laws in California and New Jersey (Count Thirteen); and (3) cannot pursue claims for off-label representations under the breach of implied warranty laws in California, New Jersey, and New Mexico (Count Fourteen).

  D.    Magnuson-Moss Warranty Act Claim

To state a claim under the Magnuson-Moss Warranty Act ("MMWA"), the plaintiff must plead a "written affirmation of fact or written promise" that a product will "meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Defendants assert two arguments against Plaintiff Adler's MMWA claim.[4] First, they argue that off-label representations cannot be the basis for the claim because the off-label representations do not refer to a "specified period of time." Second, they assert that the 5-hour ENERGY® trademark cannot be the basis for the claim because the trademark is suggestive, not descriptive.

Courts have required that a "written warranty" under the MMWA reference a "specified period of time" in order to be actionable. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 898 & n.45 (C.D. Cal. 2013); 16 C.F.R. § 700.3(a) ("A product information disclosure without a specified warranty is therefore not a written warranty."). Defendants point out that the off-label representations do not contain a specified time period, and Plaintiffs make no argument to the contrary, defending only their claims that the 5HE trademark, the "five hours of energy," and the "no crash" statements are actionable under the MMWA. *See Opp.* 23:1–18. The Court

---

[4]    The parties agree that Plaintiff Adler can only state a MMWA claim for his purchase of multi-packs of 5HE products costing more than $5, and not his purchase of individual bottles. *See Mot.* 23:16–24; *Opp.* 22:14–24. Plaintiff Adler brings his MMWA claim only on behalf of members of the Multi-pack Subclass, defined as "all class members who purchased 5-Hour Energy® 4, 6, or 12-pack Multi-pack products." *FCAC* ¶¶ 130, 147.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

thus GRANTS summary judgment to Defendants as to any MMWA claim based on an off-label representation.

Defendants' next argument concerns the 5HE trademark. Defendants assert that the trademark cannot be the basis for an MMWA claim because it "is used to indicate the source of goods, not to provide a warranty to customers." *Mot.* 24:15–16. In response, Plaintiffs claim that trademark names can be warranties, and they cite ample concurring authority. *See Opp.* 23:22–24:7 (citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (holding that a products' trademark name, "Active Naturals," can be the basis for a breach of express warranty claim under New York law); *Paulino v. Conopco, Inc.*, No. CV 14-5145 JG (RMLx), 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (upholding express warranty claim for trademark, "Suave Naturals")).

Plaintiffs have the better of this argument. The Court is unpersuaded that the Sixth Circuit's trademark opinion in *Innovation Ventures, LLC* is relevant because, even though the Sixth Circuit concluded that the 5HE trademark is suggestive and not descriptive, the opinion has little relevance here. *See Mot.* 24:14–23 (citing *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012)). It is unclear to the Court why trademark classifications should play any role in determining whether the trademark constituted a "written promise" to consumers. As simple as it is, the 5HE trademark meets the standard required by the MMWA.

Accordingly, the Court holds that, as a matter of law, Plaintiff Adler cannot state a MMWA claim for off-label representations, but can, if proved at trial, assert the claim based on the 5HE trademark, the statement that the product provides "five hours of energy," and the statement that the product leaves "no crash" at the end of the five hours.

E. FAL Claim

Defendants ask the Court to dismiss Plaintiffs' FAL claims because the FAL provides only injunctive relief, and the Court has already dismissed with prejudice all of Plaintiffs' claims for an injunction. *See Mot.* 19:22–20:5. Defendants rely on an inaccurate statement of the law. The equitable remedies under the FAL include both injunctive relief and restitution. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 531 (N.D. Cal. 2012) ("The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants . . . ."); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 156 (2015) ("[B]oth the UCL and FAL provide for recovery of restitution."). Because Plaintiffs can claim restitution under the FAL, the Court DENIES Defendants' motion for summary judgment on the FAL.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

F.    Implied Warranty of Merchantability

Plaintiffs' fourteenth claim is for breach of the implied warranty of merchantability under California, New Jersey, and New Mexico law.  A product can breach the implied warranty of merchantability in at least six different ways.  *See* Cal. Com. Code § 2314; N.J.S.A. § 12a:2-314; N.M.S.A. § 55-2-314.  For a good to be merchantable, for example, it must be both "fit for the ordinary purposes for which such goods are used," and "conform to the promises or affirmations of fact made on the container or label, if any," among other requirements (six total).  *See* Cal. Com. Code § 2314(2)(c), (2)(f); N.J.S.A. § 12a:2-314(2)(c), (2)(f); N.M.S.A. § 55-2-314(2)(c), (2)(f).

Defendants argue that 5HE does not breach the implied warranty of merchantability, as a matter of law, because 5HE is fit for ordinary purposes.  They assert that 5HE can be consumed, is not contaminated, and provides at least as much psychological benefit as a caffeine pill.  *Mot.* 17:12–24.  In essence, Defendants argue that Plaintiffs' claims fail under the "ordinary purposes" prong of the implied warranty of merchantability.  *Id.* 17:1–12 (citing *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1110 (N.D. Cal. 2015)).

