UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**  **Order GRANTING Defendants' motion for partial summary judgment**

Before the Court is a motion for partial summary judgment filed by Defendants Innovation Ventures, LLC, Living Essentials, LLC, Manoj Bhargava, and Bio Clinical Development, Inc. ("Defendants"). *See* Dkt. # 288 ("*Mot.*").  Plaintiffs oppose the motion, *see* Dkt. # 293 ("*Opp.*"), and Defendants timely replied, *see* Dkt. # 302 ("*Reply*").[1] The Court held a hearing in this matter on January 22, 2018.  Having considered the arguments made in the moving papers and at the hearing, the Court **GRANTS** Defendants' motion.

I.  Background

  A.  Factual History

This action stems from Plaintiffs' purchases of Defendants' 5-hour ENERGY® ("5HE") products from March 1, 2008 through April 24, 2013.  *See Plaintiffs' Statement of Genuine Disputes of Material Facts*, Dkt. # 293-1 ("*PSGD*"), ¶ 1.

During this period, labels for regular- and extra-strength 5HE featured the following characteristics:

- The word "ENERGY" in all-capitalized letters, along with the statements "Hours of energy" or "Hours of energy now" and "DIETARY SUPPLEMENT."  *Id.* ¶ 8; *Mot.*

---

[1] As a preliminary matter, Defendants assert evidentiary objections along with their reply.  *See* Dkt. # 302-2.  To the extent that the Court relies on objected-to evidence, it relies only on admissible evidence and, therefore, the objections are overruled.  *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

9:14–10:11; *Declaration of Carl F. Sperber*, Dkt. # 286-2 ("*Sperber Decl.*"), ¶¶ 6–9, Exs. 1–4.

- An image of a jogger immediately to the left of the product name. *PSGD* ¶ 9; *Mot.* 9:14–10:22; *Sperber Decl.* ¶¶ 6–11, Exs. 1–6.

- A note that the product contained "Only 4 Calories," or, depending on the year, that it contained "4 Calories" and was "Sugar free." *PSGD* ¶ 2. That these statements were accurate is undisputed by the parties. *Id.* ¶ 3.

- An indication, in the product's "Supplemental Facts" panel, that it contained caffeine. *Id.* ¶ 10; *Sperber Decl.*, Exs. 1–6.

Plaintiffs purchased 5HE in the hopes that it would provide them with energy. Plaintiff David Ellis, for example, was a hockey player who purchased 5HE because he "thought it would give [him] five hours of energy," noting that "there's a jogger on the bottle," that the product contained vitamins and amino acids, and his belief that "a product that tells you [it's] going to give you energy will give you energy." *PSGD* ¶¶ 13–15; *Deposition of David Ellis*, Dkt. # 293-3 ("*Ellis Dep.*"), 104:7–11, 116:10–117:5, 155:3–17, 168:4–169:6, 177:14–21, 179:8–180:19, 182:22–183:10, 267:16–269:6; *Declaration of David Ellis*, Dkt. # 293-8 ("*Ellis Decl.*"), ¶ 2. Ellis thought that 5HE provided "exertional energy for doing physical activities"; in other words, that it would provide "energy for physical activity, not just a boost of caffeine." *PSGD* ¶ 16; *Ellis Dep.* 182:1–6; *Ellis Decl.* ¶ 4. He later admitted that, at the time he purchased 5HE, he was unclear as to *how* the product would provide energy and he "didn't know that calories were energy." *PSGD* ¶ 17; *Ellis Dep.* 180:4–19; *Ellis Decl.* ¶ 5. Plaintiff Cody Soto, a football player who purchased 5HE, also testified that he was uncertain as to how the product produced energy:

> Q:  And those calories provide the energy for the exercise; correct? In other words, calories help give you energy, if you know?
>
> A:  I don't know.
>
> Q:  So you don't know whether calories are needed to supply the energy that your body needs?
>
> A:  I know protein gives you energy.
>
> Q:  Okay. And you're talking about protein. Let's just talk about calories, generally.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

> A: I don't really know too much about calories.
>
> Q: So you don't know whether—you don't know anything about caloric energy, for example?
>
> A: I don't know any of that.