Defendants misconstrue Plaintiffs' arguments and fail to understand that there are multiple prongs under which Plaintiffs can state an implied warranty claim under section 2-314 of the UCC.  Plaintiffs do not argue that 5HE is "unfit for ordinary purposes"—rather, they assert their claims under section 2(f) of 2-314, which imposes liability when a product does not conform to promises on its label.  *See Opp.* 10:11–22 (citing *Hauter v. Zogarts*, 14 Cal. 3d 104, 117–18 (1975) (affirming that the implied warranty of merchantability required a product to "conform to the promises or affirmations of fact made on the container or label")); *see also Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 329–30 (D.N.J. 2014) (finding that plaintiff stated a claim for breach of implied warranty where a clothes dryer did not conform to the Energy Star Label on its packaging, even though the dryer still dried clothes).  Because Plaintiffs' deposition testimony raises a genuine dispute of fact as to whether 5HE conforms to the "promises or affirmations" on its label, the Court DENIES Defendants' motion for partial summary judgment on the remaining implied warranty of merchantability claims.

G.    Decaffeinated 5HE

Defendants next urge the Court to dismiss any claims regarding decaffeinated 5HE because no remaining Plaintiff ever purchased or consumed decaffeinated 5HE.  *Mot.* 18:13–22.  Although Plaintiffs do not dispute that the remaining Plaintiffs never purchased decaffeinated 5HE, they ask the Court to allow the case to advance because decaffeinated 5HE is substantially similar to the other products purchased by Plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

There is no controlling authority on whether Plaintiffs have standing to sue for products that they did not purchase. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868–69 (N.D. Cal. 2012) (collecting cases); *accord Gratz v. Bollinger*, 539 U.S. 244, 262–63 & n.15 (2003) (noting tension in prior cases). Although some courts have found that such plaintiffs lack standing to sue and other courts reserve the analysis until a motion for class certification, the developing consensus in federal courts urges a close look at the similarity of the products. *See Miller*, 912 F. Supp. 2d at 868–69. In a "majority" of courts, the inquiry now turns on whether the product that the plaintiff purchased is "substantially similar" to the products not purchased. *Id.* at 869 (citing *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C 11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)).

Products are "substantially similar" if they contain common ingredients or if the alleged misrepresentations on the labels of the products are identical. *See, e.g.*, *id.*; *see also Dysthe v. Basic Research LLC*, No. CV 09-8013 AG (SSx), 2011 WL 5868307, at *5 (C.D. Cal. June 13, 2011) ("Having a few common ingredients is simply not enough to show the Products are the same or even 'nearly identical.' In fact, this is true for just about any type of product. After all, just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they are the same drink."). "Where product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines." *See Miller*, 912 F. Supp. 2d at 869–70 (citing to *Koh v. S.C. Johnson & Son, Inc.*, No. C-09000927 RMW, 2010 WL 94265, at *1, 2–3 (N.D. Cal. Jan. 5, 2010) (allowing case to proceed where labels were identical)).

Although the purported misstatements on the decaffeinated 5HE packaging are identical to the purported misstatements on the caffeinated packaging (i.e., "5-hour ENERGY," "five hours of energy," and "no crash"), the products' ingredients differ significantly. Decaffeinated 5HE "contains only 6 mg of caffeine," whereas regular strength 5HE contains 200 mg. *FCAC* ¶¶ 69–70, 73; *see also Smith Decl.*, Ex. 17, ¶ 32 ("The relative amount of 'energy blend' components in both the decaffeinated version and in the extra-strength version of 5HE is different from the original formula.").

Moreover, this is not a case where the composition of the product is immaterial. At trial, Plaintiffs must prove that the 5HE products that they consumed did not provide "five hours of energy" and caused a "crash" at the end of the five hours. The Court anticipates that the parties will introduce scientific evidence and customer testimonials that explain the effects of the product. Because the decaffeinated product is composed of different ingredients than the regular-strength product, the evidence as to whether the products provide "no energy" or a "crash" is bound to differ. Indeed, as Defendants point out, the named Plaintiffs would be poor

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

witnesses at trials related to decaffeinated 5HE, which they did not purchase or consume, and could not adequately describe. Plaintiffs have not presented a genuine issue of material fact to the contrary.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the decaffeinated 5HE product.

H.    Podobedov's Claims

Finally, Defendants urge the Court to dismiss Plaintiff Podobedov's claims because Podobedov purportedly believed that 5HE did not contain any caffeine when he purchased it. *See Mot.* 22:12–20. Defendants argue that Podobedov's erroneous belief about the absence of caffeine in 5HE, and not the product's promise to confer five hours of energy, caused Podobedov's purchase and is not a ground for liability.