*PSGD* ¶ 21; *Deposition of Cody Soto*, Dkt. # 293-4 ("*Soto Dep.*"), 118:2–15, 119:17–120:2; *see also PSGD* ¶ 22; *Soto Dep.* 122:5–8 ("Q: All right.  Do you know whether you can get exertional energy by drinking something that has no calories in it?  A: I don't know.").  Plaintiff William Forrest, who "mainly used [5HE] for golfing and stuff" and purchased it because of his "belief that it would give [him] five-hour energy," expressed similar confusion:

> Q: Are you familiar . . . from health and just from your own experience, that for a person to have the energy to complete—to perform physical activity requires calories in their body?
>
> A: No.  I'm not . . . I'm not for sure on that.
>
> . . .
>
> Q: Just like water will not give you exertional energy, another drink with no calories will not give you exertion—exertional energy?
>
> A: I'm not for sure on that.

*PSGD* ¶¶ 23–24, 26; *Deposition of William P. Forrest*, Dkt. # 293-4 ("*Forrest Dep.*"), 115:1–8, 117:3–7, 222:11–14, 228:17–18, 229:16–17, 237:7–11.  Plaintiff Michael Casey, who also purchased 5HE with the belief that it would provide the energy necessary for physical activities, demonstrated a somewhat greater knowledge of caloric energy in his deposition:

> Q: You can eat as much as you want of anything, if it doesn't have calories, you will not have exertional energy.  Do you agree with that?
>
> A: I don't know necessarily if it has to have calories or not.  But you need food in order to have energy.
>
> Q: All right.  And that's exertional energy?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

A: I guess.

Q: Right?

A: I don't know.

*PSGD* ¶¶ 27–29; *Deposition of Michael Casey*, Dkt. # 293-5 ("*Casey Dep.*"), 133:3–12, 148:25–149:1; *Declaration of Michael Casey*, Dkt. # 293-7 ("*Casey Decl.*"), ¶¶ 2–5. Plaintiff Ilya Podobedov did not understand that calories are the only source of physical or exertional energy until *after* he stopped purchasing 5HE. *PSGD* ¶ 33; *Deposition of Ilya Podobedov*, Dkt. # 293-5 ("*Podobedov Dep.*"), 151:8–155:5, 215:18–216:1; *Declaration of Ilya Podobedov*, Dkt. # 293-7 ("*Podobedov Decl.*"), ¶ 3. Plaintiffs Donna Thompson and Michael Adler also purchased 5HE thinking that it would give them energy from sources *other* than calories or caffeine. *PSGD* ¶¶ 35–36, 39–40; *Deposition of Donna Thompson*, Dkt. # 293-6 ("*Thompson Dep.*"), 125:6–12, 141:25–142:2, 187:1–7, 188:8–20; *Declaration of Donna Thompson*, Dkt. # 293-7 ("*Thompson Decl.*"), ¶¶ 2, 4; *Declaration of Marc Adler*, Dkt. # 293-7 ("*Adler Decl.*"), ¶ 3; *Deposition of Marc Adler*, Dkt. # 293-6 ("*Adler Dep.*"), 84:6–85:9.

B. Procedural History

In June 2013, the Judicial Panel on Multidistrict Litigation centralized a number of cases related to the marketing and sales of 5HE and assigned the matter to this Court for consolidated pretrial proceedings. *See* Dkt. # 1. Plaintiffs filed their consolidated first amended class action complaint ("CFAC") on October 6, 2014. *See* Dkt. # 54.

Although the CFAC initially asserted fifteen causes of action, the number of pending claims has been reduced through this Court's January 22, 2015 order granting in part and denying in part Defendants' motion to dismiss, *see* Dkt. # 66, and its order granting in part and denying in part Defendants' previous motion for partial summary judgment, *see* Dkt. # 191 ("*MSJ Order*"). Following the latter order, the following claims survived:

Count One: Plaintiff Adler's claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq., as to 5HE's trademark or on-label representations.

Count Two: Plaintiffs Podobedov and Soto's claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., as to on-label representations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

Count Three: Plaintiffs Podobedov and Soto's claims under the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., as to on-label representations.

Count Four: Plaintiffs Podobedov and Soto's claims under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., as to on-label representations.

Count Five: Plaintiff Podobedov's claim under the New York Deceptive Trade Practices Act ("DTPA"), N.Y. Gen. Bus. Law §§ 349 et seq., as to on- and off-label representations.