This argument fails because Defendants, once again, misconstrue Plaintiffs' claims. Podobedov's assertions have little to do with the disclosure of caffeine as an ingredient in 5HE and far more to do with Defendants' "promise" to "give every purchaser five hours of energy and did not keep that promise." *See Opp.* 20:27–21:10. By pointing to Podobedov's deposition testimony, Plaintiffs have raised a genuine dispute of fact that Podobedov purchased 5HE not only because he believed it to be an "alternative to caffeine," but also because he believed it would provide him with five hours of energy. *See PSOF* 115, 117 (testifying that the product "said that I would have five hours of energy with no crash from the B vitamins and amino acids" and that "it says five hours. . . . And it did not last me for five hours"). The Court thus DENIES Defendants' motion for summary judgment on this ground.

IV.    Conclusion

Given the above, the Court holds as follows:

1.   **Count One:** Defendants' motion for summary judgment as to Plaintiff Adler's Magnuson-Moss Warranty Act Claim is GRANTED to the extent that Adler bases his claim on off-label representations, but DENIED to the extent that Adler bases his claim on the 5HE trademark or other on-label representations.

2.   **Count Two**: Plaintiffs Podobedov and Soto may pursue their claims under the UCL, but only to the extent that their claims are based on on-label representations.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|---|---|---|---|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

3.  **Count Three**: Plaintiffs Podobedov and Soto may pursue their claims under the FAL, but only to the extent that their claims are based on on-label representations.  Defendants' motion for summary judgment on the FAL claim is DENIED because Plaintiffs may claim restitution and not only injunctive relief.

4.  **Count Four**: Plaintiffs Podobedov and Soto may pursue their claims under the CLRA, but only to the extent that their claims are based on on-label representations.

5.  **Count Five**: Plaintiff Podobedov may pursue his claims under the DTPA, and may assert claims based on both on- and off-label representations.  Moreover, Defendants' motion for summary judgment as to the "off-label representations" under the DTPA is DENIED because reliance is not a necessary element of a DTPA claim.

6.  **Count Seven**: Plaintiff Forrest may pursue his claims under the MMPA, but only to the extent that the claims are based on on-label representations.

7.  **Count Eight**: Plaintiff Adler may pursue his claim under the New Jersey Fraud Statute, and may assert claims based on both on- and off-label representations.   Defendants' motion for summary judgment as to the off-label representations under the New Jersey Fraud Statute is DENIED because reliance is not a necessary element of a New Jersey Fraud Statute claim.

8.  **Count Nine**: Plaintiff Adler may pursue his claims under the New Jersey Warranty Act, and may assert claims based on both on- and off-label representations.  Defendants' motion for summary judgment as to the off-label representations under the New Jersey Warranty Act is DENIED because reliance is not a necessary element of a New Jersey Warranty Act claim.

9.  **Count Ten**: Plaintiff Ellis may pursue his clams under the New Mexico UPA, and may assert claims based on both on- and off-label representations.   Defendants' motion for summary judgment as to the off-label representations under the New Mexico UPA is DENIED because reliance is not a necessary element of a New Mexico UPA claim.

10. **Count Eleven**: Plaintiffs Thomson and Casey may pursue their claims under the UTPCPL, but only to the extent that their claims are based on on-label representations. Defendants' motion for summary judgment as to the off-label representations under the UTPCPL is GRANTED because reliance is a necessary element of a UTPCPL claim and Plaintiffs have not come forth with evidence of reliance.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2438 PSG (PLAx) | Date | January 24, 2017 |
|----------|------------------------|------|------------------|
| Title | In re 5-hour ENERGY Marketing and Sales Practices Litigation | | |

11. **Count Thirteen**: Plaintiffs Podobedov, Soto, and Adler's claims for breach of express warranty under California and New Jersey law survives, and Plaintiffs may pursue claims based on both on- and off-label representations.  Defendants' motion for summary judgment based on off-label representations is DENIED.

12. **Count Fourteen**: Plaintiffs Soto, Adler, and Ellis's claims for breach of the implied warranty of merchantability under California, New Jersey, and New Mexico law survives, but Plaintiffs may only assert claims based on on-label representations.  Defendants' motion for summary judgment as to off-label representations is GRANTED.

13. **Count Fifteen**: Plaintiffs may pursue claims for intentional misrepresentation and concealment of fact, but only to the extent that their claims are based on on-label representations.

In addition to these surviving claims, the Court holds:

- Plaintiffs have raised a genuine dispute of fact as to whether it took Plaintiffs some time to learn of the purported inefficacy of 5HE.  Defendants' motion for summary judgment as to Plaintiffs' claims of lack of efficacy is therefore DENIED.

- Defendants have shown that Plaintiffs lack standing to sue for any purported misrepresentation related to decaffeinated 5HE.  The Court therefore GRANTS Plaintiffs' motion for summary judgment as to all claims based on decaffeinated 5HE.

- Defendants' motion for summary judgment as to all of Plaintiff Podobedov's claims is DENIED because Plaintiffs have raised a genuine dispute of fact as to Podobedov's reliance on the purportedly misleading statements.

**IT IS SO ORDERED.**