Count Six: No remaining claims.

Count Seven: Plaintiff Forrest's claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.020 et seq., as to on-label representations.

Count Eight: Plaintiff Adler's claim under the New Jersey Fraud in Sales or Advertising of Merchandise Law ("the New Jersey Fraud Statute"), N.J. Stat. Ann. §§ 56:8-1 et seq., as to on- and off-label representations.

Count Nine: Plaintiff Adler's claim under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("the New Jersey Warranty Act"), N.J. Stat. Ann. §§ 56:12-14 et seq., as to on- and off-label representations.

Count Ten: Plaintiff Ellis's claim under the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. §§ 57-12-2 et seq., as to on- and off-label representations.

Count Eleven: Plaintiffs Thompson and Casey's claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2 et seq., as to on-label representations.

Count Twelve: No remaining claims.

Count Thirteen: Plaintiffs Podobedov, Soto, and Adler's claims for breach of express warranty.

Count Fourteen: Plaintiffs Soto, Adler, and Ellis's claims for breach of the implied warranty of merchantability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

<u>Count Fifteen</u>: Plaintiffs' claims for intentional misrepresentation and concealment of fact as to on-label representations.

*MSJ Order* at 21–22. On June 7, 2017, the Court denied Plaintiffs' motion for class certification. *See* Dkt. # 267 ("*Class Cert. Order*").

Defendants now seek partial summary judgment "on the remainder of Plaintiffs' on-label claims that are based on their 'five hours of caloric energy' theory." *Mot.* 2:26–3:2.

II.  <u>Legal Standard</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Electric Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.  <u>Discussion</u>

    A.  <u>Consumer Protection Claims</u>

        i.  *"Five Hours of Caloric Energy" Theory*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

The basis of Defendants' motion is that Plaintiffs' argument for on-label misrepresentation—that 5HE's "label promises consumers 'five hours of caloric energy,' but only gives them 4 calories of caloric energy"—fails as a matter of law. *Mot.* 1:3–6. The Court agrees.

As the Court asserted in its order denying Plaintiffs' motion for class certification, *see Class Cert. Order* at 10, Plaintiffs' consumer protection claims are governed by the "reasonable consumer" test. *See, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying reasonable consumer test to California law); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (applying reasonable consumer test to New York law); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (applying reasonable consumer test to Pennsylvania law); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759–60 (W.D. Mo. 2015) (applying reasonable consumer test to Missouri law); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1258 (D.N.M. 2010) (applying reasonable consumer test to New Mexico law); *Miller v. American Family Publishers*, 284 N.J. Super. 67, 83 (1995) (applying reasonable consumer test to New Jersey law). Under this standard, Plaintiffs must show that a reasonable consumer would likely be deceived, which "requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)) (citation omitted); *see also Fink*, 714 F.3d at 741 ("To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that [the defendant's] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."). That a product might be "unreasonably misunderstood by an insignificant and unrepresentative segment" of consumers is not sufficient. *Ebner*, 838 F.3d at 966. Rather, Plaintiffs would have to demonstrate "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 965; *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (adopting an "objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances").

The Court agrees with Defendants' conclusion that the evidence before it does not create a triable issue as to whether a reasonable consumer would be misled by 5HE's label into thinking that the product provided five hours of caloric energy. This is because while the Ninth Circuit has stated that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth," *Williams v. Gerber*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

*Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), they are expected to read any "qualifying language," especially where it "appears immediately next to the representations it qualifies and no reader could ignore it." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *see also Popejoy v. Sharp Elecs. Corp.*, No. 2:14-06426 (WJM), 2015 WL 5545067, at *3–4 (D.N.J. Sept. 18, 2015) (dismissing claims of deception where accurate representations were "on every side of the [product's] carton including the front"); *Kelly*, 81 F. Supp. 3d at 759–60 (dismissing Missouri state law claims that potato chips were a "natural" product where ingredient list included artificial ingredients); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ("[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."). Here, the front labels of each 5HE bottle clearly—and accurately— stated that it contained "Only 4 Calories" or, depending on the year, that it contained "4 Calories" and was "Sugar free." *PSGD* ¶¶ 2–3. This information was presented on the front of the package, directly beneath the product's name. *See Mot.* 9:9–10:22; *Sperber Decl.*, Exs. 1–6. Accordingly, the Court agrees with Defendants' observation that "[a]ny consumer who is interested in the number of calories in a bottle of 5-hour ENERGY® knows immediately that" it contains four calories, and "therefore cannot be misled by solely focusing on one part of the product package they assert is misleading." *Mot.* 10:23–11:1; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("[N]o reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient when that term is adjacent to the phrase, 'Artificially Flavored.'"); *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("While a reasonable consumer may not inspect the finest of print to clarify a misleading statement, a reasonable consumer . . . cannot look at only one statement to the exclusion of everything else and claim he has been misled."); *Hairston v. South Beach Beverage Co., Inc.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("[N]o reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins are suppose[d] to be 'all natural vitamins.' Moreover, to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list.").

Language prominently featured on 5HE's label—not, as Defendants note, "qualifying statements hidden elsewhere," *Mot.* 12:15–16—clearly indicate that the product contains only four calories. Such information would not be ignored by a reasonable consumer. *See Bobo*, 2015 WL 13102417, at *5 ("Ignoring legible and clear statements on the front of the label . . . is viewing the product in an unreasonable manner."); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) (noting that "[t]his is one of those rare cases where the accused label itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived" because "the packaging at issue here explicitly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

states that Organic Soy Milk is *not* what the plaintiffs allegedly believed that it was: cow's milk") (emphasis in original).

Because it is clear based on the evidence presented that no reasonable consumer could interpret 5HE as having anything *but* four calories, Plaintiffs' caloric energy claim would necessarily fail because no consumer could reasonably believe that a product that contains only four calories could provide five hours of caloric energy. *See Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables."). To conclude that 5HE *did* provide five hours of caloric energy would require the consumer to ignore the clear language on the product's label, which is an unreasonable act. Courts have routinely denied consumer product claims where, as here, a product's label clearly dispels whatever misrepresentation allegedly exists. *See, e.g.*, *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) ("Because the labels clearly disclosed the presence of fruit or vegetable juice concentrate in the Yogurts, it is not plausible that Plaintiffs believed, based on Defendant's '[o]nly natural ingredients' or 'all natural' representations, that the Yogurts did not contain added fruit juice."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 n. 38 (C.D. Cal. 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the food or drink clear."); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("Where a consumer can readily and accurately determine the composition and nutritional value of a product (here, by reading the front and back of the label), no reasonable consumer would be misled or deceived by depictions of fruit on a label."). Therefore, the Court agrees with Defendant that Plaintiffs' "five hours of caloric energy" theory fails as a matter of law.

    ii.  "Physical Energy" Theory

In opposition, Plaintiffs do not contest these arguments or dispute Defendants' assertion that summary judgment as to the "five hours of caloric energy" claim is warranted. Instead, they present a *different theory* of on-label misrepresentation: a consumer's belief "that 5HE provides energy for physical activity *despite* containing only four calories." *Opp.* 1:9–10 (emphasis in original). In other words, they do not contend that a consumer would be fooled into thinking that 5HE provides five hours of *caloric* energy, but rather five hours of energy derived from *another source*, noting that "some Plaintiffs knew that calories were a source of physical or exertional energy, [but] none of them knew at the time of their purchases that calories are the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

*only* source of energy." *Id.* 1:12–14 (emphasis in original). This is a very different theory of misrepresentation, and so Defendants' arguments in their motion do not necessarily apply to it.

Defendants point out, however, that their characterization of Plaintiffs' on-label claim—premised on the "five hours of caloric energy" theory—is not *Defendants'* construct, but rather was previously "invented [by Plaintiffs] as the vehicle for their 'under fill' class certification damages theory." *Reply* 5:3–4. Defendants observe in their supplemental briefing on this issue that "[a] paramount dispute at class certification was whether consumers have a common understanding of the word 'energy.'" *See Supplemental Brief in Further Support of Defendants' Motion*, Dkt. # 307 ("*Defendants' Supp.*"), 1:14–15. At that stage, in response to Defendants' argument that "materiality cannot be presumed because some class members may have had different understandings of the term 'energy,'" Plaintiffs were adamant that caloric energy was the *only* definition of energy that would be entertained by a reasonable consumer, noting that "the definition of 'energy' as it relates to *consumable* substances like food or beverages has remained consistent for decades" and that the United States Department of Agriculture "measures 'Food Energy' by reference to 'kilocalories.'" *See Plaintiffs' Reply in Support of Motion for Class Certification*, Dkt. # 223 ("*Class Cert. Reply*"), 5:3–4, 7:26–27, 8:6–7 (emphasis in original). In essence, Plaintiffs are now arguing the opposite of what they clearly contended at the class certification stage. At that time, they asserted that caloric energy was the *only* definition of energy that a reasonable consumer would possess; now, however, they propose that a consumer might interpret the word energy as unrelated to calories.

Plaintiffs respond that this is a mischaracterization of their position at the class certification stage. They suggest that their assertions regarding caloric energy were not intended to foreclose any alternative definition of the term, but were instead meant to distinguish Plaintiffs' theory of "physical energy" from Defendants' competing theory of "mental energy." *See Plaintiff's Supplemental Brief in Opposition*, Dkt. # 306 ("*Plaintiffs' Supp.*"), 4:10–20. Plaintiffs concede that "[a]lthough both parties sometimes referred to 'caloric energy' as a shorthand for distinguishing Plaintiffs' position from Defendants' 'mental energy' theory," it is nonetheless a mischaracterization of "Plaintiffs' position to say they previously argued all consumers know that calories are the only source of physical energy." *Id.* 4:20–24. This confusion is understandable, given the conflation of "caloric energy" and "physical energy" at the class certification stage. But mere semantics cannot mask the fact that Plaintiffs asserted at that time that "the definition of 'energy' as it relates to *consumable* substances like food or beverages has remained consistent for decades" and that Defendants "fail[ed] to cite a single case . . . for their proposition that the term 'energy' is not sufficiently definite." *Class Cert. Reply* 7:26–27, 9:12–13 (emphasis in original). At the class certification stage, Plaintiffs argued that the definition of "energy" *was* definite, noting that "Defendants' expert acknowledged that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

the word 'energy' is properly understood as caloric intake, and that Plaintiffs' definition is consistent with the dictionary definition of 'energy.'" *Id.* 7:27–8:2.

Defendants now argue that Plaintiffs have been hoisted by their own petard, and that they "cannot re-jigger their legal or factual theories in order to avoid summary judgment." *Reply* 5:10–11. Courts have regularly rejected new legal or factual theories that are presented relatively late in litigation. For example, in *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir. 1991), the plaintiff's "entire case was premised on the theory that McDonald's was her employer, and several months of discovery centered around the theory." *Id.* at 1091. However, after eight months and "just two weeks before the scheduled trial date," the plaintiff proposed an alternative theory of the case in, as here, an opposition to the defendant's motion for summary judgment. *Id.* The district court "refus[ed] to treat this new claim"—a decision that was upheld by the Tenth Circuit due to the risk of prejudice to the defendant. *Id.* Other courts have similarly rejected late-in-the-game changes to a party's legal or factual theory. *See, e.g.*, *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (determining that a claim raised in response to a motion for summary judgment was not properly before the district court); *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986) (determining that district court did not abuse it discretion when it denied motion to amend that "was brought to avoid the possibility of an adverse summary judgment ruling" and would "prejudice the [defendant] because of the necessity for further discovery"); *Gulf Oil Trading Co. v. M/V CARIBE MAR*, 757 F.2d 743, 751–52 (5th Cir. 1985) (denying plaintiff's motion to amend complaint with completely new theory of recovery three weeks before trial because of prejudice to defendants and delay in proceedings); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 WL 3230696, at *13 (N.D. Cal. June 13, 2016) ("I conclude that [the plaintiff] cannot defeat summary judgment relying on continuously-shifting theories."). Here, Plaintiff's revised theory was not only first presented in opposition to Defendants' summary judgment motion, but was premised in large part on a consumer survey conducted by an expert witness that Defendants claim was untimely offered, denying them the opportunity to adequately respond. *See Reply* 8 n. 4. The Court concludes that, due to both the risk of prejudice to Defendants *and* the magnitude of Plaintiffs' departure from their previous theory, the alternative theory of on-label misrepresentation proposed in Plaintiffs' opposition is not properly before the Court.

However, even under this alternative "physical energy" theory, summary judgment as to Plaintiffs' various consumer protection claims is still warranted. "Anecdotal evidence may suffice" to demonstrate confusion, "although a few isolated examples of actual deception are insufficient." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (internal quotation marks omitted). Here, Plaintiffs have submitted deposition testimony highlighting their uncertainty as to the interplay between calories and exertional energy. Plaintiff Ellis, for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

example, admitted that, at the time he purchased 5HE, he was unclear as to how the product would provide energy and he "didn't know that calories were energy." *PSGD* ¶ 17. Plaintiff Soto, when asked if "calories help give you energy," responded, "I don't know," and also opined that "protein gives you energy" and that he "[didn't] really know too much about calories." *Id.* ¶ 21. Plaintiff Forrest was asked whether "physical activity requires calories" and whether a "drink with no calories" would provide exertional energy, and replied, "I'm not for sure on that." *Id.* ¶ 26. Plaintiff Casey hedged on the question of whether calories are needed for exertional energy, *Id.* ¶ 29, and Plaintiff Podobedov only understood that calories are the only source of exertional energy *after* he stopped purchasing 5HE. *Id.* ¶ 33. Finally, Plaintiffs Thompson and Adler purchased 5HE thinking that it would give them energy from sources *other* than calories or caffeine. *Id.* ¶¶ 35–36, 39–40.

Ultimately, the Court does not find this evidence compelling. Defendants are not responsible for Plaintiffs' confusion regarding human biology and the sources of exertional energy. As discussed previously, the issue is whether 5HE's label is misleading as a matter of law to a reasonable consumer. The Court previously noted that a reasonable consumer can determine what "energy" means because it is a commonly understood term. *See Class Cert. Order* at 6. The Court now agrees with Defendants' assertion that "[a] reasonable consumer who understands 'energy' to mean 'energy' for 'physical activity' also knows that the product only provides 4 calories—a small fraction of a day's ordinary caloric intake." *Defendants' Supp.* 4:9–11. Accordingly, "[a] reasonable consumer would certainly know that 4 calories does not provide an additional 'five hours of energy for physical activity.'" *Id.* 4:11–13. Although "energy" might be interpreted as something *other* than physical energy—for example, increased focus or heightened alertness—so long as a reasonable consumer believes that "energy" equates to "physical energy," as Plaintiffs theorize, then the Court concludes that, as a matter of law, a label that clearly indicates that a product has only four calories is not misleading. Any confusion on Plaintiffs' parts existed independently of 5HE's label. Courts have routinely held that a reasonable consumer will *not* ignore "well-known facts" or rely on unreasonable assumptions. *Red*, 2012 WL 5504011, at *3; *see also Clemens*, 534 F.3d at 1026 (determining that evidence of a plaintiff's "largely undefined personal assumptions and expectations" is not sufficient to defeat summary judgment). Although "a 'reasonable consumer' need not be exceptionally acute and sophisticated," *POM Wonderful*, 2008 WL 4222045, at *12 (quoting *Lavie*, 105 Cal. App. 4th at 509–10), she cannot ignore basic and well-known facts. Therefore, based on the reasonable consumer standard, Plaintiffs' deposition testimonies are insufficient to create a dispute as to whether 5HE's on-label representations have "a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Plaintiffs' testimonies indicate isolated incidents of actual deception, but this alone is insufficient to defeat summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

To supplement the deposition testimonies, Plaintiffs have also introduced a survey conducted by Dr. J. Michael Dennis, *see Declaration of Joel D. Smith*, Dkt. # 292-3 ("*Smith Decl.*"), Ex. 15, which purportedly creates a triable issue as to consumer perception.[2] However, even if the Court were to consider this evidence, it does not change its conclusion. To begin, although the survey featured an entire 5HE label, Defendants note that "the *survey questions* specifically direct the survey taker to the word 'ENERGY' only and do not [] ask the survey takers to consider the label as a whole." *Reply* 10:1–3 (emphasis in original); *see also Smith Decl.*, Ex. 15 at 16–18. After viewing the label, the survey taker was asked, "What does the word **"*ENERGY*"** on this product label mean to you when it comes to how much more energy you expect to get for **physical activities** like manual work, walking, running, or other exercise?" *Smith Decl.*, Ex. 15 at 19 (emphasis in original). The very question answers itself; it cannot be used to determine how a consumer would interpret the word energy because it presupposes that the term refers to "physical activities." Furthermore, it focuses the survey taker's attention on the word "ENERGY," *not* the calorie or sugar content, when asking about physical activity. Courts have held that "when survey questions are leading and suggestive, this 'weaken[s] the relevance and credibility of the survey evidence to the point that it sheds no light on the critical question in [the] case.'" *Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-YGR, 2018 WL 306715, at *6 (N.D. Cal. Jan. 5, 2018) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 280 (4th Cir. 2002)); *see also Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 634 (E.D. Va. 1986) ("When a survey question begs its answer it is not a true indicator of the likelihood of consumer confusion."). Here, whether a reasonable consumer would be misled by 5HE's label is determinable as a matter of law, and Plaintiffs' flawed survey evidence does not refute the Court's conclusion. *See Strumlauf*, 2018 WL 306715, at *7 ("In summary, Dr. Dennis' surveys fail to establish a triable issue as to whether reasonable consumers believe that milk foam counts towards the volume of a Latte because (i) it is undisputed that milk foam is a component of the same, and, in any event, the survey questions are (ii) leading and suggestive.").

       *iii.    Summation*

Even if Plaintiff's alternative "physical energy" theory is considered, summary judgment is nonetheless justified because a reasonable consumer would not be misled, based on 5HE's label, into thinking that the products provide five hours of physical energy. Accordingly, there is no triable issue as to whether a reasonable consumer would be misled by 5HE's label, and so the Court **GRANTS** Defendants' motion for partial summary judgment as to Plaintiffs' consumer protection claims based on on-label representations.

---

[2] Defendants filed an ex parte application for an order striking the declaration and expert report of J. Michael Dennis, Ph.D. *See* Dkt. # 295. Because the Court ultimately concludes that Dr. Dennis's report and conclusions are not dispositive of any issue in this summary judgment motion, it **DENIES** Defendants' ex parte application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

    B.    Other Claims

In their motion, Defendants assert that the disposition of Plaintiffs' consumer protection claims also impacts certain other claims; specifically, Plaintiff's express warranty, *see Mot.* 14:23–16:7, implied warranty, *see id.* 16:8–17:2, Magnuson-Moss Warranty Act, *see id.* 17:3–12, and fraud and concealment claims, *see id.* 17:13–18:12. *See also Reply* 11:14–26; *Viggiano*, 944 F. Supp. 2d at 893–94 (dismissing express warranty claims where a reasonable consumer would not be misled by the product's packaging); *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 WL 3453391, at *33 (N.D. Cal. Aug. 10, 2017) ("When an implied warranty of merchantability cause of action is based solely on whether the product in dispute [c]onforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product.") (internal quotation marks omitted); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009) ("[D]ismissal of the state law claims requires the same disposition with respect to an associated MMWA claim."); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007) (noting that "[i]f an alleged misrepresentation would not deceive a reasonable consumer . . . then any cause of action having deception as an element" also fails). Plaintiffs agree that these other claims rise or fall with the consumer protection claims. *See Opp.* 17:24–18:11. Accordingly, the Court also **GRANTS** Defendants' motion for partial summary judgment as to Plaintiff's express warranty, implied warranty, MMWA, and fraud and concealment claims based on on-label representations.

IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial summary judgment.

Consequently, the following claims survive:

Count One: Plaintiff Adler's claim under the Magnuson-Moss Warranty Act as to 5HE's trademark.

Count Two: No remaining claims.

Count Three: No remaining claims.

Count Four: No remaining claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 13-2438 PSG (PLAx) | Date | January 24, 2018 |
|---|---|---|---|
| Title | In re 5-Hour Energy Marketing and Sales Practices Litigation | | |

Count Five: Plaintiff Podobedov's claim under the New York Deceptive Trade Practices Act as to off-label representations.

Count Six: No remaining claims.

Count Seven: No remaining claims.

Count Eight: Plaintiff Adler's claim under the New Jersey Fraud in Sales or Advertising of Merchandise Law as to off-label representations.

Count Nine: Plaintiff Adler's claim under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act as to off-label representations.

Count Ten: Plaintiff Ellis's claim under the New Mexico Unfair Practices Act as to off-label representations.

Count Eleven: No remaining claims.

Count Twelve: No remaining claims.

Count Thirteen: No remaining claims.

Count Fourteen: No remaining claims.

Count Fifteen: No remaining claims.

**IT IS SO ORDERED.**